# First American Title Insurance Company

## TIRSA Owner's Extended Protection Policy For A One-To-Four Family Residence

## TABLE OF CONTENTS


| | Page |
|---|---|
| OWNER'S COVERAGE STATEMENT | 1 |
| COVERED RISKS | 1 |
| SCHEDULE A | |
| Policy Number, Premium, Date and Time and Amount | |
| Deductible Amounts and Maximum Dollar Limits of Liability | |
| Street Address of the Land | |
| 1. Name of Insured | |
| 2. Interest in Land Covered | |
| 3. Description of the Land | |
| SCHEDULE B – EXCEPTIONS | |
| EXCLUSIONS | 2 |
| CONDITIONS | |
| 1. Definitions | 2 |
| 2. Continuation of Coverage | 2 |
| 3. How to Make a Claim | 2 |
| 4. Our Choices When We Learn of a Claim | 2 |
| 5. Handling a Claim or Legal Action | 3 |
| 6. Limitation of Our Liability | 3 |
| 7. Our Duty to Defend Against Legal Actions | 3 |
| 8. Transfer of Your Rights to Us | 3 |
| 9. Entire Contract | 3 |
| 10. Increased Policy Amount | 3 |
| 11. Severability | 3 |
| 12. Arbitration | 3 |

# First American Title Insurance Company

## TIRSA Owner's Extended Protection Policy
## For A One-To-Four Family Residence

## OWNER'S INFORMATION SHEET

It applies only to a one-to-four family residence and only if each insured name in Schedule A is a Natural Person. If the Land described in Schedule A of the Policy is not an improved residential lot on which there is located a one-to-four family residence, or if each insured named in the Schedule A is not a Natural Person, contact Us immediately.

The Policy insures You against actual loss resulting from certain Covered Risks. These Covered Risks are listed on page 1 of the Policy. The Policy is limited by:

Provisions of Schedule A

Exceptions in Schedule B

Our Duty to Defend Against Legal Actions on page 1

Exclusions on page 2

Conditions on pages 2 and 3

You should keep the Policy even if You transfer Your Title to the Land.

If you want to make a claim, see paragraph 3 under Conditions on page 2.

You do not owe any more premiums for the Policy.
This sheet is not Your Insurance Policy. It is only a brief outline of some of the important Policy features. The Policy explains in detail Your rights and obligations and Our rights and obligations. Since the Policy – and not this sheet – is the legal document.

**YOU SHOULD READ THE POLICY VERY CAREFULLY**

If You have any question about Your Policy, contact:

The Judicial Title Insurance Agency LLC
(914) 381-6700

# First American Title Insurance Company

## Schedule A – Owner's Extended Protection Policy

**Policy Number:** 50068360005402**Title Number:** 119778FA-W

**Policy Amount:** $922,500.00 **Policy Date:** June 19, 2015

Deductible Amounts and Maximum Dollar Limits of Liability
For Covered Risk 14, 15, 16, and 18

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 14 (Subdivision Law Violation): | $2,000.00 | $10,000.00 |
| Covered Risk 15 (Building Permit): | $4,000.00 | $25,000.00 |
| Covered Risk 16 (Zoning): | $4,000.00 | $25,000.00 |
| Covered Risk 18 (Encroachment of Boundary Walls or Fences): | $1,500.00 | $5,000.00 |

**Street Address of the Land:**

498 Manor Lane
Pelham, New York

1. **Name of Insured:** ADAM T. ILKOWITZ AND JENIECE R. ILKOWITZ

2. **Your interest in the Land covered by this Policy is:** Fee Simple

3. **The Land referred to in this Policy is described as follows:**

   See Schedule A attached hereto

**Countersigned:** ______________________________
Authorized Officer or Agent

**914-381-6700**
**THE JUDICIAL TITLE INSURANCE AGENCY LLC**

# THE JUDICIAL TITLE INSURANCE AGENCY LLC

**Title Number: 119778FA-W**

## SCHEDULE A

ALL that certain plot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being in the Village of Pelham Manor, Town of Pelham, County of Westchester and State of New York, known as Lots Nos. 22, 23 and 24, Block B, on a certain map entitled, "Map of Property in the Town of Pelham, Westchester County, New York, belonging to the Pelhamdale Land Co.", made by Maclay and Davies, C.E. & C.S., dated December 10, 1890, and filed in the County Clerk's Office, Division of Land Records, formerly Register's Office of Westchester County, New York, January 9, 1891 in Volume 8 of Maps at page 117, said lots when taken together as one parcel are more particularly bounded and described as follows:

