DocuSign Envelope ID: CBC47920-E543-4995-8F8C-04A1D89FA852

Residential Contract of Sale 11-2000

*Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association*

**WARNING: NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").**

### CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT

**NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION**
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

## Residential Contract of Sale

**Contract of Sale** made as of MARCH 9, 2015,  **BETWEEN**

**MICHAEL DURAND & MARLENE ZARFES a/k/a MARLENE A. ZARFES a/k/a MARLENE DURAND**
Address: 498 Manor Lane, Pelham Manor New York 10803
Social Security Number/Fed. I.D. No.(s):

hereinafter called "Seller" and

**ADAM ILKOWITZ & JENIECE ILKOWITZ**
Address: 225 East 95th Street, 19F, New York, New York 10128
Social Security Number/Fed. I.D. No.(s):

hereinafter called "Purchaser"

### The parties hereby agree as follows:

**1. Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:
Street Address: 498 MANOR LANE, PELHAM
Tax Map Designation:

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

**2. Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, built-in microwave oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below *(strike out inapplicable items).*

All if and as same exist on the premises and in "as is" condition except as otherwise provided herein

Excluded from this sale are furniture and household furnishings and PORCH SIDE WINDOW BOXES, A/C IN GR (not installed), INVISIBLE DOG FENCE AND MBDRM DRAPES

**3. Purchase Price.** The purchase price is $ 922,500.00 payable as follows:

(a) On the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"):
$ 92,250.00

(b) By allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed:        $ 0

(c) By a purchase money note and mortgage from Purchaser to Seller:
$ 0

(d) Balance at Closing in accordance with paragraph 7:
$ 830,250.00

~~4. Existing Mortgage. (Delete if inapplicable) If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:~~
~~(a) The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of _____ percent per annum, in monthly installments of $ _____ which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on _____~~

~~(b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduces the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the~~

DocuSign Envelope ID: CBC47920-E643-4995-8F8C-04A1D89FA652

~~payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.~~

~~(c) If there is a mortgage escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.~~

~~(d) Seller shall deliver to Purchaser at Closing a certificate dated not more that 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more than 30 days before Closing, containing the same information.~~

~~(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.~~

~~5. Purchase Money Mortgage. (Delete if inapplicable) If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:~~

~~(a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $_____ for its preparation.~~

~~(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than ____ percent per annum and the total debt service thereunder shall not be greater than $_____ per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess is to be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefore, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.~~

**6. Downpayment in Escrow.**

(a) Seller's attorney ("Escrowee") shall hold the Downpayment in escrow in a segregated bank account at: CHASE
Address  62 Main Street, Tuckahoe, Tuckahoe, NY 10707

until Closing or sooner termination of this contract shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in a(n) IOLA interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, non-appealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advise of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

**7. Acceptable Funds.** All money payable under this contract unless otherwise specified, shall be paid by:

(a) Cash, but not over $1,000.00

DocuSign Envelope ID: CBC47920-E543-4995-8F8C-04A1D89FA852

(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser.

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $ 1,000.00 ; and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

**8. Mortgage Commitment Contingency.** *(Delete paragraph if inapplicable. For explanation, see:* NOTES ON MORTGAGE COMMITMENT CONTINGENCY CLAUSE.)

(a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before 40 days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(j) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $ 738,900.00 for a term of at least 30 years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date Purchaser may cancel under subparagraph 8(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.

(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 8(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.

(c) *(Delete this subparagraph if inapplicable)* Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the terms and conditions set forth in subparagraph 8(b)(i), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a Commitment from such Institutional Lender(s).

(d) If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph 8.

(e) If no Commitment is issued by an Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 8.

(f) If this contract is canceled by Purchaser pursuant to subparagraphs 8(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27.

(g) If Purchaser ~~fails to give timely Notice of cancellation or if Purchaser~~ accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 8.

(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all its obligations under this paragraph 8) and except as set forth in paragraph 27.

(i) For purposes of this contract, the term "Institutional Lender" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state, foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(j) For purposes of subparagraph 8(a), Purchaser shall be deemed to have been given a fully executed copy of this contract on the third business day following the date of ordinary or regular mailing, postage prepaid.

