UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JENIECE ILKOWITZ and ADAM ILKOWITZ,

       Plaintiffs,

   -against-

MICHAEL DURAND, MARLENE ZARFES a/k/a
MARLENE DURAND, ALAN C. PILLA, HOULIHAN
LAWRENCE, INC., JANE H. CARMODY, THE
JUDICIAL TITLE INSURANCE AGENCY LLC, and
ENCO HOME INSPECTIONS LLC.

       Defendants.
-------------------------------------------------------------------X

Civil Action No.:
1:17-cv-00773 (PGG)

**RULE 56.1 STATEMENT AND COUNTERSTATEMENT**

Pursuant to Rule 56.1 of the Local Rules of the Southern District of New York, defendants Michael Durand and Marlene Zarfes a/k/a Marlene Durand ("Durands") submit this Response to Defendant Judicial Title Insurance Agency LLC's ("Judicial Title) Rule 56.1 Statetment. The Durands make additional factual allegations in Paragraphs 23 through 29.

1. In connection with Plaintiffs' purchase of the property located at 498 Manor Lane, Pelham, New York 10803 (the "Property") from the Durand Defendants, Judicial Title performed a title search of the Property prior to the closing. Declaration of Vincent Morano Dated June 1, 2017 ("Morano Dec.") at ¶ 6.

    **Response: Undisputed**

2. As part of the title search, Plaintiffs were provided with "Schedule B," a list of matters and items that would appear as exceptions from coverage unless disposed of to Judicial Title's satisfaction prior to the closing or delivery of the title insurance policy. Morano Dec. at ¶7.

**Response: Durands dispute that "unless disposed of to Judicial Title's satisfaction prior to the closing or delivery of the title insurance policy." No cited documentary evidence or exhibits state or support this conclusion.**

3. Schedule B, which was provided to Plaintiffs prior to closing, expressly states that: "all municipal departmental searches are not insurable items and this company assumes no liability for the accuracy." Morano Dec. at ¶ 8 and at Exhibit 2 (excerpted page from Schedule B to the title search).

**Response: Undisputed.**

4. The title search also contained the results of a municipal data search setting forth the unpaid taxes, water rates, assessments, and index liens existing as of the search date. Morano Dec. at ¶ 9.

**Response: Undisputed.**

5. The search results expressly stated that: "our policy does not insure against such items which have not become a lien up to the date of the policy or installments due after the date of the policy." Morano Dec. at ¶ 10 and at Exhibit 3 (Municipal Data search results from the title search).

**Response: Undisputed.**

6. In addition, the title search provided to Plaintiffs included the results of Departmental Searches. Morano Dec. at ¶ 11.

**Response: Undisputed.**

7. The first page of the Departmental Search results specifically stated that "any searches or returns reported herein are furnished FOR INFORMATION ONLY. They will not be

insured and the Company assumes no liability for the accuracy thereof." Morano Dec. at ¶ 12 and at Exhibit 4 (copies of the relevant pages of Departmental Searches from the title search).

**Response: Undisputed.**

8. The same page lists the departments that were and were not searched and expressly states that Health Department records were "N/A." Morano Dec. at ¶ 13 and at Exhibit 4, p. 1.

**Response: Undisputed.**

9. Subsequent pages state that the subject property had no Building Department violations and no Fire Department violations. Morano Dec. at ¶ 14 and at Exhibit 4, pp. 2-3.

**Response: Undisputed.**

10. Both of those pages expressly stated that: "This report is submitted for information purposes only. There are no intended third party beneficiaries. No liability is assumed." Morano Dec. at ¶ 15 and at Exhibit 4, pp. 2-3.

**Response: Undisputed.**

11. Effective on January 1, 2015, and re-dated at the time of closing on June 19, 2015, Judicial Title certified to Plaintiffs "that a good and marketable title to [the Property], subject to the liens, encumbrances and other matters, if any, set forth in this certificate may be conveyed and/or mortgaged by: Michael Durand and Marlene Zarfes, Husband and Wife, as Tenants by the Entirety." Morano Dec. at ¶ 16 and Exhibit 5 (Certificate of Title).

**Response: Undisputed.**

12. The Certificate of Title expressly states that: "Any claim arising by reason of the issuance hereof shall be restricted to the terms and conditions of the standard for of the title insurance policy." Morano Dec. at ¶ 17 and Exhibit 5, p.1.

**Response: Undisputed.**

13. The Certificate of Title also includes twelve (12) Conditions and Stipulations, of which Condition and Stipulation # 2 provides:

> This certificate is preliminary to the issuance of such policy or policies of title insurance and all liability and obligations hereunder shall cease and terminate six months after the effective date hereof or when the policy and policies committed for shall be issued by this company.

