```
UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JENIECE ILKOWITZ and ADAM ILKOWITZ,         :
                                             :
              Plaintiffs,                    :
                                             :    Civil Action No.: 1:17-cv-
       -against-                             :    00773 (PGG)
                                             :
MICHAEL DURAND, MARLENE ZARFES a/k/a        :
MARLENE DURAND, ALAN C. PILLA, HOULIHAN      :
LAWRENCE, INC., JANE H. CARMODY, THE        :
JUDICIAL TITLE INSURANCE AGENCY LLC, and    :
ENCO HOME INSPECTIONS LLC,                   :
                                             :
              Defendants.                    :
                                             :
-----------------------------------------------------------------------X
```

## AFFIDAVIT OF ADAM ILKOWITZ

STATE OF NEW YORK         )
                          ) ss.:
COUNTY OF WESTCHESTER     )

ADAM ILKOWITZ, being duly sworn, states:

      1.     I am, along with my wife, Jeniece Ilkowitz, plaintiffs ("Plaintiffs") in this matter. This lawsuit concerns certain misrepresentations and non-disclosures of lead contamination, and documents evidencing lead contamination and violations, of our family home located at 498 Manor Lane, Pelham Manor, New York 10803 (the "Home"), which we currently live in with our two and a half year old daughter, Rena Ilkowitz. As such, I am fully familiar with the facts and circumstances of the matter set forth below. I submit this affidavit in support of Plaintiffs' opposition to defendant Judicial Title Insurance Agency LLC's ("Judicial Title") motion to dismiss or summary judgement and defendant Alan C. Pilla's ("Pilla") motion to dismiss.

{02377463 / 5}

1

2. Attached as Exhibit A is a true and correct copy of the Complaint in this lawsuit, with supporting exhibits, filed on February 1, 2017.

3. I am, along with my wife, Jeniece Ilkowitz, the homeowners of the Home. We have owned the Home since March 9, 2015, which we purchased, as buyers, from defendants Michael Durand, Marlene Zarfes a/k/a/ Marlene Durand ("Durand Defendants"), as sellers. Leading to the purchase of the Home, we entered a contract of sale (the "Contract of Sale") for the Home with the Durand Defendants. As part of the Contract of Sale, Pilla was the selling attorney for the Durand Defendants. In addition, Pilla, as selling attorney, defendant Houlihan Lawrence, Inc. ("Houlihan Lawrence"), as the real estate brokerage firm, and Jane H. Carmody ("Carmody"), as the real estate broker employed by Houlihan Lawrence, were all agents of and hired by the Durand Defendants for the purchase of the Home.

4. Attached as Exhibit B is a true and correct copy of the complete Contract of Sale package as we received from Pilla, as selling attorney for the Durand Defendants. The final signed version of the Contract of Sale, as part of the package, is marked with DocuSign Envelope ID: CBC47920-E543-4995-8F6C-04A1D89FA852.

5. My wife and I closed on the Home, as purchasers, with the Durand Defendants, as sellers, on June 19, 2015.

6. As specifically stated in the Contract of Sale, Alan C. Pilla is listed as "Attorney for Seller." Moreover, at all times during the course of the purchase of the Home, including at the signing of the Contract of Sale and at the closing for the Home on June 19, 2015, Pilla presented himself as an agent and selling attorney for the Defendant Defendants for the sole purpose of selling the Home. Upon information and belief, the Durand Defendants retained Pilla to be their selling attorney for the sale of the Home to my wife and I and, as stated in the Statement of Closing

{02377463 / 5}

Title, paid Pilla a $1,850.00 fee as the selling attorney. Attached as Exhibit C is a true and correct copy the Statement of Closing and Trust Ledger Account. It is my understanding and belief that the Durand Defendants contracted with Pilla to be their selling attorney for the selling of the Home as we contracted with Brett Lando to represent us as the purchasing attorney for the Home.

7. As part of the Contract of Sale, the Durand Defendants signed the required Lead Warning Statement and Disclosure of Information on Lead-Based Paint and/or Lead-Based Hazards form. As marked on the form, and as signed by the Durand Defendants, the Durand Defendants certified that specifically certified that they had "no knowledge of lead-based paint and/or lead-based paint hazards in the [Home]" and that "[the Durand Defendants had] no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing."

