UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

JENIECE ILKOWITZ and ADAM ILKOWITZ,     :

                                       :

       Plaintiffs,                        :

                                         :      Civil Action No.: 1:17-cv-

     -against-                     :      00773 (PGG)

                                         :

MICHAEL DURAND, MARLENE ZARFES a/k/a  :

MARLENE DURAND, ALAN C. PILLA, HOULIHAN  :

LAWRENCE, INC., JANE H. CARMODY, THE     :

JUDICIAL TITLE INSURANCE AGENCY LLC, and  :

ENCO HOME INSPECTIONS LLC,          :

                                       :

       Defendants.                      :

                                       :

-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ALAN C. PILLA'S MOTION TO DISMISS THE COMPLAINT

**MESSNER REEVES LLP**
Attorneys for Plaintiffs
Jeniece Ilkowitz and Adam Ilkowitz
805 Third Avenue, 18th Floor
New York, New York 10022
Tel: (646) 663-1860
Fax: (646) 663 1895

{02381652 / 9}

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF THE FACTS ...................................................................................... 2

STANDARD OF REVIEW .............................................................................................. 3

    I.    Standard of Review Under FRCP 12(b)(6) Motion to Dismiss ........................................ 3

ARGUMENT .................................................................................................................... 4

    I.    Plaintiffs Sufficiently State an RLPHRA Claim Against Pilla ........................................... 4

    II.   The Court Should Exercise Supplemental Jurisdiction over Plaintiffs' State Law Claims 12

    III.  Plaintiffs Sufficiently State Negligence Claims Against Pilla ........................................... 14

    IV.  Fraud Claim ..................................................................................................................... 17

CONCLUSION ................................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 910 F.Supp.2d 543, 546 (S.D.N.Y. 2012) ............................................................................................................................... 18

*Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644 (1981)................. 17

*Akwesi v. Uptown Lube & C/W, Inc.*, 07-CV-335 (NRB), 2007 WL 4326732, *5 (S.D.N.Y. Dec. 3, 2007) ................................................................................................................................ 16

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................................ 4

*Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1073 (2d Cir. 1993)...................................... 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ................................................................... 4

*Brady v. Roosevelt S.S. Co.*, 317 U.S. 575, 580 (1943) ............................................................... 20

*Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 428 (2d Cir. 2013) ...................................... 17

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ............................................... 5

*Crandon v. United States,* 494 U.S. 152, 158 (1990) .................................................................... 9

*Dee v. Tanner*, 2015 WL 3935730, at *3, n. 3 (E.D. La. 2015) .................................................. 13

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)............................................. 3

*F.D.I.C. v. Hodge*, 50 F. Supp. 3d 327, 334 (E.D.N.Y. 2014)..................................................... 17

*Greenery Rehab. Grp., Inc. v. Hammon*, 150 F.3d 226, 231 (2d Cir. 1998) ............................. 8, 9

*Heredia v. United States*, 887 F.Supp. 77, 80 (S.D.N.Y. 1995) .................................................. 20

*Holloway v. United States,* 526 U.S. 1, 6 (1999) .......................................................................... 9

*In re DNTW Charted Accountants Sec. Litig.*, 96 F. Supp. 3d 155, 162-63 (S.D.N.Y. 2015 (J. Gardephe)................................................................................................................................ 3

*In re ICP Strategic Credit Income Fund Ltd.*, 2017 WL 1929546, at *7 (S.D.N.Y. May 9, 2017) 4

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 210 (2d Cir. 2014) ................................................................................................................................................. 17

*Jiminez v. Shahid*, 83 A.D.3d 900, 922 N.Y.S.2d 123, 124 (2011) ............................................ 17

*Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007) ................................... 4

*Maurillo v. Park Slope U–Haul,* 194 A.D.2d 142, 147, 606 N.Y.S.2d 243, 247 (2d Dep't 1993) ...................................................................................................................................... 20

*Polesuk v. CBR Sys., Inc.*, No. 05 CV 8324 (GBD), 2006 WL 2796789, at *5 (S.D.N.Y. Sept. 29, 2006) .................................................................................................................................. 8

*Prince v. Cablevision Systems Corp.*, 04-CV-8151 (RWS), 2005 WL 1060373, *13 (S.D.N.Y. May 6, 2005) ...................................................................................................................... 15

*Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) ......................................................... 21

*Rubin v. United States*, 449 U.S. 424, 430 (1981) ...................................................................... 9

*Sterling v. Jones*, 233 So.2d 537, 539, 255 La. 842, 848–49 (La. 1970)................................... 14

## **Statutes**

28 U.S.C. § 1367(a) ...................................................................................................................... 15

28 U.S.C. § 1367(c) ...................................................................................................................... 16

42 U.S.C. § 4852d......................................................................................................................... 5, 6