BEGINNING at a point on the easterly side of Willard Avenue (formerly Manor Lane) where the same is intersected by the division line between Lots Nos. 24 and 25 in Block B in Volume 8 of Maps at Page 117, said point also being distant 292.09 feet (292.11 feet as per map) southerly as measured along the easterly side of Willard Avenue (formerly Manor Lane) from the corner formed by the intersection of the easterly side of Willard Avenue (formerly Manor Lane) with the southeasterly side of Willard Avenue (formerly Manor Lane);

RUNNING THENCE from said point of beginning as so defined in an easterly direction along the division line between Lot Nos. 24 and 25 on a course forming a right angle with the easterly side of Willard Avenue (formerly Manor Lane) for a distance of 166.77 feet to the northwesterly corner of Lot No. 50;

RUNNING THENCE in a southeasterly direction along the division line between Lot Nos. 24 and 23 with Lot Nos. 50 and 51 on a course forming an interior angle of 97 degrees 23 minutes 57 seconds with the last described course for a distance of 25.88 feet (26.05 feet as per map) to the northeasterly corner of Lot No. 20;

RUNNING THENCE in a southwesterly direction along the division line between Lots Nos. 23 and 22 with Lots Nos. 20 and 21 on a course forming an interior angle of 106 degrees 40 minutes 18 seconds west with the last described course for a distance of 186.31 feet (186.25 feet as per map) to the corner formed by the intersection of the easterly side of Willard Avenue (formerly Manor Lane) with the northeasterly side of Willard Avenue (formerly Manor Lane);

RUNNING THENCE northerly along the same on a course forming an interior angle of 65 degrees 55 minutes 45 seconds with the last described course for a distance of 101.67

# THE JUDICIAL TITLE INSURANCE AGENCY LLC

**Title Number: 119778FA-W**

**SCHEDULE A (continued)**

feet (101.64 feet as per map) to the point and place of BEGINNING.

SAID PREMISES being known as 498 Manor Lane, Pelham, N.Y.

**FOR CONVEYANCING ONLY**

[347793/1]**The policy to be issued under this report will insure the title to such buildings and improvements erected on the premises which by law constitute real property.**

**TOGETHER with all the right, title and interest of the party in the first part, or, in and to the land lying in the street in front of and adjoining said premises.**

# First American Title Insurance Company

## Schedule B – Owner's Policy

## Exceptions from Coverage

**Policy Number:** 50068360005402
**File Number:** 119778FA-W

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Rights of tenants or persons in possession, if any.

2. Survey exceptions set forth herein.

3. Policy excepts covenants, conditions, easements, leases, agreements of record, etc., set forth in schedule herein.

4. Mortgage made by ADAM T. ILKOWITZ AND JENIECE R. ILKOWITZ to JPMORGAN CHASE BANK, N.A. its successors and/or assigns in the amount of $246,000.00 dated June 19, 2015 and to be recorded

5. This policy **does not** insure against charges or fees levied by the local governing municipality for work, maintenance or other repairs conducted by the local governing municipality, its various departments and/or agencies, for work, maintenance or repairs performed on the improvements, fixtures, attachments and landscaping situated on the premises described in Schedule "A" herein.

6. If the premises is serviced by a **water meter**, a final meter reading must be obtained and a bill for meter charges submitted at the time of closing. If a bill is not submitted at closing, policy excepts all meter charges from the last date of reading.

7. Source of water must be disclosed or tax bill produced for same.

8. Variations between tax map and record description along the northerly record line in that the description reads a distance of 166.77 feet whereas the tax map measures a distance of 165.15 feet, along the southerly record line in that the description reads a distance of 186.31 feet (186.25 feet as per map) whereas the tax map measures a distance of 183.80 feet and along the easterly side of Manor Lane in that the description reads a distance of 101.67 feet (101.64 feet as per map) whereas the tax map measures a distance of 100.38 feet.

# THE JUDICIAL TITLE INSURANCE AGENCY LLC

**Title Number: 119778FA-W**

**SURVEY READING**

Amended 04/14/2015

Survey made by Aristotle Bournazos dated March 1, 1991 shows a two and one-half story frame structure with entrance and platform in front, enclosed porch on southerly and northerly sides, concrete platform and detached frame garage in rear.