**9. Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use AS A SINGLE FAMILY DWELLING;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments OF NO GREATER THAN ONE FOOT of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) The other matters, if any, including a survey exception, set forth in a Rider attached.

DocuSign Envelope ID: CBC47920-E543-4995-8F6C-04A1D89FA852

10. **Governmental Violations and Orders.**
   (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date OF CLOSING by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.
   (b) ~~(Delete if inapplicable) All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.~~

11. **Seller's Representations.**
   (a) Seller represents and warrants to Purchaser that:
      I. The Premises abut or have a right of access to a public road;
      II. Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;
      III. Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act. Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");
      IV. The Premises are not affected by any exemptions or abatements of taxes; and
      V. Seller has been known by no other name for the past ten years, except: **SEE PAGE ONE ("SELLER")**
   (b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.
   (c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

12. **Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(e), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

13. **Insurable Title.** Seller shall give and Purchaser shall accept such title as any reputable Title Company, licensed to do business in the State Of New York shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for this contract.

14. **Closing, Deed and Title.**
   (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a Bargain & Sale With Covenants Against Grantor's Acts deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.
   (b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

15. **Closing Date and Place.** Closing shall take place at the offices of **Alan C. Pilla, Esq.** at 10:00 AM. o'clock on or about **JUNE 7, 2015**, or upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of Purchaser's Lending Institution within Westchester County

16. **Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:
   (a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.
   (b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a one (1) family dwelling at the date of Closing.
   (c) The delivery by Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or a withholding certificate from I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.
   (d) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.
   (e) All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment, and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.
   (f) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.
   (g) The delivery by the parties of any other affidavits required as a condition of recording the deed.

DocuSign Envelope ID: CBC47920-E543-4995-8F6C-04A1D89FA852

**17. Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

**18. Apportionments and Other Adjustments; Water Meter and Installment Assessments.**
(a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:
(i) taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) interest on the existing mortgages; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.
(b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.
(c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.
(d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.
(e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

**19. Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less that five business dates after Closing, provided the official bills therefor computed to said date are produced at Closing.

**20. Use of Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

**21. Title Examination; Seller's Inability to Convey; Limitations of Liability.**
(a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.
(b) (i) If at the date of Closing, Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract;
(ii) If Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 30 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date;
(iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.
(c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

**22. Affidavit as to Judgments, Bankruptcies, etc.** If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

**23. Defaults and Remedies.**
(a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be

DocuSign Envelope ID: CBC47920-E543-4995-8F6C-04A1D89FA652

impossible to ascertain and the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including but not limited to, specific performance.

**24. Purchaser's Lien.** All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

**25. Notices.** Any notice or other communication ("Notice") shall be in writing and either:
(a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or
(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant in this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any Notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or
(c) with respect to paragraph 7(b) or paragraph 20, sent by fax to the party's attorney. Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries. This contract may be delivered as provided above or by ordinary mail.

**26. No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

**27. Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any broker in connection with this sale other than **MCCLELLAN'S SOTHEBY'S INTERNATIONAL REALTY & HOULIHAN LAWRENCE** ("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorney's fees arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur the termination of this contract.

**28. Miscellaneous.**
(a) All prior understanding, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.
(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.
(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.
(d) The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this or any provisions hereof.
(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.
(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.
(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.
(h) This contract is intended for the exclusive benefit of the parties hereto and except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by any other person or entity.
(i) If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

Continued on Rider attached hereto. *(Delete if inapplicable)*

DocuSign Envelope ID: CBC47920-E543-4995-8F6C-04A1D69FA852

*In Witness Whereof*, this contract has been duly executed by the parties hereto.

_____
MICHAEL DURAND

_____
MARLENE DURAND

Attorney for Seller: ALAN C. PILLA
Address: 107 Lake Avenue, Tuckahoe, NY 10707

Tel.: (914) 779-0053        Fax: (914) 793-2114

Receipt of the Downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6 above.