Morano Dec. at ¶ and at Exhibit 5 (Certificate of Title) at p.1.

**Response: Undisputed.**

14. Condition and Stipulation #10 of the Certificate of Title provides in relevant part that: "When municipal department searches are requested or required, the accuracy of the returns therein are not guaranteed nor are such searches continued beyond the date of the original search." Morano Dec. at ¶ 19 and Exhibit 5 (Certificate of Title) at p. 2.

**Response: Undisputed.**

15. Plaintiffs received a policy of title insurance issued by Judicial Title as agent for First American Title Insurance Company under the TIRSA Owner's Extended Protection Policy No. 50068360005402, Title No. 119778FA-W, Policy Amount $922,500 (the "Policy") on the closing date of June 19, 2015. Morano Dec. at ¶ 20 and Exhibit 6 (copy of Policy).

**Response: Undisputed.**

16. As stated in the Owner's Coverage Statement, the Policy covers the insureds' "actual loss from any risk described under Covered Risks if the event creating the risk exists on the Policy Date or, to the extent expressly stated, after the Policy Date." Morano Dec. at ¶ 21 and Exhibit 6 (Policy) at p.12.

**Response: Undisputed.**

17. As set forth in the Policy Exclusions, Plaintiffs are not insured against loss, costs, attorney's fees, and expenses resulting from the existence or violation of any government laws or regulations unless such violations appear in the "Public Records" on the Policy Date. Morano Dec. at ¶ 22 and Exhibit 6 (Policy) at p. 14.

**Response: Undisputed.**

18. "Public Records" are defined as "records that give constructive notice of matters affecting your Title, according to New York State law. With respect to Section 1.f. of the Exclusions, 'public records' shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the Land is located." Morano Dec. at ¶ 23 and Exhibit 6 (Policy) at p. 14.

**Response: Undisputed.**

19. "Title" is defined as "the ownership of the interest in the Land, as shown in Schedule A." Morano Dec. at ¶ 24 and Exhibit 6 (Policy) at p. 14.

**Response: Undisputed.**

20. The Policy contains twelve (12) Conditions, of which No. 9 provides in relevant part that: "Any claim You make against Us must be made under this Policy and is subject to its terms." Morano Dec. at ¶ 25 and Exhibit 6 at p. 16.

**Response: Undisputed.**

21. The Plaintiffs have not asserted any claim under the Policy. Morano Dec. at ¶ 26.

**Response: Undisputed.**

22. No claim has been asserted in this or any other action or proceeding that Plaintiffs did not receive good and marketable title to the subject property. Morano Dec. at ¶27.

**Response: Durands dispute Paragraph 22 to the extent that Plaintiffs' claim against Judicial Title concerns Judicial Title's negligence in performing its title and departmental searches and failing to disclose glaring documents evidencing lead contamination and violations within readily available public records held by both the the Village of Pelham Manor and Westchester County. Ilkowitz Aff., at ¶ 11.**

## COUNTER RULE 56.1 STATEMENT

23. Defendant Judicial Title failed to disclose documents and records evidencing lead contamination and violations within readily available public records – including building and housing departmental records of the Property – held by the Village of Pelham Manor and Westchester County. Ilkowitz Aff., ¶ 11.

24. The Village of Pelham Manor's public housing and building records file for the Property contained records and letters evidencing lead contamination and violations at the Property for lead levels exceeding the Westchester County Department of Health's regulations, which were found by Plaintiffs sometime after June 19, 2015. At least one of the records is stamped as received by the Village of Pelham Manor on April 9, 2001.

25. The Durands retained defendant/attorney Pilla to represent them as their attorney in the real estate transaction.

26. Pilla represented the Durands in the real estate transaction for the sale of the Property to Plaintiffs.

27. The Durands retained defendants/Houlihan Lawrence, Inc. and Jane Carmody to act and serve as their real estate broker for the real estate transaction for the sale of the Property, including the sale to the Plaintiffs.

28. Lead Paint disclosures were provided to Plaintiffs on behalf of the Durands.

29.     Plaintiffs and the Durands executed a Residential Contract of Sale for the Property on March 9, 2015.

Dated:  New York, New York
        July 13, 2017

                                                   McGivney, Kluger & Cook, P.C.

                                                   Richard E. Leff (RL-2123)
                                                   Attorneys for Defendants
                                                   Michael Durand and Marlene Zarfes a/k/a
                                                   Marlene Durand
                                                 80 Broad Street, 23rd Floor
                                                 New York, New York 10004
                                                 (212) 509-3456