8. At no point leading up to the Contract of Sale and the closing of the Home did the Durand Defendants, their brokers (Houlihan Lawrence and Carmody), or their selling attorney (Pilla) disclose the presence of the lead contamination of the Home or provide the readily available documents and reports showing lead contamination and violations of the Home.

9. Shortly after moving into the Home following the closing on June 19, 2015, a doctor's check-up of my daughter Rena revealed elevated levels of lead in her blood. We were extremely concerned – as any parent would be. Thereafter, while submitting a building permit request for our Home to the Village of Pelham Manor, my wife and I searched through the public departmental records file for our Home. While reviewing the public departmental records file for our Home, including all housing and building records, we were amazed to find records of lead contamination and violations. A simple search of the Village of Pelham Manor's public records revealed letters from the Westchester County Department of Health (the "Westchester DOH") revealing lead contamination and violations at the Home. Attached as Exhibit D is a true and

{02377463 / 5}

3

correct copy of the public records my copied from the Village of Pelham Manor's public departmental records file for our Home, including the lead violation and contamination records. At least one of the records is stamped as received by the Village of Pelham Manor on April 9, 2001. The Westchester DOH cited the Home in two separate letters, dated March 30, 2001 and April 26, 2001, and are addressed directly to the Durand Defendants for lead contamination and levels exceeding the Westchester DOH's guidelines, a violation of Westchester DOH's environmental regulations. In direct communications to the Durand Defendants, the Westchester DOH found that the Home was not in compliance with residential lead contamination laws and regulations. We then followed with additional public record requests to Westchester County. The public records requests for the Home revealed the very same letters, as well as additional records and reports evidencing lead contamination and violations of the Home. Attached as Exhibit E is a true and correct copy of the public records for the Home received from the Westchester County following our public records request.

10. My wife and I were utterly shocked and concerned since the Durand Defendants, Pilla, Houlihan Lawrence, Carmody, and Judicial Title all did not disclose any known presence of lead in the Home or any known records revealing lead contamination and violations in the Home, even when we had found Westchester DOH records and letters – available as easily accessible public records in both the Village of Pelham Manor's and the Westchester County's records.

11. Also as part of the Contract of Sale, my wife and I retained Defendant Judicial Title to perform a title search for records pertaining to the Home as a title agent and title abstracter. Judicial Title was to perform specific departmental searches, including departmental searches for housing, building, fire, and certificate of occupancy records pertaining to the Home. We separately paid for these additional services for a cost of $325.00. Attached as Exhibit F is a true and correct

{02377463 / 5}

4

copy of the Title Insurance Closing Estimate. Upon conducting the building departmental search of the Home, including a search of the Village of Pelham Manor's public records, Judicial Title did not find or disclose any documents or records of lead contamination or violations of the Home and returned a report indicating "no violations." Attached as Exhibit G is a true and correct copy of the result of Judicial Title's Building Department Violation Search. Moreover, Judicial Title failed to notify, inform, or disclose lead contamination and violations of the Home. Judicial Title utterly failed to disclose the glaring documents and records evidencing lead contamination and violations within readily available public records – including building departmental records of the Home – held by the Village of Pelham Manor and Westchester County.

12. After conducting the title and departmental searches, Judicial Title certified to us there was a "good and marketable title" to our Home. Attached as Exhibit H is a true and correct copy of the Title Search Certificate of Good Title.

13. As a direct result of the misrepresentations and non-disclosures of lead contamination, and documents evidencing lead contamination, by all of the Defendants, my wife and I have been damaged and have been required to, and will have to continue to spend, thousands of dollars to remediate and renovate our Home from the presence of lead. In addition, if the presence of lead and/or lead violations and documents had been rightfully disclosed prior to the Contract of Sale, my wife and I would not have purchased the Home or would not have agreed to pay the price of the Home in the Contract of sale, $922,500.00. As a result, we have also been subject to thousands of dollars of increased property tax and mortgage over payments.

{02377463 / 5}

_____
Adam Ilkowitz

Sworn to before me this 12th
day of July, 2017

_____
Notary Public

> MARK A RHODES
> Notary Public - State of New York
> NO. 02RH4964241
> Qualified in New York County
> My Commission Expires May 13, 2018

{02377463 / 5}