42 U.S.C. §§ 4851 *et seq*.............................................................................................................. 1, 7

## **Other Authorities**

Lead; Proposed Requirements for Disclosure of Information Concerning Lead-Based Paint in Housing; Proposed Rule, Federal Register, Vol. 59, No. 211 at 7 (Nov. 2, 1994)................... 10

Lead; Requirements for Disclosure of Known Lead-Based Paint and/or Lead-Based Paint Hazards in Housing, Federal Register, Vol. 61, No. 45 at 9069 (Mar. 6, 1996) .......... 10, 11, 12

S. Rep. No. 332, 102d Cong. (1992)............................................................................................. 5

## **Rules**

24 C.F.R. § 35.5(a)(2) .................................................................................................................. 5

24 C.F.R. § 35.86.......................................................................................................................... 6, 11

24 C.F.R. § 35.88.......................................................................................................................... 13

24 C.F.R. §35.5(a)(1) ................................................................................................................... 5

40 C.F.R. § 745.100 ..................................................................................................................... 6

Declining or Terminating Representation, Ann. Mod. Rules Prof. Cond. § 1.16........................ 13

Fed. R. Civ. P. 12(b)(6).....................................................................................................4

Fed. R. Civ. P. 15(a) .......................................................................................................20

Scope of Representation and Allocation of Authority between Client and Lawyer, Ann. Mod.
  Rules Prof. Cond. § 1.2.................................................................................................14

## INTRODUCTION

Plaintiffs Jeniece Ilkowitz and Adam Ilkowitz (collectively, "Plaintiffs") file this memorandum of law, and the accompanying Affidavit of Adam Ilkowitz ("Ilkowitz Aff."),[1] in opposition to Defendant Alan C. Pilla's ("Pilla") Motion to Dismiss (hereinafter, "Pilla's Motion to Dismiss").

## PRELIMINARY STATEMENT

Plaintiffs filed the instant complaint on February 2, 2017 against Defendants Michael Durand, Marlene Zarfes a/k/a/ Marlene Durand (the "Durand Defendants"), Pilla, Houlihan Lawrence, Inc. ("Houlihan Lawrence"), Jane H. Carmody ("Carmody"), the Judicial Title Insurance Agency LLC ("Judicial Title"), and ENCO Home Inspections LLC ("ENCO")[2] alleging violations of the Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. §§ 4851 *et seq*. ("RLPHRA"), and negligence, among other causes of actions, associated with lead contamination of a residential home purchased by Plaintiffs from the Durand Defendants.

Specifically as against Pilla, Plaintiffs bring claims under RLPHRA, as an agent of the Durand Defendants, as well as for fraud,[3] negligent misrepresentation, and negligence. As shown below, Pilla's Motion to Dismiss should be denied as to the RLPHRA, negligent misrepresentation, and negligence claims for following reasons: (1) Plaintiffs sufficiently state an RLPHRA claim against Pilla, as an agent of the Durand Defendants; (2) selling attorneys are not categorically exempt from RLPHRA's broad and flexible definition of "agent;"[4] and (3) the Complaint adequately pleads negligent misrepresentation and negligence claims against Pilla as

---

[1] All references to "Ex. __" herein shall refer to exhibits annexed to the Ilkowitz Aff. unless otherwise indicated.
[2] Plaintiffs have since discontinued their claim against Defendant ENCO Home Inspections, LLC.  *See* Dkt. 69.
[3] Plaintiffs now concede that Plaintiffs cannot sustain a cause of action for fraud against Pilla.
[4] Under RLPHRA "***any*** party who enters into a contract with a seller . . . for the purpose of selling [ ] housing" can be an agent subject to liability under RLPHRA.  24 C.F.R. § 35.86.

{02381652 / 9}

the Durand Defendant's agent.  As such, Plaintiffs request this Honorable Court deny Pilla's motion.

## STATEMENT OF THE FACTS

On March 9, 2015, Plaintiffs entered a Residential Contract of Sale (the "Contract of Sale") for the purchase of a residential home (the "Home"), located at 498 Manor Lane, Pelham Manor, New York 10803, from the Durand Defendants.  *See* Ilkowitz Aff., ¶ 3.  As specifically reflected in the Contract of Sale for the Home, Pilla was the "Attorney for Seller."  Ilkowitz Aff., ¶ 3, Ex. B, Contract of Sale.  Plaintiffs, as purchasers, and the Durand Defendants, as sellers, closed on the Home on June 19, 2015.  *See* Ilkowitz Aff., ¶ 5.  The Durand Defendants retained Pilla to be their selling attorney for the sale of the Home and, as stated in the Statement of Closing Title, paid Pilla a $1,850.00 fee as the selling attorney.  *See* Ilkowitz Aff., ¶ 6, Ex. C, Statement of Closing.