Macadam driveway, concrete walk, stone curbs and stone wall extend onto Manor Lane.

Stone wall is situated 1.9 feet more or less south of the northerly property line.

Stockade fence from subject premises encroaches 1.3 feet more or less onto adjoining property to the north.

Overhead service wires traverse northerly and westerly property lines.

Variations between fences, walls, steps, walks, curbs, hedges, cedars and record lines of title.

Physical inspection made April 13, 2015 shows brick patio in rear.

**FOR MORTGAGE PURPOSES ONLY: ENCROACHMENTS & VARIATIONS**
Policy will insure against any monetary loss or damage resulting from same.

**FOR INFORMATION ONLY:** Laws and ordinances relating to zoning , occupancy or changes in the character, dimensions and location of any improvement erected on the premises are specifically excluded from coverage pursuant to paragraph 1(A) of the policy exclusions. The survey reading and/or physical inspection herein is solely for the purpose of discovering issues which may affect title to or possession of the land to be insured. Engineer's reports should be consulted where alterations are suspected.

# THE JUDICIAL TITLE INSURANCE AGENCY LLC

**Title Number: 119778FA-W**

**SCHEDULE OF COVENANTS, CONDITIONS, EASEMENTS, LEASES, AGREEMENTS OF RECORD, ETC.**

Covenants, Restrictions and Setbacks in Liber 2098 cp. 13.

See copy attached.

**ATTACHED ARE THE BEST COPIES AVAILABLE**

Except, but policy will insure that said covenants and restrictions are not violated by the present structure, and that any future violation will not result in a forfeiture or reversion of title; company affirmatively insures that the exercise of said easements, if any, will not interfere with the use and enjoyment of the premises.

# *First American Title Insurance Company*

## *STANDARD NEW YORK ENDORSEMENT (OWNER'S POLICY)*

**Title No.** 119778

Attached to and made a part of Policy No. 50068360005402

1. The following is added as a Covered Risk:

    11. Any statutory lien arising under Article 2 of the New York Lien Law for services, labor or materials furnished prior to the date hereof, and which has now gained or which may hereafter gain priority over the estate or interest of the insured as shown in Schedule A of this policy.

2. Exclusion Number 5 is deleted, and the following is substituted:

    5. Any lien on the Title for real estate taxes, assessments, water charges or sewer rents imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as Shown in Schedule A.

The endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

**Dated: 06/19/2015**

**Countersigned**

**BY:**________________________________________
Authorized Signatory

*Standard New York Endorsement (7/1/12) for use with ALTA Owner's Policy (6/17/06)*

# *First American Title Insurance Company*

## *POLICY AUTHENTICATION ENDORSEMENT*

**Title No.** 119778

Attached to and made part of Policy Number: 50068360005402

When the policy is issued by the Company with a policy number and Date of Policy, the Company will not deny liability under the policy or any endorsements issued with the policy solely on the grounds that the policy or endorsements were issued electronically or lack signatures in accordance with the Conditions.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

**Date: 06/19/2015**

# *First American Title Insurance Company*

## WAIVER OF ARBITRATION ENDORSEMENT (OWNER'S OR LOAN POLICY)

***Title No. 119778***

*Attached to and made a part of Policy No. 50068360005402*

*The policy is amended by deleting therefrom:*

*(A) If this endorsement is attached to an ALTA Loan Policy: Condition 13.*

*(B) If this endorsement is attached to an ALTA Owner's Policy: Condition 14.*

*(C) If this endorsement is attached to a TIRSA Owner's Extended Policy: Condition 12.*

*This endorsement is made a part of Policy and is subject to all of the terms and provisions thereof and of any other endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the Policy and any other endorsements, nor does it extend the effective date of the Policy and any other endorsements, nor does it increase the face amount thereof.*

***IN WITNESS WHEREOF,*** *the company has caused this Endorsement to be signed on its date of issue set forth herein.*

***Dated: 06/19/2015***

***Countersigned***

***BY:***______________________________
*Authorized Signatory*

*TIRSA WAIVER OF ARBITRATION ENDORSEMENT [OWNER'S OR LOAN POLICY] (11/01/08)*




TIRSA Owner's Extended Protection Policy
**FOR A ONE-TO-FOUR FAMILY RESIDENCE**

ISSUED BY

**First American Title Insurance Company**

# Owner's Policy

POLICY NUMBER

## OWNER'S COVERAGE STATEMENT

This Policy insures You against actual loss, including any costs, attorney's fees and expenses provided under this Policy, resulting from the Covered Risks set forth below, if the Land is an improved residential lot on which there is located a one-to-four family residence and each insured named in Schedule A is a Natural Person.