## Contract of Sale

TITLE NO. _____

TO

_____
ADAM ILKOWITZ Purchaser

_____
JENIECE ILKOWITZ Purchaser

Attorney for Purchaser: BRETT S. LANDO
Address: 2900 Westchester Avenue, Suite 206, Purchase New York 10577
Tel.: (914) 251-0100    Fax: (914) 251-0108

_____
ALAN C. PILLA
Escrowee

**PREMISES**

Sheet
Section
Block
Lot
Plate
County or Town:
Street Number:

## NOTES ON MORTGAGE COMMITMENT CONTINGENCY CLAUSE
### for
### RESIDENTIAL CONTRACT OF SALE

1. **WARNING:** The mortgage Commitment contingency clause for the Residential Contract of Sale is a bar association form that attempts to provide a mechanism that makes the rights and obligations of the parties clear in sale of residences in ordinary circumstances. It should be reviewed carefully by Seller and Purchaser and their attorneys in each and every transaction to make sure that all the provisions are appropriate for that transaction. Negotiated modifications should be made whenever necessary.

2. Under the clause, the obligation of Purchaser to purchase under the contract of sale is contingent on Purchaser's obtaining a mortgage Commitment letter from an Institutional Lender within the number of days specified for the amount specified. This refers to calendar days. Seller's attorney should state his/her calculation of the Commitment Date in the letter delivering the executed contracts to Purchaser's attorney, to prevent confusion later. Purchaser should promptly confirm or correct that date. In any event, for a loan, Purchaser should inform its lender of the scheduled date of Closing in the contract and request that the expiration date of the Commitment occur after the scheduled dated of Closing. Purchaser must comply with deadlines and pursue the application in good faith. The Commitment contingency is satisfied by issuance of a Commitment in the amount specified on or before the Commitment Date, unless the Commitment is conditioned on approval of an appraisal. If the Commitment is conditioned on approval of an appraisal and such approval does not occur prior to the Commitment Date, Purchaser should either cancel the contract or obtain an extension of the Commitment Date. If the Commitment is later withdrawn or not honored, Purchaser runs the risk of being in default under the contract of sale with Seller.

3. If there are loan terms and conditions that are required or would not be acceptable to Purchaser, such as the interest rate, term of the loan, points, fees or a condition requiring sale of the current house, those terms and conditions should be specified in a rider.

4. This clause assumes that initial review and approval of Purchaser's credit will occur before the Commitment letter is issued. Purchaser should confirm with the lender that this is the case before applying for the Commitment.

5. If, as has been common, the Commitment letter itself is conditioned on sale of Purchaser's home or payment of any outstanding debt or no material adverse change in Purchaser's financial condition, such a Commitment will satisfy the contract contingency nonetheless, and Purchaser will take the risk of fulfilling these Commitment conditions, including forfeiture of the Downpayment if Purchaser defaults on its obligation to close. Under New York case law, a defaulting Purchaser may not recover any part of the Downpayment, and Seller does not have to prove any damages. If Purchaser is not willing to take that risk, the clause must be modified accordingly.

6. Purchaser may submit an application to registered Mortgage Broker instead of applying directly to an Institutional Lender.

7. This clause allows Seller to cancel if a Commitment is not accepted by Purchaser by the Commitment Date, unless Purchaser timely supplies a copy of the Commitment, to allow Seller the option to avoid having to wait until the scheduled date of Closing to see if Purchaser will be able to close. Seller may prefer to cancel rather than to wait and settle for forfeiture of the Downpayment if Purchaser defaults. Because of Seller's right to cancel, Purchaser may not waive this contingency clause. This clause means that Purchaser is subject to cancellation by Seller even if Purchaser is willing to risk that he/she will obtain the Commitment after the Commitment Date. Some Purchasers may not want to be subject to such cancellation by Seller.

8. Purchaser may want to add to paragraph 21(c) that Purchaser's reimbursement should include non-refundable financing and inspection expenses of Purchaser, which should be refunded by Seller if Seller willfully defaults under the contract of sale (alternative, if Seller is unable to transfer title under the contract of sale).