Soon after Plaintiffs moved into the Home, a doctor's check-up of Plaintiffs' daughter Rena Ilkowitz revealed elevated levels of lead in her blood.  *See* Ilkowitz Aff., ¶ 9.  Thereafter, Plaintiffs discovered records of lead contamination and violations at the Home in the Village of Pelham Manor's departmental records file for the Home.  *See* Ilkowitz Aff., ¶ 9.  A simple search of the Village of Pelham Manor's public records revealed letters from the Westchester County Department of Health (the "Westchester DOH") evidencing lead contamination and violations at the Home.  *See* Ilkowitz Aff., ¶ 9, Ex. D.  The records revealed that on March 30, 2001, the Westchester DOH cited the Home in a letter addressed to the Durand Defendants for lead contamination and levels exceeding the Westchester DOH's guidelines, a violation of Westchester DOH's environmental regulations. *See* Ilkowitz Aff., ¶ 9, Ex. D.  Plaintiffs then followed up with additional public record requests to Westchester County, responses to which revealed the very

same records evidencing the lead violations and contamination of the Home. *See* Ilkowitz Aff., ¶ 9, Ex. E.

At no point leading up to the Contract of Sale and the closing of the Home did the Durand Defendants, their brokers (Houlihan Lawrence and Carmody), or their selling attorney (Pilla) disclose the presence of the lead contamination of the Home or provide the readily available lead contamination and violation letters addressed directly to the Durand Defendants. *See* Ilkowitz Aff., ¶ 10. Moreover, in the statutorily required lead disclosure form completed and incorporated as part of the Contract of Sale for the Home, the Durand Defendants specifically certified that they had "no knowledge of lead-based paint and/or lead-based paint hazards in the [Home]" and that "[the Durand Defendants had] no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing." *See* Ilkowitz Aff., ¶¶ 7, 4, Ex. C, Contract of Sale (also as Complaint, Ex. B).

## STANDARD OF REVIEW

### I.     Standard of Review Under FRCP 12(b)(6) Motion to Dismiss

As Pilla correctly states: "[i]n considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *In re DNTW Charted Accountants Sec. Litig.*, 96 F. Supp. 3d 155, 162-63 (S.D.N.Y. 2015 (J. Gardephe); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see In re ICP Strategic Credit Income Fund Ltd.*, 2017 WL 1929546, at *7 (S.D.N.Y.

{02381652 / 9}

May 9, 2017). Courts have long followed the principle that, in considering a motion to dismiss, "a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor." *See e.g. Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007); *see also e.g. ICP Strategic Credit Income Fund Ltd.*, 2017 WL 1929546, at \*7; *see also Iqbal*, 556 U.S. at 678 ("A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action.").

Moreover, where a complaint relies on a document to the extent that it may be deemed integral to the complaint – such as here the Contract of Sale and attendant Closing Statement (attached as Exhibit E to the Declaration of Robert J. Bergson) – the Court may consider those documents as well. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

For the reasons set forth in more detail below, Plaintiffs adequately pled enough facts in the Complaint and the documents that make up the integral documents of the Complaint, accepted as true, on each of their claims, to "state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Furthermore, it does not appear beyond doubt that Plaintiffs can prove no set of facts which would entitle them to relief. Thus, Pilla's Motion to Dismiss must be denied.

## ARGUMENT

### I.    Plaintiffs Sufficiently State an RLPHRA Claim Against Pilla

In 1992, Congress passed RLPHRA to overhaul and "expand significantly the commitment of the federal government to reduce and eliminate lead-based paint hazards in older housing." S. Rep. No. 332, 102d Cong. (1992). On March 6, 1996, the final rule regarding Lead-Requirements for Disclosure of Known Lead-Based Paint and/or Lead-Based Paint Hazards in Housing was promulgated. The Rule applies only to the sale or lease of residential dwellings constructed prior

{02381652 / 9}

4

to 1978 ("target housing").  *See* 42 U.S.C. § 4852d; 24 C.F.R. §35.5(a)(1).  Under RLPHRA, sellers *and their agents* are required to disclose any known lead-based paint defects in the residential dwelling.  *See* 42 U.S.C. § 4852d; 24 C.F.R. § 35.5(a)(2).  Additionally, the seller *and their agents* are required to disclose all documentation about the presence of lead paint to buyers.  *See* 42 U.S.C. § 4852d; 40 C.F.R. § 745.100.