**This Policy is not complete without Schedules A and B.**

Your insurance is effective on the Policy Date. This Policy covers Your actual loss from any risk described under Covered Risks if the event creating the risk exists on the Policy Date or, to the extent expressly stated, after the Policy Date. Your insurance is limited by all of the following:

- The Policy Amount shown in Schedule A
- For Covered Risk 14, 15, 16 and 18, Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A
- Exceptions in Schedule B
- Exclusions on page 3
- Conditions on page 3, 4 and 5

In Witness Whereof, First American Title Insurance Company has caused its corporate name to be hereunto affixed by its authorized officers as of Date of Policy shown in Schedule A.

***First American Title Insurance Company***

Dennis J. Gilmore
President

Jeffrey S. Robinson
Secretary

For Reference:

**File #:**

Issued By:

**The Judicial Title Insurance Agency, LLC**
800 Westchester Avenue
Rye Brook, NY 10573

(This Policy is valid only when Schedules A and B are attached)

This jacket was created electronically and constitutes an original document

**Policy #:**

**COVERED RISKS**

The Covered Risks are:

1. Someone else owns an interest in Your Title.
2. Someone else has rights affecting Your Title arising out of leases, contracts, or options.
3. Someone else claims to have rights affecting Your Title arising out of forgery or impersonation.
4. Someone else has an easement on the Land.
5. Someone else has a right to limit Your use of the Land.
6. Your Title is defective.
7. Any of Covered Risks 1 through 6 occurring after the Policy Date.
8. Someone else has a lien on Your Title, including a:
   a: Mortgage;
   b: judgment, state or federal tax lien, or special assessment;
   c: charge by a homeowner's or condominium association; or
   d: lien, occurring before or after the Policy Date, for labor and material furnished before the Policy Date.
9. Someone else has an encumbrance on Your Title.
10. Someone else claims to have rights affecting Your Title arising out of fraud, duress, incompetency or incapacity.
11. You do not have both actual vehicular and pedestrian access to and from the Land, other than vehicular access to a condominium unit, based upon a legal right.
12. You are forced to correct or remove a violation existing at Policy Date of any covenant, condition or restriction affecting the Land, even if the covenant, condition or restriction is excepted in Schedule B, provided that such violation of the covenant, condition or restriction is not excepted in Schedule B.
13. Your Title is lost or taken because of a violation of any covenant, condition or restriction, which occurred before You acquired Your Title, even if the covenant, condition or restriction is excepted in Schedule B, provided that such violation of the covenant, condition or restriction is not excepted in Schedule B.
14. Because of a violation of a subdivision law or regulation existing at Policy Date affecting the Land:
    a. You are unable to obtain a building permit;
    b. You are forced to correct or remove the violation; or
    c. Someone else has a legal right to, and does, refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it.

    The amount of Your insurance for this Covered Risk is subject to Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
15. The cost of the forced removal of Your structures, or any part of them, other than boundary walls or fences, as existing at Policy Date, because any portion was built without obtaining a building permit from the proper government office. The amount of Your insurance for this Covered Risk is subject to Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
16. The cost of the forced removal of Your structures, or any part of them, other than boundary walls or fences, as existing at Policy Date, because they violate an existing zoning law or zoning regulation. The amount of Your insurance for this Covered Risk is subject to Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
17. You cannot use the Land because use as a single-family residence violates a zoning law or zoning regulation existing at Policy Date.
18. You are forced to remove Your structures, or any part of them, as existing at Policy Date, because they encroach onto Your neighbor's land. If the encroaching structures are boundary walls or fences, the amount of Your insurance for this Covered Risk is subject to Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
19. Someone else has a legal right to, and does, refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it because Your neighbor's structures, or any part of them, as existing at Policy Date, encroach onto the Land.
20. You are forced to remove Your existing structures because they encroach onto an easement or over a building set-back line, even if the easement or building set-back line is excepted in Schedule B, provided that such encroachment is not excepted in Schedule B.
21. Your existing structures (or a replacement or modification made to them after the Policy Date), or any part of them, other than boundary walls or fences, are damaged because of the future exercise of a right to use the surface of the Land for the extraction or development of minerals, water or any other substance, even if those rights are excepted or reserved from the description of the Land or excepted in Schedule B.
22. Someone else tries to enforce a discriminatory covenant, condition or restriction that they claim affects Your Title which is based upon race, color, religion, sex, handicap, familial status, or national origin.
23. A taxing authority assesses supplemental real estate taxes not previously assessed against the Land for any period before the Policy Date because of construction or a change of ownership or use that occurred before the Policy Date.
24. Your neighbor builds any structures after the Policy Date, other than boundary walls or fences, which encroach onto the Land.
25. Your Title is unmarketable, which allows someone else to refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it.
26. A document upon which Your Title is based is invalid because it was not properly signed, sealed, acknowledged, delivered or recorded.
27. The residence with the address shown in Schedule A is not located on the Land at the Policy Date.
28. The survey map, if any, referred to in Schedule B of this Policy does not show the correct location of the Land according to the Public Records.