9-25-03
Joint Committee on the Mortgage Contingency Clause:
Real Property Section of the New York State Bar Association
Real Property Law Committee of the Association of the Bar of the City of New York
Real Property Committee of the New York County Lawyers Association

DocuSign Envelope ID: CBC47920-E543-4995-8F6C-04A1D89FA852

## RIDER TO CONTRACT OF SALE

**SELLER:**  MICHAEL DURAND & MARLENE ZARFES

**PURCHASER:**  ADAM ILKOWITZ & JENIECE ILKOWITZ

**PREMISES:**  498 MANOR LANE, PELHAM MANOR, NEW YORK

A.  **RIDER CONTROLS:**  If this Rider conflicts in any way with the printed form Contract of Sale, this Rider shall control.

B.  **PERMITTED EXCEPTIONS:**  The Premises shall be conveyed subject to the following provided title is not rendered uninsurable and does not materially, adversely affect the current use of the Premises thereby:

1.  Covenants, restrictions, rights of way, utility easements and agreements, if any, contained in the former deeds or other instruments of record, insofar as the same may now be in force or effect. In the event that the foregoing are violated, same shall not be deemed an objection to title provided a nationally recognized title company will insure PURCHASER, at standard rates, that said improvements may remain in their present location as long as the same shall stand and provided that same do not grant third parties (excepting for utility companies) the right to use the premises as a single family dwelling;

2.  Possible unpaid franchise tax liens against any corporation in the chain of title, provided that said title insurance company shall be willing to omit same as an exception to title;

3.  Any state of facts an accurate survey might show provided such facts do not render title either unmarketable or uninsurable by a licensed title company;

4.  Such state of facts a personal inspection may disclose, provided that same do not render title either unmarketable or uninsurable;

5.  De minimus (herein defined as no greater than one foot) encroachment(s) of improvements on properties adjoining the premises herein described; de minimus variations between tax lot lines and lines of record title;

6.  De minimus encroachment(s) of stoops, areas, roof cornices, window trims, vent pipes, cellar doors, steps, columns and column bases, flue pipes, signs, piers, lintels, window sills, fire escapes, ledges, fences, coping, retaining walls and yard walls, if any, upon any street or highway or adjoining the Premises to the extent that PURCHASER'S title company will insure at standard rates; and,

7.  Recorded rights of utility companies to lay, maintain and repair pipes, lines, conduits, cable boxes and other installations on,

1

DocuSign Envelope ID: CBC47920-E543-4995-8F5C-04A1D89FA852

under and across the Premises provided that such rights are not violated in any way by existing improvements and are for the subject premises service(s) only.

C.   **LIABILITY**:              SELLER shall have no liability after the Closing for any obligation, statement or representation of SELLER set forth in the Contract unless it is accompanied by a statement that it shall survive the Closing.

D.   **NO ACTION REQUIRED**:   SELLER shall not be required to bring any action or proceeding or otherwise incur any expense greater than $3,500.00 to render the Title to the premises marketable. The PURCHASER may, nevertheless, accept such Title as the SELLER may be able to convey, without reduction of the purchase price or any credit against the same and without liability on the part of the SELLER.

E.   **PERSONAL PROPERTY**:    The parties mutually agree that all rights, title and interest of the SELLER in and to any and all personal property which may be in or upon the premises, used in connection with the operation thereof, shall be deemed to be conveyed to the PURCHASER under the Deed of Conveyance to be delivered, but that no part of the purchase price shall be deemed to have been paid by the PURCHASER for the same.

F.   **LIMITATION OF LIABILITY**:   1.   If the cost to comply with the terms of paragraph 10(a) of the Contract of Sale exceeds $3,500.00, then, in that event, SELLER shall have the right to cancel this Contract with SELLER'S liability limited as per paragraph 21(c).

2.   If the cost to comply with the terms of paragraph 16(b) of the Contract of Sale exceeds $3,500.00, then, in that event, SELLER shall have the right to cancel this Contract with SELLER'S liability limited as per paragraph 21(c).

3.   If the cost to comply with the terms of paragraph 16(e) of the Contract of Sale exceeds $3,500.00, then, in that event, SELLER shall have the right to cancel this Contract with SELLER'S liability limited as per paragraph 21(c).