RLPHRA  provides that "the seller [ ]  shall . . . disclose to the purchaser [ ] the presence of any known lead-based paint, or any known lead-based paint hazards, in such housing and provide to the purchaser [ ] any lead hazard evaluation report available to the seller [ ]."  Moreover, RLPHRA, 42 U.S.C. § 4852d, mandates agents "to ensure compliance with the requirements of [RLPHRA]."  As such, "any person that knowingly violates the provisions of [RLPHRA] and supporting regulations" – including persons defined as agents under RLPHRA – "shall be jointly and severally liable to the purchaser [ ] in an amount equal to three times the amount of damages incurred by such individual." 42 U.S.C. § 4852d.  Regulations enacted pursuant to § 4852d broadly define "agent" as "any party who enters into a contract with a seller [ ], including any party who enters into a contract with a representative of the seller [ ], for the purpose of selling [ ] housing." 24 C.F.R. § 35.86.  In addition, the definition goes on to categorically exempt only one class from the broad definition of "agent:" "purchasers or any purchaser's representative who receives all compensation from the purchaser."  24 C.F.R. § 35.86.  The definition does not exclude or exempt any other class – attorney or otherwise.  As such, "***any*** party who enters into a contract with a seller . . . for the purpose of selling [ ] housing" can be an agent subject to liability under RLPHRA. 24 C.F.R. § 35.86.

Pilla states that "the allegations [in the Complaint] fail to allege that Pilla was an RLPHRA agent" and that '[t]here are no allegations giving rise to a plausible inference that the Durand

Defendants entered into a contract with Pilla or that the Durand Defendants contracted with Pilla 'for the purpose of selling' the House."   Pilla's Memorandum of Law, at 4.  Contrary to Pilla's assertions, the Complaint specifically alleges that "[o]n March 9, 2015, Plaintiffs, as purchasers, entered into a residential contract of sale with Durand Defendants, as sellers, and Defendants Alan C. Pilla, Jane H. Carmody and Houlihan Lawrence, Inc. as agents of the Durand Defendants, for the purchase of a residential home located at 498 Manor Lane, Pelham, New York 10803." Complaint, ¶ 12.  Moreover, the Complaint also alleges that "Defendants Houlihan Lawrence, Inc., Jane H. Carmody, and Alan C. Pilla were agents of the Durand Defendants for the purchase of the Property as defined under the Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. §§ 4851 *et seq*., and subsequent regulations under 24 C.F.R. § 35" and that "[t]he disclosure of information concerning lead upon transfer of residential property, 42 U.S.C. § 4852d, and subsequent obligations under 24 C.F.R. § 35.94, required Houlihan Lawrence, Inc., Jane H. Carmody, and Alan C. Pilla as the Durand Defendants' agents, to 'ensure compliance' with requirements of 42 U.S.C. § 4852d and the regulations promulgated thereto."  Complaint, ¶¶ 25-26.

Pilla became an agent of the Durand Defendants, as defined under RLPHRA, when Pilla entered into a contract – either orally or written – and agreed to be the selling attorney for the Durand Defendants for the sale of the Home.  *See* Ilkowitz Aff., ¶ 6.  Taken together, the Complaint, the Contract of Sale and the Closing Statement, which the Complaint relies heavily upon its terms and effect, suffice to allow a reasonable inference that Pilla entered into a contract with the Durand Defendants to be their selling attorney for the purchase of the Home and violated RLPHRA by not disclosing to Plaintiffs all knowledge and documentation about the presence of lead paint to buyers.  *See* Ilkowitz Aff., ¶ 4, 5, 6, Exs. B, C.  As such – and drawing all reasonable

{02381652 / 9}

inferences in favor of Plaintiffs – Plaintiffs have sufficiently stated a cause of action against Pilla under RLPHRA.

Pilla continues to argue that the Complaint must be dismissed because selling attorneys cannot categorically be agents under RLPHRA.  Citing to no case law, Pilla contends that "RLPHRA does not apply to attorneys, like Pilla, who are retained separate and apart from a real estate agent/broker, like Houlihan."  Pilla's Memorandum of Law, at 5.  Indeed, as stated by Pilla, the case law is limited.  *See* Pilla Memorandum of Law, at 5-6.  However, as an initial matter, since this question appears to be one of first impression before the Courts, Pilla's Motion to Dismiss should be denied.  *See Polesuk v. CBR Sys., Inc.*, No. 05 CV 8324 (GBD), 2006 WL 2796789, at *5 (S.D.N.Y. Sept. 29, 2006) (finding that where plaintiffs and defendants agree that the question is one of first impression, "the motion to dismiss should be denied because the facts [of the case] present[] a unique legal issue").