**Policy #:**

## EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorney's fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of any law or government regulation. This includes ordinances, laws and regulations concerning:
   a. building
   b. zoning
   c. land use
   d. improvements on the Land
   e. land subdivision
   f. environmental protection

   This Exclusion does not apply to violations or the enforcement of these matters if notice of the violation or enforcement appears in the Public Records at the Policy Date.

   This Exclusion does not limit the coverage described in Covered Risk 14, 15, 16, 17 or 23.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not apply to violations of building codes if notice of the violation appears in the Public Records at the Policy Date.
3. The right to take the Land by condemning it, unless:
   a. a notice of exercising the right appears in the Public Records at the Policy Date
   b. the taking happened before the Policy Date and is binding on You if You bought the Land without Knowing of the taking.
4. Risks:
   a. that are created, allowed, or agreed to by You, whether or not they appear in the Public Records;
   b. that are Known to You at the Policy Date, but not to Us, unless they appear in the Public Records at the Policy Date;
   c. that result in no loss to You; or
   d. that first occur after the Policy Date – this does not limit the coverage described in Covered Risk 7, 8.d, 21, 22, 23, or 24.
5. Failure to pay value for Your Title.
6. Lack of a right:
   a. to any Land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b. in streets, alleys, or waterways that touch the Land.

   This Exclusion does not limit the coverage described in Covered Risk 11 or 18.
7. Any claim which arises out of the transaction vesting in Your Title by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that is based upon:
   a. the transaction creating Your Title being deemed a fraudulent conveyance or a fraudulent transfer; or
   b. the transaction creating Your Title being deemed a preferential transfer except where the preferential transfer results from the failure:
      i. to timely record the deed to You; or
      ii. of the recording of the deed to You to be notice to a purchaser for value or a judgment or lien creditor.

## CONDITIONS

1. **DEFINITIONS:**

   **Easement** – the right of someone else to use the Land for a special purpose.

   **Known** – things about which You have actual knowledge. The words "Know" and "Knowing" have the same meaning as Known.

   **Land** – the land or condominium unit, and its interest in the common elements, described in paragraph 3 of Schedule A and any improvements on the land which are real property.

   **Mortgage** – a mortgage, deed of trust, trust deed or other security instrument.

   **Natural Person** – a human being, not a commercial or legal organization or entity. Natural Person includes a trustee of a Trust even if the trustee is not a human being.

   **Policy Date** – the date shown in Schedule A. If the recording date of the instruments creating the insured interest is later than the Policy Date, this policy shall also cover intervening liens or encumbrances, except real estate taxes, assessments, water charges and sewer rents.

   **Public Records** – records that give constructive notice of matters affecting Your Title, according to New York State law. With respect to Section 1.f. of the Exclusions, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the Land is located.