G.   **ROOF/BASEMENT**:   Paragraph 16(e) of the Contract of Sale is modified to include the following: At the closing of Title the roof shall be free from leaks and the basement shall be free of standing water.

H.   **CHECK REPLACEMENT**:   1.   If the Downpayment made at the time of the Execution of this Contract is by check, and said check fails due collection, and provided PURCHASER fails to replace same by a Bank or Certified check within Three (3) business days of Notice of the check failing due collection, SELLER, at his option, may declare this Contract null, void and of no force and effect, and may pursue his remedies against PURCHASER upon said check or in any other manner permitted by law, such remedies being cumulative.

2.   The PURCHASER shall be responsible for the replacement of any checks paid to the SELLER for the balance of the purchase price

2

DocuSign Envelope ID: CBC47920-E543-4695-8F6C-04A1D89FA852

and/or closing adjustments in the event that any such checks are returned to the SELLER uncollected for any reason whatsoever, whether such check(s) shall have been tendered by or on behalf of the PURCHASER or by the PURCHASER'S lending institution. PURCHASER shall be responsible for the costs incurred in collecting said funds, including reasonable attorney fees. The terms of this paragraph shall survive the Closing of Title.

I. **LEAD PAINT INSPECTION:** This Contract is contingent upon a risk assessment or inspection of the property for the presence of lead-based paint and/or lead-based paint hazards at the PURCHASER'S expense until 9:00 p.m. on the tenth calendar day after the date of this Contract. (Intact lead-based paint that is good condition is not necessarily a hazard. See the EPA pamphlet "Protect Your Family from Lead in Your Home" for more information). This contingency will terminate at the above predetermined deadline unless the PURCHASER (or PURCHASER'S agent) delivers to the SELLER (or SELLER'S agent) a written Contract Addendum listing the specific existing deficiencies and corrections needed, together with a copy of the inspection and/or risk assessment report. The SELLER may, at the SELLER'S option, within Ten (10) days after Delivery of the Addendum, elect in writing whether to correct the condition(s) prior to closing. If the SELLER will correct the condition, the SELLER shall furnish the PURCHASER with certification from a risk assessor or inspector demonstrating that the condition has been remedied before the date of the closing. If the SELLER does not elect to make the repairs, or if the SELLER makes a counter-offer, the PURCHASER shall have five (5) days to respond to the counter-offer or remove this contingency and take the property in "as is" condition or this Contract shall become void. The PURCHASER may remove this contingency at any time without cause and may waive same by executing the Lead Paint Disclosure Addendum appended herewith.

J. **NOT AN OFFER:** It is expressly understood and agreed that this Contract shall not constitute an offer or create any rights in favor of the PURCHASER. It shall not in any way be binding upon the SELLER and shall have no force and effect unless and until this Contract is duly executed by both the SELLER and the PURCHASER, and a fully executed copy of this Contract is delivered by the SELLER to the PURCHASER or to the PURCHASER'S attorney.

K. **MORTGAGE CONTINGENCY:** Modifying Paragraph 8 of the Contract:
   1. PURCHASER agrees to accept a mortgage commitment whether or not conditioned upon the sale of any real property owned by PURCHASER and PURCHASER shall not have a right to cancel this Contract pursuant to this paragraph due to said contingency.
   2. In the event PURCHASER claims that he has been unable to obtain a mortgage in accordance with the provisions of this Contract or that his application has been denied, the SELLER herein shall, upon request, be supplied by the PURCHASER with copies of letters of declination from the Lender and any and all other correspondence received in connection therewith.

L. **NOTICES:** Modifying Paragraph 25 of the Contract any Notice

3

DocuSign Envelope ID: CBC47920-E543-4995-8F6C-04A1D69FA852

can be sent to and received by the attorneys for the respective parties who are hereby authorized to accept same. Furthermore, Notices can be sent by facsimile transmission (provided that a written confirmation of such transmission is sent on the immediately succeeding day in the manner set forth herein and via email) and said facsimile transmission shall be deemed to have been properly given pursuant to said confirmation.