If the Court believes the question must be resolved by interpreting the definition of agent, the Court must first look to the language of the statute.  *See Greenery Rehab. Grp., Inc. v. Hammon*, 150 F.3d 226, 231 (2d Cir. 1998) ("In interpreting a statute, we must first look at the language of the statue itself.").  Thereafter, the Court must determine whether the language has a plain and unambiguous meaning with regard to the particular dispute. *See id*.  If the statutory terms are unambiguous, our review generally ends and the statute is construed according to the plain meaning of its words.  *See id.* (citing *Rubin v. United States,* 449 U.S. 424, 430 (1981)). Courts have found that words are given their ordinary, contemporary, common meaning unless there is an indication that Congress intended the words to bear some different import. *See id.*.; *see also Williams v. Taylor,* 529 U.S. 420 (2000).  The words chosen by Congress are the best evidence of drafters' intent. *See Holloway v. United States,* 526 U.S. 1, 6 (1999).  Along with the words, the

Courts also look to the design of the statute as a whole as well as its object and policy. *See Crandon v. United States,* 494 U.S. 152, 158 (1990). "Only where doubt or ambiguity resides in a Congressional enactment . . . may legislative history and other tools of interpretation beyond a plain reading of the statute's words" be used. *Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1073 (2d Cir. 1993).

Since the language defining agent could not be more clear – "agent means ***any*** party who enters into a contract with a seller . . . for the purpose of selling [ ] housing" – the Court need not rely on the statute's legislative history. However, in the event that the Court believes the definition of agent is ambiguous, an examination of the agency interpretation further supports that attorneys can be agents as defined under RLPHRA.[5]

As cited by Pilla, EPA and HUD clarified and revised the definition of agent after considering comments for the proposed definition. *See* Pilla Memorandum of Law, at 5-6. EPA and HUD revised the definition of agent "so that ***any*** party entering into a contractual relationship directly with the seller or lessor (or indirectly with a representative of the seller or lessor) for the purpose of selling or leasing the target housing, is an 'agent' for the purposes of this rule." Lead; Requirements for Disclosure of Known Lead-Based Paint and/or Lead-Based Paint Hazards in Housing, Federal Register, Vol. 61, No. 45 at 9069 (Mar. 6, 1996). In explaining this broad and liberal definition of "agent" under RLPHRA, EPA and HUD specifically stated that the definition

---

[5] Clarifying this definition, EPA and HUD have stated:

> [t]his definition [of agent] is based on the statutory wording of section 1018(a)(4) of the Act, which states that 'Whenever a seller or lessor has entered into a contract with an agent for the purpose of selling or leasing a residential dwelling of target housing, the regulations promulgated under this section shall require the agent, on behalf of the seller or lessor, to ensure compliance with the requirements of this section.' This provision clearly identifies an agent as a party who has entered into a contract for the purpose of selling or leasing target housing.

Lead; Proposed Requirements for Disclosure of Information Concerning Lead-Based Paint in Housing; Proposed Rule, Federal Register, Vol. 59, No. 211 at 7 (Nov. 2, 1994).

{02381652 / 9}

"provides necessary flexibility regarding which parties could be defined as 'agents' who have entered into a contract to sell or lease target housing and, as a consequence, would be covered by the requirements of this regulation."  Lead; Proposed Requirements for Disclosure of Information Concerning Lead-Based Paint in Housing; Proposed Rule, Federal Register, Vol. 59, No. 211 at 7 (Nov. 2, 1994).  Although not in the context specifically of real estate attorneys, EPA's and HUD's statement nonetheless highlights the liberal interpretation of who can be an agent, and thus liability, under RLPHRA.

Finally, if EPA and HUD had meant to categorically exclude real estate attorneys from being agents under RLPHRA, they would have specifically excluded it.  This is evident in the fact that when clarifying the definition, EPA and HUD even went as far as specifically excluding an class of agents as "agents" as defined under RLPHRA: "[t]his term [agent] does not apply to purchasers or any purchaser's representative who receives all compensation from the purchaser." 24 C.F.R. § 35.86.   If EPA or HUD had meant to categorically exclude attorneys from the definition, it would have done so as it did here.  There is no categorical exemption for attorneys and no such language exists for attorneys.  *See* Lead; Requirements for Disclosure of Known Lead-Based Paint and/or Lead-Based Paint Hazards in Housing, Federal Register, Vol. 61, No. 45 at 9069 (Mar. 6, 1996).

As further support that Congress intended attorneys to come under the definition of agent under RLPHRA, Plaintiffs direct the Courts attention to RLPHRA's object and policy which was in response to a national crisis of millions of children being impacted by lead poisoning. The purpose of Congress passing RLPHRA was to require parties involved in real estate transactions involving property constructed prior to 1978 to disclose the potential risk of lead-based paint and the hazards associated with same and to prevent exposure to lead-based paint

{02381652 / 9}

9

and/or lead-based paint hazards by requiring such disclosure and notification.  An attorney has a

higher knowledge and skill when preparing the lease or an agreement of sale RLPHRA and its

disclosure regulations must be complied with to avoid and prevent the exposure of children to lead

based paint and hazards. To render a finding that an attorney does not fall under the meaning

of Agent under the Act would be inconsistent with the plain meaning of the Act and the regulations

and would produce an absurd result.