   **Title** – the ownership of the interest in the Land, as shown in Schedule A.

   **Trust** – a living trust established by a human being for estate planning.

   **We/Our/Us** – First American Title Insurance Company.

   **You/Your** – the insured named in Schedule A and also those identified in paragraph 2.b. of these Conditions.
2. **CONTINUATION OF COVERAGE:**
   a. This Policy protects You as long as You own Your Title or own a mortgage from anyone who buys Your Land or are liable for any title warranties You make. You cannot assign this Policy to anyone else.
   b. This Policy also insures:
      i. anyone who inherits Your Title because of Your death;
      ii. Your spouse who receives Your Title because of dissolution of Your marriage;
      iii. the trustee or successor trustee of a Trust to whom You transfer Your Title after the Policy Date; or
      iv. the beneficiaries of Your Trust upon Your death.
   c. We may assert against the insureds identified in paragraph 2.b. any rights and defenses that We have against any previous insured under this Policy.
3. **HOW TO MAKE A CLAIM**
   a. Prompt Notice Of Your Claim
      i. As soon as You Know, or could have known, of anything that might be covered by this Policy, You must notify Us promptly in writing.
      ii. Send Your notice to **First American Title Insurance Company, Attention: Claims National Intake Center, 1 First American Way, Santa Ana, California 92707.**

Please include the Title number and the Policy number shown in Schedule A and the county where the Land is located. Please enclose a copy of Your Policy, if available.

iii. If You do not give Us prompt notice, Your coverage will be reduced or ended, but only to the extent Your failure affects Our ability to resolve the claim or defend You.

b. Proof Of Your Loss

i. We may require You to give Us a written statement signed by You describing Your loss which includes:
(a) the basis of Your claim;
(b) the Covered Risks which resulted in Your loss;
(c) the dollar amount of Your loss; and
(d) the method You used to compute the amount of Your loss.

ii. We may require You to make available to Us records, checks, letters, contracts, insurance policies and other papers which relate to Your claim. We may make copies of these papers.

iii. We may require You to answer questions about Your claim under oath.

iv. If You fail or refuse to give Us a statement of loss, answer Our questions under oath, or make available to Us the papers We request, Your coverage will be reduced or ended, but only to the extent Your failure or refusal affects Our ability to resolve the claim or defend You.

**4. OUR CHOICES WHEN WE LEARN OF A CLAIM**

a. After We receive Your notice, or otherwise learn, of a claim that is covered by this Policy, Our choices include one or more the following:

i. Pay the claim.
ii. Negotiate a settlement.
iii. Bring or defend a legal action related to the claim.
iv. Pay You the amount required by this Policy.
v. End the coverage of this Policy for the claim by paying You Your actual loss resulting from the Covered Risk, and those costs, attorney's fees and expenses incurred up to that time which We are obligated to pay.
vi. End the coverage described in Covered Risk 14, 15, 16 or 18 by paying You the amount of Your insurance then in force for the particular Covered Risk, and those costs, attorney's fees and expenses incurred up to that time which We are obligated to pay.
vii. End all coverage of this Policy by paying You the Policy Amount then in force and all those costs, attorney's fees and expenses incurred up to that time which We are obligated to pay.
viii. Take other appropriate action.

b. When We choose the options in paragraphs 4.a. (v), (vi) or (vii), all Our obligations for the claim end, including Our obligation to defend, or continue to defend, any legal action.

c. Even if We do not think that the Policy covers the claim, We may choose one or more of the options above. By doing so, We do not give up any rights.

**5. HANDLING A CLAIM OR LEGAL ACTION**

a. You must cooperate with Us in handling any claim or legal action and give Us all relevant information.

b. If You fail or refuse to cooperate with Us, Your coverage will be reduced or ended, but only to the extent Your failure or refusal affects Our ability to resolve the claim or defend You.

c. We are required to repay You only for those settlement costs, attorneys' fees and expenses that We approve in advance.

d. We have the right to choose the attorney when We bring or defend a legal action on Your behalf. We can appeal any decision to the highest level. We do not have to pay Your claim until the legal action is finally decided.

e. Whether or not We agree there is coverage, We can bring or defend a legal action, or take other appropriate action under this Policy. By doing so, We do not give up any rights.

**6. LIMITATION OF OUR LIABILITY**

a. After subtracting Your Deductible Amount if it applies, We will pay no more than the least of:

i. Your actual loss;
ii. Our Maximum Dollar Limit of Liability then in force for the particular Covered Risk, for claims covered only under Covered Risk 14, 15, 16 or 18; or
iii. the Policy Amount then in force.

b. i. If We remove the cause of the claim with reasonable diligence after receiving notice of it, all Our obligations for the claim end, including any obligation for loss You had while We were removing the cause of the claim.

ii. Regardless of 6.b. (i) above, if You cannot use the Land because of a claim covered by this Policy:

(a) You may rent a reasonably equivalent substitute residence and We will repay You for the actual rent You pay, until the earlier of:
(i) the cause of the claim is removed; or
(ii) We pay You the amount required by this Policy. If Your claim is covered only under Covered Risk 14, 15, 16 or 18, that payment is the amount of Your insurance then in force for the particular Covered Risk.