M. **ESCROW DOWNPAYMENT:** Modifying Paragraph 6 of the Contract, in the event the Downpayment or any part of the Downpayment is held by the Escrowee following the Closing, the terms set forth in Paragraph 6 shall survive the Closing.

N. **COUNTERPART ORIGINALS/FACSIMILE AND EMAIL TRANSMISSION:** This Contract may be executed in any number of counterparts. Each such counterpart shall be an original instrument, but all such counterparts when taken together, shall constitute one and the same instrument. A party may sign this Contract, or any counterpart, by facsimile and/or email and the facsimile and/or email transmission shall be accepted as an original.

P. **SELLER'S DISCLOSURE CREDIT:** Pursuant to the Real Property Law of the State of New York, the SELLER has elected to not provide a "Seller's Disclosure" therefore, the PURCHASER shall receive a credit of FIVE HUNDRED ($500.00) DOLLARS from the SELLER, if, as and when title closes.

_Adam Ilkowitz_
PURCHASER

_Juliet Ilkowitz_
PURCHASER

_[signature]_
SELLER

_[signature]_
SELLER

4

DocuSign Envelope ID: CBC47920-E543-4995-8F6C-04A1D89FA852

## ADDITIONAL RIDER TO CONTRACT OF SALE

**Seller:** Michael Durand and Marlene Zarfes, as "Seller"
**Purchaser:** Adam Ilkowitz and Jenlece Ilkowitz, as "Purchaser"
**Premises:** 498 Manor Lane, Pelham, New York, as "Premises"

*In the event of any inconsistency between the provisions of this Additional Rider and those contained in the Contract of Sale and/or the Rider thereto, the provisions of this Additional Rider shall control.*

1. It shall be the obligation of the Seller to maintain and deliver both the interior and exterior of the Premises, in the same condition as when exhibited to the Purchaser subject to reasonable use, wear, tear and natural deterioration until the transfer of possession. Seller shall give Purchaser and/or Purchaser's lender access to the Premises for purposes of a final walk through inspection, the appraisal and measurements, provided Seller is given twenty-four (24) hours notice and Purchaser or appraiser is accompanied by one of the real estate brokers.

2. Notwithstanding the liability of risk of loss or damage to the premises due to fire, the Sellers agree that should the premises be substantially damaged in any way by fire or elements, the Purchasers shall have the option of proceeding with this Contract or declaring the same null and void and the sole liability of the Sellers in the latter case shall be the return of the Downpayment to the Purchaser.

3. Appliances: Seller represents that the heating, electrical, plumbing, cooling systems, fixtures and equipment, including all appliances, doorbells, sewer/septic, alarm and/or security systems (if any), garage doors, openers and remotes (if any), are presently in working order and shall remain in working order up to and including the time of closing. At or prior to closing Seller shall transfer to Purchaser whatever warranties and guarantees for the heating, plumbing, electrical systems and appliances, etc., within the Seller's possession, to the extent that the same exist.

4. Seller represents that prior to closing at least two (2) operable carbon monoxide detectors will be installed in accordance with requirements of Section 378 sub 5(a) of the Executive Law, and that operable smoke detecting alarms will be installed pursuant to Section 378, Subdivision 5 and 5-a, of the Executive Law of the State of New York.

DocuSign Envelope ID: CBC47920-E543-4995-8F8C-04A1D89FA852

## Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

### Lead Warning Statement

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

### Seller's Disclosure

(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

    (i) _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

    (ii) _✓_ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the seller (check (i) or (ii) below):

    (i) _____ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

    (ii) _✓_ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

### Purchaser's Acknowledgment (initial)

(c) _____ Purchaser has received copies of all information listed above.

(d) _____ Purchaser has received the pamphlet Protect Your Family from Lead in Your Home.