     In addition, RLPHRA agent responsibilities concern *legal compliance* with provisions of

the law:

### E. Agent Responsibilities

Title X specifically addresses the responsibilities of agents,
requiring them to *ensure compliance with the provisions of the law*.
Agents fulfill this requirement by informing sellers or lessors of
their obligations and by making sure that these activities are
completed either by the seller or lessor or by the agent personally.
Accordingly, 24 CFR 35.94(b) and 40 CFR 745.107(c) identify the
seller's affirmative duty to disclose to the agent any known lead-
based paint and/or lead-based paint hazards on the property.
Provided that the agent has actually informed the seller or lessor
of his/her obligation, the final rule notes that the agent will not be
responsible for information withheld from the agent by the seller or
lessor

Lead; Requirements for Disclosure of Known Lead-Based Paint and/or Lead-Based Paint Hazards
in Housing, Federal Register, Vol. 61, No. 45 at 9069 (Mar. 6, 1996) (emphasis added).

As is the responsibility of any attorney, an RPLHRA agent is to advise, counsel, and ensure that

their client complies with the law.  The attorney/agent responsibilities are not conflicting.  Rather,

the responsibilities are mutually aligned.

     Pilla also misconstrues the mandatory disclosure requirements under RLPHRA.  Pilla

states that "imposing the mandatory disclosure requirements of the RLPHRA upon attorneys

would effectively mean that the attorney-client privilege does not apply to residential real estate

transactions that fall within the statute." Pilla's Memorandum of Law, at 6. However, the requirements are meant for sellers, not agents, to disclose known lead contamination or reports to purchasers. *See* 24 C.F.R. § 35.88. Although sellers do have a duty to disclose known lead contamination to agents, contrary to Pilla's assertions, the duty would not create a disincentive to a seller from seeking advice concerning compliance with the RLPHRA. Further, it would not mean the attorney-client privilege would not apply to residential real estate transactions under the statute. Rather, the sellers' disclosure requirements to selling attorney agents would allow RLPHRA to work as Congress intended – to have agents *counsel* sellers to ensure compliance with the provisions of the law. Thus, an attorney's duties and an RLPHRA agent's duties are the same – to guide and counsel sellers of their obligations under the law.

In the event that a potential attorney-client privilege might apply – where an attorney knows of both lead contamination and a seller's/client's intention not to disclose the information or documents to the purchaser, and thus impending violation of the statute – there is a required remedy: withdrawal. Under ABA Model Rules of Professional Conduct, Rule 1.16(a)(1), "a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if . . . the representation will result in violation of the Rules of Professional Conduct or other law." Declining or Terminating Representation, Ann. Mod. Rules Prof. Cond. § 1.16; *see also Dee v. Tanner*, 2015 WL 3935730, at *3, n. 3 (E.D. La. 2015) (citing Rule 1.16 and *quoting Sterling v. Jones*, 233 So.2d 537, 539, 255 La. 842, 848–49 (La. 1970) ("we, of course, recognize the legal right of an attorney-at-law, like any other agent, to discontinue his agency and that he may at any state of the litigation secure an order of court permitting him to withdraw as counsel of record"). Thus, only in the scenario where a seller, pursuant to the seller's disclosure requirements to an attorney/agent, discloses known lead contamination and then

{02381652 / 9}

11

informs the attorney/agent of their intent not to comply with the statute, the Rules of Professional

Conduct cover and require the attorney to withdraw.[6]

Finally, Pilla suggests that documentary evidence supports the conclusion that selling

attorneys cannot be agents under RLPHRA, arguing that since the lead disclosure form in the

Contract of Sale only has a signature line for "Seller's Agent," and not one for "Attorney,"

RLPHRA never meant for attorney's to be agents as defined under the statute.  *See* Pilla

Memorandum of Law, at 7.  Following this logic, the fact that the lead disclosure form does not

specifically reference "real estate agent or broker" would exclude real estate agents or brokers as

agents.  In fact, by referencing only "Seller's Agent" and not "Real Estate Agent or Broker," the

form further supports Plaintiff's argument that the liberal definition of agent under RLPHRA

includes real estate attorneys.

For the reasons set forth above, Plaintiffs have adequately pled a claim against Pilla under

RLPHRA.  As such, Pilla's Motion to Dismiss as to the federal RLPHRA claim must be denied.