(b) We will pay reasonable costs You pay to relocate any personal property You have the right to remove from the Land, including transportation of that personal property for up to twenty-five (25) miles from the Land, and repair of any damage to that personal property because of the relocation. The amount We will pay You under this paragraph is limited to the value of the personal property before You relocate it.

c. All payments We make under this Policy reduce the Policy Amount, except for costs, attorney's fees and expenses. All payments we make for claims which are covered only under Covered Risk 14, 15, 16 or 18 also reduce Our Maximum Dollar Limit of Liability for the particular Covered Risk, except for costs, attorney's fees and expenses.

d. If We issue, or have issued, a Policy to the owner of a Mortgage on Your Title and We have not given You any coverage against the Mortgage, then:

i. We have the right to pay any amount due You under this Policy to the owner of the Mortgage to reduce the amount of the Mortgage, and any amount paid shall be treated as a payment to You under this Policy, including under paragraph 4.a. of these Conditions;

ii. Any amount paid to the owner of the Mortgage shall be subtracted from the Policy Amount of this Policy; and

iii. If Your claim is covered only under Covered Risk 14, 15, 16 or 18, any amount paid to the owner of the Mortgage shall also be subtracted from Our Maximum Dollar Limit of Liability for the particular Covered Risk.

e. We will pay any costs, attorney's fees and expenses which We are obligated to pay under this Policy.

f. If You do anything to affect any right of recovery You may have against someone else, We can subtract from Our liability the amount by which You reduced the value of that right.

**7. OUR DUTY TO DEFEND AGAINST LEGAL ACTIONS**

We will defend Your Title in any legal action only as to that part of the action which is based on a Covered Risk and which is not excepted or excluded from coverage in this Policy. We will pay the costs, attorney's fees, and expenses We incur in that defense. We will not pay for any part of the legal action which is not based on a Covered Risk or which is excepted or excluded from coverage in this Policy. We can end Our duty to defend Your Title under paragraph 4 of the Conditions.

**8. TRANSFER OF YOUR RIGHTS TO US**

a. When We settle Your claim, We have all the rights You have against any person or property related to the claim. You must transfer these rights to Us when We ask, and You must not do anything to affect these rights. You must let Us use Your name in enforcing these rights.

b. We will not be liable to You if We do not pursue these rights or if We do not recover any amount that might be recoverable.

c. We will pay any money We collect from enforcing these rights in the following order:

i. to Us for the costs, attorney's fees and expenses We paid to enforce these rights;

ii. to You for Your loss that You have not already collected;

iii. to Us for any money We paid out under this Policy on account of Your claim; and

iv. to You whatever is left.

d. If You have rights under contracts (such as indemnities, guaranties, bonds or other policies of insurance) to recover all or part of Your loss, then We have all of those rights, even if those contracts provide that those obligated have all of Your rights under this Policy.

**9. ENTIRE CONTRACT**

This Policy, with any endorsements, is the entire contract between You and Us. To determine the meaning of any part of this Policy, You must read the entire Policy. Any changes to this Policy must be agreed to in writing by Us. Any claim You make against Us must be made under this Policy and is subject to its terms.

**10. INCREASED POLICY AMOUNT**

The Policy Amount will increase by ten percent (10%) of the Policy Amount shown in Schedule A each year for the first five years following the Policy Date shown in Schedule A, up to one hundred fifty percent (150%) of the Policy Amount shown in Schedule A. The increase each year will happen on the anniversary of the Policy Date shown in Schedule A.

**11. SEVERABILITY**

If any part of this Policy is held to be legally unenforceable, both You and We can still enforce the rest of this Policy.

**12. ARBITRATION**

a. If permitted in the State of New York, You or We may demand arbitration.

b. The arbitration shall be binding on both You and Us. The arbitration shall decide any matter in dispute between You and Us.

c. The arbitration award may be entered as a judgment in the proper court.

d. The arbitration shall be under the Title Insurance Arbitration Rules of the American Arbitration Association. You may choose current Rules or Rules in existence on the Policy Date.

e. The law used in the arbitration is the law of the State of New York.

f. You can get a copy of the Rules from Us.