(e) Purchaser has (check (i) or (ii) below):

    (i) _____ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

    (ii) _____ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

### Agent's Acknowledgment (initial)

(f) _____ Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

### Certification of Accuracy

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| Seller | Date | Seller | Date |
|---|---|---|---|
| _Adam Ilkowitz_ | 3/6/2015 | _Jessica Ilkowitz_ | 3/6/2015 |
| Purchaser | Date | Purchaser | Date |
| Agent | Date | Agent | Date |

DocuSign Envelope ID: CBC47820-E543-4995-8F8C-04A1D89FA852

5. The parties agree that facsimile and/or electronic DocuSign electronic signatures will be as binding and effective as original signatures and that this Contract may be signed in Counterpart.

_____
Michael Durand, Seller

_____
Marlene Zarfes, Seller

DocuSigned by:
Adam Ilkowitz
_____
Adam Ilkowitz, Purchaser

DocuSigned by:
Jenifer Ilkowitz
_____
Jenifer Ilkowitz, Purchaser

DocuSign Envelope ID: CBC47920-E543-4995-8F6C-04A1D89FA852

SCHEDULE "A"

ALL that certain plot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being in the Village of Pelham Manor, Town of Pelham, County of Westchester and State of New York, known as Lots Nos. 22, 23, and 24, Block B, on a certain map entitled, "Map of Property in the Town of Pelham, Westchester County, New York, belonging to the Pelhamdale Land Co.", made by Maclay and Davies, C.E. & C.S., dated December 10, 1890, and filed in the County Clerk's Office, Division of Land Records, formerly Register's Office of Westchester County, New York, January 9, 1891 in Volume 8 of Maps at page 117, said lots when taken together as one parcel are more particularly bounded and described as follows:

BEGINNING at a point on the easterly side of Willard Avenue (formerly Manor Lane) where the same is intersected by the division line between Lots Nos. 24 and 25 in Block B in Volume 8 of Maps at Page 117, said point also being distant 292.09 feet (292.11 feet as per map) southerly as measured along the easterly side of Willard Avenue (formerly Manor Lane) from the corner formed by the intersection of the easterly side of Willard Avenue (formerly Manor Lane) with the southeasterly side of Willard Avenue (formerly Manor Lane);

RUNNING THENCE from said point of beginning as so defined in an easterly direction along the division line between Lots Nos. 24 and 25 on a course forming a right angle with the easterly side of Willard Avenue (formerly Manor Lane) for a distance of 166.77 feet to the northwesterly corner of Lot No. 50;

RUNNING THENCE in a southeasterly direction along the division line between Lots Nos. 24 and 23 with Lot Nos. 50 and 51 on a course forming an interior angle of 97 degrees 23' 57" with the last described course for a distance of 25.88 feet (26.05 feet as per map) to the northeasterly corner of Lot No. 20;

RUNNING THENCE in a southwesterly direction along the division line between Lots Nos. 23 and 22 with Lots Nos 20 and 21 on a course forming an interior angle of 106 degrees 40' 18" with the last described course for a distance of 186.31 feet (186.25 feet as per map) to the corner formed by the intersection of the easterly side of Willard Avenue (formerly Manor Lane) with the northeasterly side of Willard Avenue (formerly Manor Lane);

RUNNING THENCE northerly along the same on a course forming an interior angle of 65 degrees 55' 45" with the last described course for a distance of 101.67 feet (101.64 feet as per map) to the point and place of BEGINNING.

a.carcaterra

DocuSign Envelope ID: CE85AD4D-531C-4CBA-8CC4-7FB30F1E3D1A

## SUPPLEMENTAL AGREEMENT

| | |
|---|---|
| Seller: | Michael Durand and Marlene Zarfes, as "Seller" |
| Purchaser: | Adam Ilkowitz and Jeniece Ilkowitz, as "Purchaser" |
| Premises: | 498 Manor Lane, Pelham, New York, as "Premises" |

Seller agrees to provide Purchaser with a separate $1,000.00 credit at closing in lieu of repairing the missing/damaged piece of corian countertop located in the kitchen of the Premises.

ACKNOWELDGED AND AGREED:

Dated: 3/9/15

X _____
Michael Durand, SELLER

X _____
Marlene Zarfes, SELLER

X _____
Adam Ilkowitz, PURCHASER

X _____
Jeniece Ilkowitz, PURCHASER