## II.     The Court Should Exercise Supplemental Jurisdiction over Plaintiffs' State Law Claims

Pilla asks that the Court decline to exercise supplemental jurisdiction over Plaintiffs' state

law claims in the event the Court dismisses the federal RLPHRA claim.  However, beyond the

scenario where the Court dismisses the federal RLPHRA claim, the Court should not decline

supplemental jurisdiction over the state law claims as Pilla offers no explanation or rationale for

---

[6] Further, the scenario would violate ABA Model Rules of Professional Conduction, Rule 1.2(d):

> [a] lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law. Scope of Representation and Allocation of Authority between Client and Lawyer, Ann. Mod. Rules Prof. Cond. § 1.2.

his arguments.  There is simply no basis for the Court to decline supplemental jurisdiction in any other situation.

Pursuant to 28 U.S.C. § 1367(a), federal courts have supplemental jurisdiction over a state law claim "if it and the federal claim 'derive from a common nucleus of operative fact.'" *Prince v. Cablevision Systems Corp.*, 04-CV-8151 (RWS), 2005 WL 1060373, *13 (S.D.N.Y. May 6, 2005) (internal citations omitted).  Here, Plaintiff's state law claims each share a common nucleus of operative fact with the federal claims: the assault and denial of medical treatment to Plaintiff.

A District Court may decline to exercise supplemental jurisdiction over a state law claim when "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).  In this case, if the Court denies Pilla's motion to dismiss as to the federal claim, none of these factors favor declining supplemental jurisdiction.

First, the state law issues raised by Plaintiffs are neither novel nor complex; they involve fraud and negligence claims. Second, these state claims do not predominate over Plaintiffs' federal claim.  Finally, Pilla has not offered any compelling reason for the Court to decline supplemental jurisdiction and Plaintiff respectfully submits that no such reason exists (apart from the dismissal of the federal claim).

As such, the Court should exercise supplemental jurisdiction over Plaintiffs' state law claims.  *See Akwesi v. Uptown Lube & C/W, Inc.*, 07-CV-335 (NRB), 2007 WL 4326732, *5 (S.D.N.Y. Dec. 3, 2007) ("Since defendant has been unsuccessful in dismissing the plaintiff's

{02381652 / 9}

13

federal claim at this time, and since all the claims arise from the same nucleus of events, the exercise of supplemental jurisdiction at this stage is entirely appropriate.")

## III.    Plaintiffs Sufficiently State Negligence Claims Against Pilla

As a matter of law, under the facts alleged in the Complaint and as incorporated by the Contract of Sale, Plaintiffs' negligent misrepresentation and negligence claims against Pilla are actionable.  At the very least, issues of fact requiring discovery exist concerning whether this is the case.

To establish a prima facie case of negligence under New York law, a plaintiff must demonstrate "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty, (3) injury to the plaintiff as a result thereof, and (4) the injury was foreseeable." *See F.D.I.C. v. Hodge*, 50 F. Supp. 3d 327, 334 (E.D.N.Y. 2014); *see also In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 210 (2d Cir. 2014) (quoting *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 428 (2d Cir. 2013) and *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644 (1981)); *see also Jiminez v. Shahid*, 83 A.D.3d 900, 922 N.Y.S.2d 123, 124 (2011).

Here, the Complaint sufficiently states all the necessary elements for a negligence claim against Pilla.  The Complaint states:

> ***Defendants***, individually or by and through ***their agents***, servants, and/or employees, ***were charged with the duty*** of ensuring the Property adhered to the contract of sale and was not in defective or hazardous condition, and/or disclosing the presence of any known lead-based paint, or any known lead-based paint hazards in the Property, which they inspected, performed contracted title and background searches, made warranties regarding the Property as part of the sale of the Property, or participated in the sale of the Property
>
> . . . .

As a ***direct and proximate result of Defendants' negligence, Plaintiffs suffered damages*** for past and future costly remediation costs to remove and replace lead-based paint and lead contamination from the Property, as well as other associated property maintenance and repairs, medical expenses, greater property, mortgage recording, and title insurance taxes, mortgage overpayment, and the difference in value of the property as represented and what it actually was worth, among other damages, in amounts to be proven at trial.

. . . .

The aforesaid occurrence was ***caused solely and wholly by reason of the negligence of Defendants***, and each of them, and by and through their ***agents***, servants, and/or employees, in the ownership, operations, control, care, custody, charge, supervisions, management, reporting, and inspection of the Property; in causing, creating, permitting, and/or allowing a dangerous, hazardous, defective, and unlawful condition to be, continue, and remain in the Property without disclosure; in failing to give Plaintiffs herein any notice, warning, or mandated disclosure of the dangerous conditions or past or current presence of dangerous conditions as set forth herein, in failing to reasonably inspect the Property as to ascertain the herein above referenced conditions, and in failing to reasonably search and find above referenced conditions and documents concerning the Property and title; in violating the applicable and pertinent rules, regulations, statutes, and/or codes of the Residential Lead-Based Paint Hazard Reduction Act; in causing, creating and allowing a dangerous condition to exist in the Property; in failing and neglecting to take the necessary and requisite steps to disclose or prevent this foreseeable occurrence, although Defendants, and each of them, knew or reasonably should have known of the conditions complained herein.

Complaint, ¶¶ 63, 65, 66.

As for negligent misrepresentation, a claim "requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 910 F.Supp.2d 543, 546 (S.D.N.Y. 2012).

The Complaint also sufficiently states the following elements for a negligent misrepresentation claim against Pilla.  The Complaint states:

> In inducing Plaintiffs to execute the contract of sale to purchase the Property, and to proceed to closing on the contract of sale . . . ***Alan C. Pilla*** as the Durand Defendants' real estate attorney and agent, ***made misrepresentations of material facts*** and/or engaged in the concealment or nondisclosure of material facts necessary for their statements not to be false or misleading, in concealing from Plaintiffs any known lead-based paint, or any known lead-based paint hazards in the Property, and specifically certifying that they have "no knowledge of lead-based paint and/or lead-based paint hazards in the [Property]" and that "[the Durand Defendants have] no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the [Property]."
>
> . . . .
>
> ***Alan C. Pilla*** as the Durand Defendants' real estate attorney and agent, ***failed to exercise reasonable care*** in making these misrepresentations and/or engaging in these concealments or nondisclosure, in view of the fact that Plaintiffs were unaware of any known lead-based paint, or any known lead-based paint hazards in the Property, which was not readily observable or apparent to Plaintiffs.
>
> . . . .
>
> ***Alan C. Pilla*** as the Durand Defendants' real estate attorney and agent, ***knew or in the exercise of reasonable care should have known***, presence of any known lead-based paint, or any known lead-based paint hazards in the Property.
>
> . . . .
>
> Alan C. Pilla as the Durand Defendants' real estate attorney and agent, ***knew or in the exercise of reasonable care should have known***, that Plaintiffs were unaware of the presence of any known lead-based paint, or any known lead-based paint hazards in the Property, and that Plaintiffs would reasonably rely upon these misrepresentations and/or concealments or nondisclosures in executing the contract of sale to purchase the Property and to proceed to closing on the Property.
>
> . . . .

16

> Alan C. Pilla as the Durand Defendants' real estate attorney and agent, **had a duty** to disclose the existence of the presence of any known lead-based paint, or any known lead-based paint hazards in the Property to Plaintiffs.

Complaint, ¶¶ 37, 38, 39, 40, 42.

Pilla attacks Plaintiffs' negligent misrepresentation and negligence claims by arguing that the claims can only be asserted against a professional or attorney where there is "contractual privity or a relationship so close as to approach that of privity." Pilla's Motion to Dismiss, at 9-10. As stated above, however, Plaintiffs' negligence claims against Pilla are not against Pilla as a professional or attorney, but as an agent of the Durand Defendants.

As stated by the Supreme Court, "[t]he liability of an agent for his own negligence has long been embedded in the law." *Brady v. Roosevelt S.S. Co.*, 317 U.S. 575, 580 (1943). Moreover, "New York courts have held that 'where the circumstances alleged in the pleading raise the possibility of a principal-agent relationship, and no written authority for the agency is established, questions as to the existence and scope of the agency' are issues of fact and are not properly the basis of a motion to dismiss." *Heredia v. United States*, 887 F.Supp. 77, 80 (S.D.N.Y. 1995) (quoting *Maurillo v. Park Slope U–Haul*, 194 A.D.2d 142, 147, 606 N.Y.S.2d 243, 247 (2d Dep't 1993). At this juncture, it is premature to dismiss the negligence claims against Pilla. As such, the negligence claims should not be dismissed.

## IV. Fraud Claim

Plaintiffs concede that Plaintiffs cannot sustain a cause of action for fraud against Pilla.

## CONCLUSION

As a result of the foregoing, Pilla's Motion to Dismiss should be denied as to the RLPHRA, negligent misrepresentation, and negligence claims. While Plaintiffs are confident the Complaint

{02381652 / 9}

adequately pleads RLPHRA, and negligence claims against Pilla, if the Court finds differently,

Plaintiffs respectfully request leave to amend the Complaint to address any deficiencies.[7]

Dated: New York, New York
      July 13, 2017

                              **MESSNER REEVES LLP**
                              *Attorneys for Plaintiffs Jeniece*
                              *Ilkowitz and Adam Ilkowitz*

                              By: _____
                              Jean-Claude Mazzola
                              Benjamin S. Lowenthal
                              805 Third Avenue, 18th Floor
                              New York, New York 10022
                              Tel: (646) 663-1860
                              Fax: (646) 663 1895

---

[7] Leave to amend should be granted freely "when justice so requires." Fed. R. Civ. P. 15(a). *See also Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) (finding that when a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint).
{02381652 / 9}