UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENIECE ILKOWITZ and ADAM ILKOWITZ, | Case No. 17 Civ. 773 (PGG) |
| Plaintiffs, | **NOTICE OF MOTION** |
| -against- | |
| MICHAEL DURAND, MARLENE ZARFES a/k/a MARLENE DURAND, ALAN C. PILLA, HOULIHAN LAWRENCE, INC. JANE H. CARMODY, THE JUDICIAL TITLE INSURANCE AGENCY LLC, and ENCO HOME INSPECTIONS LLC, | |
| Defendants. | |

PLEASE TAKE NOTICE that, upon the accompanying Statement of Material Facts pursuant to Local Civil Rule 56.1, the Declaration of Vincent Morano dated June 1, 2017, and the exhibits thereto, the Declaration of Scott J. Pashman dated June 1, 2017, and the exhibits thereto, the accompanying memorandum of law, and upon all the pleadings and proceedings heretofore had herein, Defendant Judicial Title Insurance Agency LLC ("Judicial Title") will move this Court, at a time and date to be set by the Court, for an Order, pursuant to Fed. R. Civ. P. 12(b)(6), 12(d), and 56, dismissing or granting summary judgment with respect to (1) Plaintiffs' Fifth Cause of Action for Negligence, which is the only cause of action asserted by Plaintiffs against Judicial Title; (2) the cross-claim for contribution and/or indemnification asserted against Judicial Title by Defendants Michael Durand and Marlene Zarfes, a/k/a Marlene Durand ("Durand Defendants"); and (3) the cross-claim for contribution and/or indemnification asserted by Defendant Houlihan Lawrence, Inc. and Jane H. Carmody.

In accordance with the Court's Order dated May 1, 2017 (Docket No. 67), opposition papers shall be due on June 29, 2017, and reply papers shall be due on July 10, 2017.

Dated: New York, New York
June 1, 2017

Respectfully submitted,

ADAM LEITMAN BAILEY, P.C.

By: _____
　　Adam Leitman Bailey
　　Scott J. Pashman
　　Danny Ramrattan

One Battery Park Plaza, 18th Floor
New York, New York 10004
(212) 825-0365
Email 1: alb@alblawfirm.com
Email 2: spashman@alblawfirm.com
Email 3: dramrattan@alblawfirm.com

*Attorneys for Defendant*
*The Judicial Title Insurance Agency LLC*

<u>Service List</u>

Jean-Claude Mazzola
Benjamin S. Lowenthal
Messner Reeves LLP
805 Third Avenue, 18th Floor
New York, New York 10022
*Attorneys for Plaintiffs*

Richard Leff
McGivney & Kluger
80 Broad Street
New York, New York 10004
*Attorneys for Durand Defendants*

Jeffrey Briem
Jones Morrison LLP
670 White Plains Road, PH
Scarsdale, NY 10583
*Attorneys for Houlihan Lawrence and Carmody*

Robert Bergson
Abrams Garfinkel Margolis Bergson, LLP
1430 Broadway, 17th Floor
New York, New York 10018
*Attorneys for Pilla*

Dan Chorost
Katherine Ghilain
Sive, Paget & Riesel P.C.
560 Lexington Avenue, 15th Floor
New York, New York 10022
*Attorneys for ENCO*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENIECE ILKOWITZ and ADAM ILKOWITZ, | Case No. 17 Civ. 773 (PGG) |
| Plaintiffs, | **RULE 56.1 STATEMENT** |
| -against- | |
| MICHAEL DURAND, MARLENE ZARFES a/k/a MARLENE DURAND, ALAN C. PILLA, HOULIHAN LAWRENCE, INC. JANE H. CARMODY, THE JUDICIAL TITLE INSURANCE AGENCY LLC, and ENCO HOME INSPECTIONS LLC, | |
| Defendants. | |

Defendant The Judicial Title Insurance Agency LLC ("Judicial Title"), by its attorneys, Adam Leitman Bailey, P.C., pursuant to Local Civil Rule 56.1(a), respectfully sets forth the following material facts as to which Judicial Title Contends that there is no genuine issue to be tried.

1. In connection with Plaintiffs' purchase of the property located at 498 Manor Lane, Pelham, New York 10803 (the "Property") from the Durand Defendants, Judicial Title performed a title search of the Property prior to the closing. Declaration of Vincent Morano dated June 1, 2017 ("Morano Dec.") at ¶ 6.

2. As part of the title search, Plaintiffs were provided with "Schedule B," a list of matters and items that would appear as exceptions from coverage unless disposed of to Judicial Title's satisfaction prior to the closing or delivery of the title insurance policy. Morano Dec. at ¶ 7.

3.      Schedule B, which was provided to Plaintiffs prior to closing, expressly states that: "all municipal departmental searches are not insurable items and this company assumes no liability for the accuracy." Morano Dec. at ¶ 8 and at Exhibit 2 (excerpted page from Schedule B to the title search).

4.      The title search also contained the results of a municipal data search setting forth the unpaid taxes, water rates, assessments, and indexed liens existing as of the search date. Morano Dec. at ¶ 9.

5.      The search results expressly stated that: "our policy does not insure against such items which have not become a lien up to the date of the policy or installments due after the date of the policy." Morano Dec. at ¶ 10 and at Exhibit 3 (Municipal Data search results from the title search).

6.      In addition, the title search provided to Plaintiffs included the results of Departmental Searches. Morano Dec. at ¶ 11.

7.      The first page of the Departmental Search results specifically stated that "any searches or returns reported herein are furnished FOR INFORMATION ONLY. They will not be insured and the Company assumes no liability for the accuracy thereof." Morano Dec. at ¶ 12 and at Exhibit 4 (copies of the relevant pages of Departmental Searches from the title search).

8.      The same page lists the departments that were and were not searched and expressly states that Health Department records were "N/A." Morano Dec. at ¶ 13 and at Exhibit 4, p. 1.

9.     Subsequent pages state that the subject property had no Building Department violations and no Fire Department violations.  Morano Dec. at ¶ 14 and at Exhibit 4, pp. 2-3.

10.     Both of those pages expressly stated that: "This report is submitted for information purposes only.  There are no intended third party beneficiaries.  No liability is assumed." Morano Dec. at ¶ 15 and at Exhibit 4, pp. 2-3.

11.     Effective on January 1, 2015, and re-dated at the time of closing on June 19, 2015, Judicial Title certified to Plaintiffs "that a good and marketable title to [the Property], subject to the liens, encumbrances and other matters, if any, set forth in this certificate may be conveyed and/or mortgaged by: Michael Durand and Marlene Zarfes, Husband and Wife, as Tenants by the Entirety."  Morano Dec. at ¶ 16 and Exhibit 5 (Certificate of Title).

12.     The Certificate of Title expressly states that: "Any claim arising by reason of the issuance hereof shall be restricted to the terms and conditions of the standard form of title insurance policy."  Morano Dec. at ¶ 17 and Exhibit 5, p. 1.

13.     The Certificate of Title also includes twelve (12) Conditions and Stipulations, of which Condition and Stipulation # 2 provides:

> This certificate is preliminary to the issuance of such policy or policies of title insurance and all liability and obligations hereunder shall cease and terminate six months after the effective date hereof or when the policy or policies committed for shall be issued by this company.

Morano Dec. at ¶ 18 and at Exhibit 5 (Certificate of Title) at p. 2.

14.    Condition and Stipulation # 10 of the Certificate of Title provides in relevant part that: "When municipal department searches are requested or required, the accuracy of the returns therein are not guaranteed nor are such searches continued beyond the date of the original search."  Morano Dec. at ¶ 19 and Exhibit 5 (Certificate of Title) at p. 2.

15.    Plaintiffs received a policy of title insurance issued by Judicial Title as agent for First American Title Insurance Company under the TIRSA Owner's Extended Protection Policy No. 50068360005402, Title No. 119778FA-W, Policy Amount $922,500.00 (the "Policy") on the closing date of June 19, 2015.  Morano Dec. at ¶ 20 and Exhibit 6 (copy of Policy).

16.    As stated in the Owner's Coverage Statement, the Policy covers the insureds' "actual loss from any risk described under Covered Risks if the event creating the risk exists on the Policy Date or, to the extent expressly stated, after the Policy Date." Morano Dec. at ¶ 21 and Exhibit 6 (Policy) at p. 12.

17.    As set forth in the Policy Exclusions, Plaintiffs are not insured against loss, costs, attorney's fees, and expenses resulting from the existence or violation of any government laws or regulations unless such violations appear in the "Public Records" on the Policy Date.  Morano Dec. at ¶ 22 and Exhibit 6 (Policy) at p. 14.

18.    "Public Records" are defined as "records that give constructive notice of matters affecting your Title, according to New York State law.  With respect to Section 1.f. of the Exclusions, 'public records' shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the Land is located."  Morano Dec. at ¶ 23 and Exhibit 6 (Policy) at p. 14.

19.     "Title" is defined as "the ownership of the interest in the Land, as shown in Schedule A." Morano Dec. at ¶ 24 and Exhibit 6 (Policy) at p. 14.

20.     The Policy contains twelve (12) Conditions, of which No. 9 provides in relevant part that: "Any claim You make against Us must be made under this Policy and is subject to its terms." Morano Dec. at ¶ 25 and Exhibit 6 at p. 16.

21.     The Plaintiffs have not asserted any claim under the Policy. Morano Dec. at ¶ 26.

22.     No claim has been asserted in this or any other action or proceeding that Plaintiffs did not receive good and marketable title to the subject property. Morano Dec. at ¶ 27.

Dated: New York, New York
        June 1, 2017

Respectfully submitted,

ADAM LEITMAN BAILEY, P.C.

By: _____
        Adam Leitman Bailey
        Scott J. Pashman
        Danny Ramrattan

One Battery Park Plaza, 18th Floor
New York, New York 10004
(212) 825-0365
Email 1:  alb@alblawfirm.com
Email 2:  spashman@alblawfirm.com
Email 3:  dramrattan@alblawfirm.com

*Attorneys for Defendant*
*The Judicial Title Insurance Agency LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENIECE ILKOWITZ and ADAM ILKOWITZ, | Case No. 17 Civ. 773 (PGG) |
| Plaintiffs, | **APPENDIX OF RECORD RECORD AUTHORITY TO DEFENDANT JUDICIAL TITLE'S RULE 56.1 STATEMENT** |
| -against- | |
| MICHAEL DURAND, MARLENE ZARFES a/k/a MARLENE DURAND, ALAN C. PILLA, HOULIHAN LAWRENCE, INC. JANE H. CARMODY, THE JUDICIAL TITLE INSURANCE AGENCY LLC, and ENCO HOME INSPECTIONS LLC, | |
| Defendants. | |

Defendant The Judicial Title Insurance Agency LLC ("Judicial Title"), by its attorneys, Adam Leitman Bailey, P.C., pursuant to Rule V(C) of the Individual Rules of Practice of Judge Paul G. Gardephe in Civil Cases, sets forth the following contents of record authority supporting Judicial Title's Local Civil Rule 56.1(a) Statement:

Declaration of Vincent Morano dated June 1, 2017;

Declaration of Scott J. Pashman dated June 1, 2017;

Exhibit 1:  Plaintiffs' Complaint filed February 1, 2017;

Exhibit 2:  Excerpt from Schedule B to Title Report;

Exhibit 3:  Municipal Data Results from Title Report;

Exhibit 4:  Department Searches from Title Report;

Exhibit 5:  Certificate of Title

Exhibit 6:  Title Policy

Exhibit 7:  Durand Amended Answer with Cross-Claim filed February 16, 2017;

Exhibit 8:  So Ordered Stipulation Discontinuing Cross-Claim With Prejudice entered April 25, 2017; and

Exhibit 9:  Answer with Cross-Claim by Defendants Houlihan Lawrence Inc. and Jane H. Carmody filed on April 21, 2017.

Dated:  New York, New York
        June 1, 2017

                                    Respectfully submitted,

                                    ADAM LEITMAN BAILEY, P.C.

                                    By: _____
                                        Adam Leitman Bailey
                                        Scott J. Pashman
                                        Danny Ramrattan

                                    One Battery Park Plaza, 18th Floor
                                    New York, New York 10004
                                    (212) 825-0365
                                    Email 1:  alb@alblawfirm.com
                                    Email 2:  spashman@alblawfirm.com
                                    Email 3:  dramrattan@alblawfirm.com

                                    *Attorneys for Defendant*
                                    *The Judicial Title Insurance Agency LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENIECE ILKOWITZ and ADAM ILKOWITZ, | Case No. 17 Civ. 773 (PGG) |
| Plaintiffs, | **DECLARATION OF** <br> **VINCENT MORANO** |
| -against- | |
| MICHAEL DURAND, MARLENE ZARFES a/k/a MARLENE DURAND, ALAN C. PILLA, HOULIHAN LAWRENCE, INC. JANE H. CARMODY, THE JUDICIAL TITLE INSURANCE AGENCY LLC, and ENCO HOME INSPECTIONS LLC, | |
| Defendants. | |

VINCENT MORANO hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am Executive Vice President of Defendant The Judicial Title Insurance Agency LLC ("Judicial Title").  I have been employed at Judicial Title since 1991 where I have served as a Department Supervisor, Reader, Clearance Officer, and currently Executive Vice President.

2.      I make this declaration on the basis of my personal knowledge.

3.      I respectfully submit this declaration in support of Judicial Title's motion, pursuant to Fed. R. Civ. P. 12(b)(6), 12(d), and 56, for dismissal or summary judgment with respect to (1) Plaintiffs' Fifth Cause of Action for Negligence, which is the only cause of action asserted by Plaintiffs against Judicial Title; (2) the cross-claim for contribution and/or indemnification asserted against Judicial Title by Defendants Michael Durand and Marlene Zarfes, a/k/a Marlene Durand ("Durand Defendants"); and (3) the

cross-claim for contribution and/or indemnification asserted by Defendant Houlihan Lawrence, Inc. and Jane H. Carmody.

4.      Specifically, I submit this declaration in order to explain certain facts and to offer into evidence certain documents, not referred to in the Complaint, that demonstrate why Plaintiffs' Complaint fails to state a cause of action against Judicial Title, that there is no genuine dispute as to any material fact concerning Judicial Title, and that Judicial Title is entitled to judgment as a matter of law.

5.      A copy of Plaintiffs' Complaint filed on February 1, 2017, is annexed hereto as Exhibit 1.

6.      In connection with Plaintiffs' purchase of the property located at 498 Manor Lane, Pelham, New York 10803 (the "Property") from the Durand Defendants, Judicial Title performed a title search of the Property prior to the closing.

7.      As part of the title search, Plaintiffs were provided with "Schedule B," a list of matters and items that would appear as exceptions from coverage unless disposed of to Judicial Title's satisfaction prior to the closing or delivery of the title insurance policy.

8.      Schedule B, which was provided to Plaintiffs prior to closing, expressly states that: "all municipal departmental searches are not insurable items ***and this company assumes no liability for the accuracy***." (emphasis added).   A copy of the excerpted page from Schedule B to the title search is annexed as Exhibit 2.

9.      The title search also contained the results of a municipal data search setting forth the unpaid taxes, water rates, assessments, and indexed liens existing as of the search date.

10.     The search results expressly stated that: "our policy does not insure against such items which have not become a lien up to the date of the policy or installments due after the date of the policy." A copy of the Municipal Data search results from the title search is annexed as Exhibit 3.

11.     In addition, the title search provided to Plaintiffs included the results of Departmental Searches.

12.     The first page of the Departmental Search results specifically stated that "any searches or returns reported herein are furnished FOR INFORMATION ONLY. They will not be insured and the Company assumes no liability for the accuracy thereof." Copies of the relevant pages of Departmental Searches from the title search are annexed as Exhibit 4.

13.     The same page lists the departments that were and were not searched and expressly states that Health Department records were "N/A." *See* Exhibit 4 at p. 1.

14.     Subsequent pages state that the subject property had no Building Department violations and no Fire Department violations. *See* Exhibit 4 at pp. 2-3.

15.     Both of those pages expressly stated that: **"This report is submitted for information purposes only.   There are no intended third party beneficiaries.   No liability is assumed."** *See* Exhibit 4 at pp. 2-3 (emphasis added).

16.     Effective on January 1, 2015, and re-dated at the time of closing on June 19, 2015, Judicial Title certified to Plaintiffs "that a good and marketable title to [the Property], subject to the liens, encumbrances and other matters, if any, set forth in this certificate may be conveyed and/or mortgaged by: Michael Durand and Marlene Zarfes,

Husband and Wife, as Tenants by the Entirety." A copy of the Certificate of Title is annexed as Exhibit 5.

17.     The Certificate of Title expressly states that: "Any claim arising by reason of the issuance hereof shall be restricted to the terms and conditions of the standard form of title insurance policy." *See* Exhibit 5 at p. 1.

18.     The Certificate of Title also includes twelve (12) Conditions and Stipulations, two of which are relevant to the instant dispute. First, Condition and Stipulation # 2 provides:

> This certificate is preliminary to the issuance of such policy or policies of title insurance and all liability and obligations hereunder shall cease and terminate six months after the effective date hereof or when the policy or policies committed for shall be issued by this company.

*See* Exhibit 5 (Certificate of Title) at p. 2 (emphasis added).

19.     Second, Condition and Stipulation # 10 provides in relevant part that: "When municipal department searches are requested or required, the accuracy of the returns therein are not guaranteed nor are such searches continued beyond the date of the original search." *See* Exhibit 5 (Certificate of Title) at p. 2.

20.     Plaintiffs received a policy of title insurance issued by Judicial Title as agent for First American Title Insurance Company under the TIRSA Owner's Extended Protection Policy No. 50068360005402, Title No. 119778FA-W, Policy Amount $922,500.00 (the "Policy") on the closing date of June 19, 2015. A copy of the Policy is annexed as Exhibit 6.

21.     As stated in the Owner's Coverage Statement, the Policy covers the insureds' "actual loss from any risk described under Covered Risks if the event creating the risk exists on the Policy Date or, to the extent expressly stated, after the Policy Date." *See* Exhibit 6 (Policy) at p. 12.

22.     As set forth in the Policy Exclusions, Plaintiffs are not insured against loss, costs, attorney's fees, and expenses resulting from the existence or violation of any government laws or regulations unless such violations appear in the "Public Records" on the Policy Date. *See* Exhibit 6 (Policy) at p. 14.

23.     "Public Records" are defined as "records that give constructive notice of matters affecting your Title, according to New York State law. With respect to Section 1.f. of the Exclusions, 'public records' shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the Land is located." *See* Exhibit 6 (Policy) at p. 14.

24.     "Title" is defined as "the ownership of the interest in the Land, as shown in Schedule A." *See* Exhibit 6 (Policy) at p. 14.

25.     The Policy contains twelve (12) Conditions, of which No. 9 provides in relevant part that: "Any claim You make against Us must be made under this Policy and is subject to its terms." *See* Exhibit 6 at p. 16.

26.     The Plaintiffs have not asserted any claim under the Policy.

27.    No claim has been asserted in this or any other action or proceeding that Plaintiffs did not receive good and marketable title to the subject property.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in Rye Brook, New York, on June 1, 2017.

VINCENT MORANO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENIECE ILKOWITZ and ADAM ILKOWITZ, | Case No. 17 Civ. 773 (PGG) |
| Plaintiffs, | **DECLARATION OF** <br> **SCOTT J. PASHMAN** |
| -against- | |
| MICHAEL DURAND, MARLENE ZARFES a/k/a MARLENE DURAND, ALAN C. PILLA, HOULIHAN LAWRENCE, INC. JANE H. CARMODY, THE JUDICIAL TITLE INSURANCE AGENCY LLC, and ENCO HOME INSPECTIONS LLC, | |
| Defendants. | |

SCOTT J. PASHMAN hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am associated with Adam Leitman Bailey, P.C., attorneys for Defendant The Judicial Title Insurance Agency LLC ("Judicial Title") in the above captioned action.

2.      I make this declaration on the basis of my personal knowledge.

3.      I respectfully submit this declaration in support of Judicial Title's motion, pursuant to Fed. R. Civ. P. 12(b)(6), 12(d), and 56, for dismissal or summary judgment with respect to (1) Plaintiffs' Fifth Cause of Action for Negligence, which is the only cause of action asserted by Plaintiffs against Judicial Title; (2) the cross-claim for contribution and/or indemnification asserted against Judicial Title by Defendants Michael Durand and Marlene Zarfes, a/k/a Marlene Durand ("Durand Defendants"); and (3) the cross-claim for contribution and/or indemnification asserted by Defendant Houlihan Lawrence, Inc. and Jane H. Carmody.

4.      Specifically, I submit this declaration in order to offer into evidence the following pleadings and a So Ordered Stipulation that will be referenced in Judicial Title's motion.

5.      A copy of Plaintiffs' Complaint filed on February 1, 2017, is annexed hereto as Exhibit 1.

6.      A copy of the Durand Defendants' Amended Answer to Plaintiffs' Complaint with cross-claims filed on February 16, 2017, is annexed hereto as Exhibit 7.

7.      A copy of a So Ordered Stipulation discontinuing the Durand Defendants' contractual cross-claim against Judicial Title, entered on April 25, 2017, is annexed hereto as Exhibit 8.

8.      A copy of the Answer of Defendants Houlihan Lawrence Inc. and Jane Carmody with cross-claim filed on April 21, 2017, is annexed hereto as Exhibit 9.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in New York, New York, on June 1, 2017.

SCOTT J. PASHMAN

Adam Leitman Bailey, P.C.
One Battery Plaza, 18th Floor
New York, New York 10004
(212) 825-0365
E-mail: spashman@alblawfirm.com

Declaration of Scott J. Pashman
Page 2

Exhibit 1

UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

JENIECE ILKOWITZ and ADAM ILKOWITZ,  :
                                            :
             Plaintiffs,                :       ECF Case
                                             :
             -against-                :       Civil Action No.: 1:17-cv-773
                                           :
MICHAEL DURAND, MARLENE ZARFES a/k/a :      **COMPLAINT AND**
MARLENE DURAND, ALAN C. PILLA, HOULIHAN :      **DEMAND FOR JURY**
LAWRENCE, INC., JANE H. CARMODY, THE     :      <u>**TRIAL**</u>
JUDICIAL TITLE INSURANCE AGENCY LLC, and :
ENCO HOME INSPECTIONS LLC.             :
                                           :
             Defendants.              :
                                         :

-----------------------------------------------------------------------X

        Jeniece Ilkowitz and Adam Ilkowitz (together "Plaintiffs"), for their Complaint against

Michael Durand, Marlene Zarfes a/k/a Marlene Durand, Alan C. Pilla, Houlihan Lawrence, Inc.,

Jane H. Carmody, the Judicial Title Insurance Agency LLC, and ENCO Home Inspections LLC

(together "Defendants") allege as follows:

<u>**NATURE OF THE ACTION**</u>

      1.     This is an action for violations of the Residential Lead-Based Paint Hazard

Reduction Act, 42 U.S.C. §§ 4851 *et seq.*, fraudulent and negligent misrepresentation,

concealment, and inducement, negligence, and breach of contract.

<u>**JURISDICTION AND VENUE**</u>

      2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as said action is one arising

under a violation of 42 U.S.C. § 4852d.

1

3.      Supplemental jurisdiction of all other claims asserted in the instant action is conferred on this Court pursuant to 28 U.S.C. § 1367 as said claims are so related to the claim for which this Court has original jurisdiction they form part of the same case and/or controversy.

4.      Venue is proper case pursuant to 28 U.S.C. § 1391 as said action has been filed in the same judicial district where Plaintiffs and a Defendant resides, where the property that is the subject of the action is situated and where the events and/or omissions giving rise to said action occurred.

## PARTIES

5.      Plaintiffs Jeniece Ilkowitz and Adam Ilkowitz, husband and wife, are citizens and residents of New York residing at 498 Manor Lane, Pelham, New York 10803.

6.      Upon information and belief, Defendants Michael Durand and Marlene Zarfes a/k/a Marlene Durand (together "Durand Defendants"), husband and wife, are citizens and residents of New York residing at 16 Terrace Park Lane, New Rochelle, New York 10805.

7.      Upon information and belief, Defendant Houlihan Lawrence, Inc. is a New York domestic corporation, with a principal place of business in the State of New York.  Defendant Houlihan Lawrence, Inc. was an agent of the Durand Defendants as defined under the Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. §§ 4851 *et seq.*, and subsequent regulations under 24 C.F.R. § 35.

8.      Upon information and belief, Defendant Jane H. Carmody is an associate real estate broker for the real estate brokerage firm and Defendant Houlihan Lawrence, Inc., with a place of business located at 1 Pelhamwood Avenue, Pelham, New York 10803.  Defendant Jane H. Carmody and Houlihan Lawrence, Inc. was an agent of the Durand Defendants as defined under

the Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. §§ 4851 *et seq*, and subsequent regulations under 24 C.F.R. § 35.

9.     Upon information and belief, defendant Alan C. Pilla is an attorney licensed to practice in the State of New York with a principal place of business located at 107 Lake Avenue, Tuckahoe, New York 10707.  Defendant Alan C. Pilla was an agent of the Durand Defendants as defined under the Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. §§ 4851 *et seq*, and subsequent regulations under 24 C.F.R. § 35.

10.     Upon information and belief, Defendant the Judicial Title Insurance Agency LLC is a New York domestic limited liability company, with a principal place of business located at 800 Westchester Avenue, Suite 340, Rye Brook, New York, 10574.

11.     Upon information and belief, Defendant ENCO Home Inspections LLC is a New York domestic limited liability company, with a principal place of business located at 127 South Broadway, Nyack, New York 10960 and New York Department of State process address of c/o McCarthy & Kelly LLP, 350 Broadway, New York, New York 10007.

## **FACTS**

12.     On March 9, 2015, Plaintiffs, as purchasers, entered into a residential contract of sale with Durand Defendants, as sellers, and Defendants Alan C. Pilla, Jane H. Carmody and Houlihan Lawrence, Inc. as agents of the Durand Defendants, for the purchase of a residential home located at 498 Manor Lane, Pelham, New York 10803 (the "Property").  As part of the contract of sale and closing, Defendant Judicial Title Insurance Agency LLC performed a title search of the Property and Defendant ENCO Home Inspections LLC performed an environmental inspection of the Property.  No specific history or presence of lead in the Property was found.

13.     Unknown to Plaintiffs, at the time of the residential contract of sale, the Property had been cited on more than one occasion for lead contamination by the Westchester County Department of Health (the "Westchester DOH").  On March 30, 2001, the Westchester DOH cited the Property in a letter addressed to the Durand Defendants for lead contamination and levels exceeding the Westchester DOH's guidelines, a violation of Westchester DOH's environmental regulations.  In follow-up inspections, and in direct communications to the Durand Defendants, the Westchester DOH found that the Property was not in compliance with residential lead contamination laws and regulations.  The Westchester DOH memorialized these finding in letters and reports addressed directly to the Durand Defendants.  These letters and reports are public records and are available to the public through standard public records requests.  The letters and reports, as received directly from the Westchester DOH, are attached hereto as **Exhibit A**.

14.     As such, Defendants had actual knowledge, or reasonably should have known, of the past and present presence of lead in the Property prior to, and at the time of, the residential contract of sale for the Property.

15.      On or about March 6, 2015, the Durand Defendants signed and certified the Disclosure of Information on Lead-Based Paint and/or Lead-Based Pain Hazards form as part of the residential contract of sale for the Property.  Specifically, the Durand Defendants certified to Plaintiffs that they have "no knowledge of lead-based paint and/or lead-based paint hazards in the [Property]" and that "[the Durand Defendants have] no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the [Property]."  On March 6, 2015, the Durand Defendants signed the form's Certification of Accuracy, as part of the contract of sale for the Property, stating that they "have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate."

{02194110 / 3}

4

16.     In addition, as agents of the Durand Defendants, Defendants Houlihan Lawrence, Inc. and Jane H. Carmody, as the Durand Defendants' real estate broker agents, and Alan C. Pilla as the Durand Defendants' real estate attorney and agent, were required to initial and acknowledge on the form that "[they] [have] informed the seller of the seller's obligations under 42 U.S.C. § 4852(d) and [are] aware of [their] responsibility to ensure compliance."  Upon information and belief, Houlihan Lawrence, Inc., Jane H. Carmody, and Alan C. Pilla, as the Durand Defendants' agents, did not initial or make the required acknowledgement.

17.     The Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards form, as included in, and a part of, the contract of sale, is attached hereto as **Exhibit B**.

18.     As evidenced by the specific lead contamination findings and reports addressed directly to the Durand Defendants and attached hereto, the Durand Defendants knowingly failed to disclose as part of the contract of sale the fact that the Property had been cited for and/or currently contained dangerous amounts of lead.

19.     Plaintiffs did not know of the fact that the Property had been cited for and/or currently contained dangerous amounts of lead until after the purchase of the Property.  This fact was material, as had Defendants disclosed the fact that the Property had been cited for and/or currently contained lead and lead hazards, the Plaintiffs would not have purchased the Property from the Durand Defendants pursuant to contract of sale.

20.     Following discovery of the Property's lead contamination, and concerned about the very wellbeing, health, and safety of their family, Plaintiffs had their infant child, Rena Ilkowitz, born October 6, 2014, tested for the presence of lead in her blood.  Rena tested positive for lead.

{02194110 / 3}

21.     Soon thereafter, in the interest of their family's health, Plaintiffs began taking steps to remediate the lead in the Property, including but not limited to, costly repairs and maintenance to the Property.

**FIRST CAUSE OF ACTION**
**(Violation of 42 U.S.C. § 4852d)**
**(Durand Defendants, Alan C. Pilla, Houlihan Lawrence, Inc., and Jane H. Carmody)**

22.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 21, as if fully set forth herein.

23.     The Property was constructed and erected before 1978 and is a target housing as defined under the Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. §§ 4851 *et seq*, and subsequent regulations under 24 C.F.R. § 35.

24.     The Durand Defendants, as sellers, and Houlihan Lawrence, Inc. and Jane H. Carmody, as the Durand Defendants' real estate broker agents, and Alan C. Pilla as the Durand Defendants' real estate attorney and agent, knew the Property was constructed before 1978.

25.     At all times mentioned herein, Defendants Houlihan Lawrence, Inc., Jane H. Carmody, and Alan C. Pilla were agents of the Durand Defendants for the purchase of the Property as defined under the Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. §§ 4851 *et seq*, and subsequent regulations under 24 C.F.R. § 35.

26.     The disclosure of information concerning lead upon transfer of residential property, 42 U.S.C. § 4852d, and subsequent obligations under 24 C.F.R. § 35.94, required Houlihan Lawrence, Inc., Jane H. Carmody, and Alan C. Pilla as the Durand Defendants' agents, to "ensure compliance" with requirements of 42 U.S.C. § 4852d and the regulations promulgated thereto.

27.     The disclosure of information concerning lead upon transfer of residential property, 42 U.S.C. § 4852d, and subsequent obligations under 24 C.F.R. § 35, subjected the Durand

Defendants, as sellers, and Houlihan Lawrence, Inc., Jane H. Carmody, and Alan C. Pilla as the Durand Defendants' agents, to make specific lead disclosure requirements for the Property.

28.     Moreover, 42 U.S.C. § 4852d, and subsequent obligations under 24 C.F.R. § 35.92(a)(3) required the Durand Defendants must disclose to the Plaintiffs in the contract of sale "[a] list of any records or reports available to the seller pertaining to lead-based paint and/or lead-based paint hazards in the housing that have been provided to the purchaser."

29.     The Durand Defendants, as sellers, and Houlihan Lawrence, Inc., Jane H. Carmody, and Alan C. Pilla as the Durand Defendants' agents, knew or should have known of the presence of any lead-based paint, or any lead-based paint hazards in the Property.

30.     The Durand Defendants, as sellers, and Houlihan Lawrence, Inc., Jane H. Carmody, and Alan C. Pilla as the Durand Defendants' agents, failed to make the required disclosures for the Property under 42 U.S.C. § 4852d, specifically failing to "disclose to the purchaser or lessee the presence of any known lead-based paint, or any known lead-based paint hazards, in such housing and provide the purchaser or lessee any lead hazard evaluation report available to the seller or lesser" and provide any and all "reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing" in direct violation of 42 U.S.C. § 4852d.

31.     During the process of the Durand Defendants' sale of the Property, Houlihan Lawrence, Inc., Jane H. Carmody, and Alan C. Pilla as the Durand Defendants' agents, failed to ensure that the Durand Defendants made the required disclosures for the Property under 42 U.S.C. § 4852d, specifically failing to "disclose to the purchaser or lessee the presence of any known lead-based paint, or any known lead-based paint hazards, in such housing and provide the purchaser or lessee any lead hazard evaluation report available to the seller or lesser" and provide any and all

"reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing" in direct violation of 42 U.S.C. § 4852d.

32.     The Durand Defendants, as sellers, and Houlihan Lawrence, Inc., Jane H. Carmody, and Alan C. Pilla as the Durand Defendants' agents, failure to make the disclosures of known lead-based paint, or any known lead-based paint hazards to the Property was a direct violation of 42 U.S.C. § 4852d.

33.     Houlihan Lawrence, Inc., Jane H. Carmody, and Alan C. Pilla as the Durand Defendants' agents, failure to ensure the Durand Defendants' compliance with requirements of 42 U.S.C. § 4852d and the regulations promulgated thereto, was also a direct violation of 42 U.S.C. § 4852d.

34.     As a direct and proximate result of the failure of the Durand Defendants, as sellers, and Houlihan Lawrence, Inc. and Jane H. Carmody, as the Durand Defendants' real estate broker agents, and Alan C. Pilla as the Durand Defendants' real estate attorney and agent, to ensure compliance and disclose the presence of any lead-based paint, or any lead-based paint hazards in the Property, Plaintiffs suffered damages for past and future costly remediation costs to remove and replace lead-based paint and lead contamination from the Property, as well as other associated property maintenance and repairs, medical expenses, greater property, mortgage recording, and title insurance taxes, mortgage overpayment, and the difference in value of the property as represented and what it actually was worth, among other damages, in amounts to be proven at trial.

35.     WHEREFORE, Plaintiffs ask this Honorable Court to grant judgment to them and against the Durand Defendants, Houlihan Lawrence, Inc., Jane H. Carmody, and Alan C. Pilla in an amount to be determined at trial, plus treble damages pursuant to 42 U.S.C. § 4852d(b)(3), plus statutory costs, including but not limited to attorneys' fees, pursuant to 42 U.S.C. § 4852d(b)(4).

{02194110 / 3}

## SECOND CAUSE OF ACTION
### (Negligent Misrepresentation or Concealment)
### (Durand Defendants, Alan C. Pilla, Houlihan Lawrence, Inc., and Jane H. Carmody)

36.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 35, as if fully set forth herein.

37.     In inducing Plaintiffs to execute the contract of sale to purchase the Property, and to proceed to closing on the contract of sale, the Durand Defendants, as sellers, and Houlihan Lawrence, Inc. and Jane H. Carmody, as the Durand Defendants' real estate broker agents, and Alan C. Pilla as the Durand Defendants' real estate attorney and agent, made misrepresentations of material facts and/or engaged in the concealment or nondisclosure of material facts necessary for their statements not to be false or misleading, in concealing from Plaintiffs any known lead-based paint, or any known lead-based paint hazards in the Property, and specifically certifying that they have "no knowledge of lead-based paint and/or lead-based paint hazards in the [Property]" and that "[the Durand Defendants have] no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the [Property]."

38.     The Durand Defendants, as sellers, and Houlihan Lawrence, Inc. and Jane H. Carmody, as the Durand Defendants' real estate broker agents, and Alan C. Pilla as the Durand Defendants' real estate attorney and agent, failed to exercise reasonable care in making these misrepresentations and/or engaging in these concealments or nondisclosure, in view of the fact that Plaintiffs were unaware of any known lead-based paint, or any known lead-based paint hazards in the Property, which was not readily observable or apparent to Plaintiffs.

39.     The Durand Defendants, as sellers, and Houlihan Lawrence, Inc. and Jane H. Carmody, as the Durand Defendants' real estate broker agents, and Alan C. Pilla as the Durand Defendants' real estate attorney and agent, knew or in the exercise of reasonable care should have

known, presence of any known lead-based paint, or any known lead-based paint hazards in the Property.

40.     The Durand Defendants, as sellers, and Houlihan Lawrence, Inc. and Jane H. Carmody, as the Durand Defendants' real estate broker agents, and Alan C. Pilla as the Durand Defendants' real estate attorney and agent, knew or in the exercise of reasonable care should have known, that Plaintiffs were unaware of the presence of any known lead-based paint, or any known lead-based paint hazards in the Property, and that Plaintiffs would reasonably rely upon these misrepresentations and/or concealments or nondisclosures in executing the contract of sale to purchase the Property and to proceed to closing on the Property.

41.     The misrepresentations and/or concealments or nondisclosures of the Durand Defendants, as sellers, and Houlihan Lawrence, Inc. and Jane H. Carmody, as the Durand Defendants' real estate broker agents, and Alan C. Pilla as the Durand Defendants' real estate attorney and agent, concerned presently existing facts which were material to the decisions of Plaintiffs to execute the contract of sale to purchase the Property and to proceed to closing on the Property.

42.     The Durand Defendants, as sellers, and Houlihan Lawrence, Inc. and Jane H. Carmody, as the Durand Defendants' real estate broker agents, and Alan C. Pilla as the Durand Defendants' real estate attorney and agent, had a duty to disclose the existence of the presence of any known lead-based paint, or any known lead-based paint hazards in the Property to Plaintiffs.

43.     In violation of their aforesaid duty, the Durand Defendants, as sellers, and Houlihan Lawrence, Inc. and Jane H. Carmody, as the Durand Defendants' real estate broker agents, and Alan C. Pilla as the Durand Defendants' real estate attorney and agent, carelessly and negligently failed to disclosure the presence of any known lead-based paint, or any known lead-based paint

hazards in the Property to Plaintiffs, and induced Plaintiffs to execute the contract of sale to purchase the Property and to proceed to closing on the Property.

44.     Plaintiffs justifiably relied upon the misrepresentations and/or concealments or nondisclosures of the Durand Defendants, as sellers, and Houlihan Lawrence, Inc. and Jane H. Carmody, as the Durand Defendants' real estate broker agents, and Alan C. Pilla as the Durand Defendants' real estate attorney and agent, in concluding that there was no known lead-based paint, or any known lead-based paint hazards in the Property and, therefore, executed the contract of sale to purchase the Property and to proceed to closing on the Property.

45.     As a direct and proximate result of the misrepresentations and/or concealments or nondisclosures of the Durand Defendants, as sellers, and Houlihan Lawrence, Inc. and Jane H. Carmody, as the Durand Defendants' real estate broker agents, and Alan C. Pilla as the Durand Defendants' real estate attorney and agent, regarding the presence of any lead-based paint, or any lead-based paint hazards in the Property, Plaintiffs have been injured in that they purchased a home materially different from that which was represented to them, to wit, a property containing lead which poses a significant risk to the health of Plaintiff and Plaintiff's family.  Moreover, Plaintiffs suffered damages for past and future costly remediation costs to remove and replace lead-based paint and lead contamination from the Property, as well as other associated property maintenance and repairs, medical expenses, greater property, mortgage recording, and title insurance taxes, mortgage overpayment, and the difference in value of the property as represented and what it actually was worth, among other damages, in amounts to be proven at trial.

46.     WHEREFORE, Plaintiffs ask this Honorable Court to grant judgment to them and against the Durand Defendants, Houlihan Lawrence, Inc., Jane H. Carmody, and Alan C. Pilla in an amount to be determined at trial, plus costs.

{02194110 / 3}

**THIRD CAUSE OF ACTION**
**(Fraudulent Misrepresentation, Concealment, and Inducement)**
**(Durand Defendants, Alan C. Pilla, Houlihan Lawrence, Inc., and Jane H. Carmody)**

47.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 41, as if fully set forth herein.

48.     In inducing Plaintiffs to execute an agreement of sale to purchase the Property and proceed to closing on said agreement, the Durand Defendants, as sellers, and Houlihan Lawrence, Inc. and Jane H. Carmody, as the Durand Defendants' real estate broker agents, and Alan C. Pilla as the Durand Defendants' real estate attorney and agent, made misrepresentations of material facts and/or engaged in the deliberate concealment or nondisclosure of material facts necessary for their statements not to be false or misleading, in concealing their knowledge of lead and/or lead hazards in the property and the actual or potential problems posed to residents of the property.

49.     The Durand Defendants, as sellers, and Houlihan Lawrence, Inc. and Jane H. Carmody, as the Durand Defendants' real estate broker agents, and Alan C. Pilla as the Durand Defendants' real estate attorney and agent, made these representations and/or engaged in these concealments or nondisclosures, knowing that Plaintiffs were unaware of the environmental, healthy, and safety hazards associated with the lead contamination and not even aware of its existence, and that the lead contamination and associated risks were not readily observable by Plaintiffs.  The Durand Defendants, as sellers, and Houlihan Lawrence, Inc. and Jane H. Carmody, as the Durand Defendants' real estate broker agents, and Alan C. Pilla as the Durand Defendants' real estate attorney and agent, acted with the intention that Plaintiffs would rely upon these misrepresentations and/or concealments or nondisclosures in executing an agreement of sale to purchase the Property and in proceeding to closing on this agreement.

{02194110 / 3}

50.     The misrepresentations and/or concealments or nondisclosures of the Durand Defendants, as sellers, and Houlihan Lawrence, Inc. and Jane H. Carmody, as the Durand Defendants' real estate broker agents, and Alan C. Pilla as the Durand Defendants' real estate attorney and agent, concerned presently existing facts which were material to the decisions of Plaintiffs to execute an agreement of sale to purchase the Property and to proceed to closing on said agreement.

51.     The Durand Defendants, as sellers, and Houlihan Lawrence, Inc. and Jane H. Carmody, as the Durand Defendants' real estate broker agents, and Alan C. Pilla as the Durand Defendants' real estate attorney and agent, by their intentional misrepresentations and/or deliberate and fraudulent concealments or nondisclosures, jointly and severally, induced Plaintiffs to execute an agreement of sale to purchase the Property, to proceed to closing on said agreement, and/or lulled Plaintiffs into the said agreement.

52.     Plaintiffs justifiably relied upon the misrepresentations and/or concealment or nondisclosures of the Durand Defendants, as sellers, and Houlihan Lawrence, Inc. and Jane H. Carmody, as the Durand Defendants' real estate broker agents, and Alan C. Pilla as the Durand Defendants' real estate attorney and agent, in concluding that there were no health, environmental hazards, and/or property value issues in executing the agreement of sale and proceeding to closing on said agreement.

53.     As a direct and proximate result of the fraudulent misrepresentations and/or concealments or nondisclosures of the Durand Defendants, as sellers, and Houlihan Lawrence, Inc. and Jane H. Carmody, as the Durand Defendants' real estate broker agents, and Alan C. Pilla as the Durand Defendants' real estate attorney and agent, of the presence of any lead-based paint, or any lead-based paint hazards in the Property, Plaintiffs suffered damages for past and future costly

{02194110 / 3}

remediation costs to remove and replace lead-based paint and lead contamination from the Property, as well as other associated property maintenance and repairs, medical expenses, greater property, mortgage recording, and title insurance taxes, mortgage overpayment, and the difference in value of the property as represented and what it actually was worth, among other damages, in amounts to be proven at trial.

54.     WHEREFORE, Plaintiffs ask this Honorable Court to grant judgment to them and against the Durand Defendants, Houlihan Lawrence, Inc., Jane H. Carmody, and Alan C. Pilla in an amount to be determined at trial, plus costs.

### FOURTH CAUSE OF ACTION
**(Breach of Contract)**
**(Durand Defendants)**

55.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 49, as if fully set forth herein.

56.     On March 9, 2015, Plaintiffs, as purchasers, entered into a residential contract of sale with Durand Defendants, as sellers, for the Property.

57.     The Durand Defendants agreed to execute and deliver good and sufficient deed of general warranty plus marketable title and sell the Property to the Plaintiffs pursuant to the contract of sale, and disclose and produce all information and documents on the Property, including the information and documents concerning knowledge of the presence of lead, pursuant to the terms of the contract of sale.

58.     Plaintiffs have fulfilled and satisfied all conditions of the contract of sale.

59.     The Durand Defendants breached the contract of sale, including, but not limited to, failing to disclose material facts of the Property prior to the execution of the contract of sale per the specific terms and assurances of the contract of sale.  Specifically, the Durand Defendants

breached the contract of sale by failing to disclose all information and reports concerning the presence of lead in the Property.

60.     As a direct and proximate result of the Durand Defendant's breach of the contract of sale, Plaintiffs suffered damages for past and future remediation costs to remove and replace lead-based paint and lead contamination from the Property, as well as other associated property maintenance and repairs, medical expenses, greater property, mortgage recording, and title insurance taxes, mortgage overpayment, and the difference in value of the property as represented and what it actually was worth, among other damages, in amounts to be proven at trial.

61.     WHEREFORE, Plaintiffs ask this Honorable Court to grant judgment to them and against the Durand Defendants, Houlihan Lawrence, Inc., Jane H. Carmody, and Alan C. Pilla in an amount to be determined at trial, plus costs.

## FIFTH CAUSE OF ACTION
### (Negligence)
### (All Defendants)

62.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 49, as if fully set forth herein.

63.     Defendants, individually or by and through their agents, servants, and/or employees, were charged with the duty of ensuring the Property adhered to the contract of sale and was not in defective or hazardous condition, and/or disclosing the presence of any known lead-based paint, or any known lead-based paint hazards in the Property, which they inspected, performed contracted title and background searches, made warranties regarding the Property as part of the sale of the Property, or participated in the sale of the Property.

64.     Defendants had sufficient time and notice to detect said defective or hazardous conditions, and/or disclosing the presence of any known lead-based paint, or any known lead-based paint hazards in the Property and neglected to do so.

65.     As a direct and proximate result of Defendants' negligence, Plaintiffs suffered damages for past and future costly remediation costs to remove and replace lead-based paint and lead contamination from the Property, as well as other associated property maintenance and repairs, medical expenses, greater property, mortgage recording, and title insurance taxes, mortgage overpayment, and the difference in value of the property as represented and what it actually was worth, among other damages, in amounts to be proven at trial.

66.     The aforesaid occurrence was caused solely and wholly by reason of the negligence of Defendants, and each of them, and by and through their agents, servants, and/or employees, in the ownership, operations, control, care, custody, charge, supervisions, management, reporting, and inspection of the Property; in causing, creating, permitting, and/or allowing a dangerous, hazardous, defective, and unlawful condition to be, continue, and remain in the Property without disclosure; in failing to give Plaintiffs herein any notice, warning, or mandated disclosure of the dangerous conditions or past or current presence of dangerous conditions as set forth herein, in failing to reasonably inspect the Property as to ascertain the herein above referenced conditions, and in failing to reasonably search and find above referenced conditions and documents concerning the Property and title; in violating the applicable and pertinent rules, regulations, statutes, and/or codes of the Residential Lead-Based Paint Hazard Reduction Act; in causing, creating and allowing a dangerous condition to exist in the Property; in failing and neglecting to take the necessary and requisite steps to disclose or prevent this foreseeable occurrence, although

Defendants, and each of them, knew or reasonably should have known of the conditions complained herein.

67. WHEREFORE, Plaintiffs ask this Honorable Court to grant judgment to them and against Defendants in an amount to be determined at trial, plus costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment in his favor and against Defendants, jointly and severally, as follows:

    a. Compensatory damages against all Defendants, jointly and severally, including but not limited to remediation costs, property maintenance and repairs, medical expenses, greater property, mortgage recording, and title insurance taxes, mortgage overpayment, and the difference in value of the property as represented and what it actually was worth;

    b. Statutory damages, including treble damages pursuant to 42 U.S.C. § 4852d(b)(3);

    c. Costs, expenses, attorneys' fees, expert fees, and interest pursuant to 42 U.S.C. § 4852d(b)(4);

    d. Injunctive relief as the Court may approve; and

    e. Any other appropriate relief in law or equity as the law may allow.

Dated: New York, New York
       February 1, 2017

                         MESSNER REEVES LLP

                By:    __/s/_Benjamin S. Lowenthal___
                          Jean-Claude Mazzola
                          Benjamin S. Lowenthal
                          *Attorneys for Plaintiffs*
                          805 Third Avenue, 18th Floor

New York, New York 10022
Tel.:    (646) 663-1860
Fax:    (646) 663-1895
blowenthal@messner.com

EXHIBIT A



**Andrew J. Spano**
**County Executive**

Department of Health

Joshua Lipsman, M.D., M.P.H.
Commissioner

March 30, 2001

Michael & Marlene Durand
498 Manor Lane
Pelham, NY 10803

RE: Exterior Paint Removal
498 Manor Lane
Section 193.76, Block 1, Lot 70
Pelham

Dear Mr. & Mrs. Durand:

Reference is made to a complaint received by this Department regarding paint removal by power sanding at the above referenced premise. In response to this complaint an inspection was made by this writer on March 29, 2001.

The paint was sampled with an XRF Analyzer and found to contain lead above this Department's guidelines of 2.0 mg/cm2. This constitutes non-compliance with Chapter 873, Article XIII, Section 873.1312.1 and Chapter 873, Article XIII, Section 873.781.1 of the Laws of Westchester County New York.

In light of the above the following actions must be secured to reduce further lead contamination.
1. All visible paint chips and dust on the ground resulting from the sanding operation must be removed.
2. Under Section 406(b) of the Toxic Substance Control Act all contractors removing lead paint must be certified pursuant to Article X, Section 402. If further paint is to be removed, a containment system must be installed around the work area. This includes collecting all debris and paint chips.

A follow-up inspection for compliance of the above mentioned requests will be made on April 4, 2001.

If there are any questions, please contact the undersigned at (914) 813-5146.

Sincerely,

John C. Ruggiero
Sanitarian
Bureau of Environmental Quality

JCR:plt
pc: Ralph Magliulo, Building Insp, Pelham
File



**Andrew J. Spano**
**County Executive**

Department of Health
Joshua Lipsman, M.D., M.P.H.
Commissioner

April 26, 2001

Michael & Marlene Durand
498 Manor Lane
Pelham, NY 10803

RE: Lead Paint Removal
498 Manor Lane
Section 193.76, Block 1, Lot 70
Pelham(V)

Dear Mr. & Mrs. Durand:

This letter will serve to summarize a soil sample result taken on April 2, 2001 at the above-referenced premise.

The attached copy of a sampling result shows soil lead concentration of:

960.00 ppmv – West side of house (rear), approximately 2 feet out from foundation of house.

The above sample exceeds the EPA Guidelines of 400.00 ppmv for residential lead contamination soil and constitutes non-compliance with Chapter 873, Article XIII, Section 873.1312.1 and Chapter 873, Article VIII, Section 873.781.1 of the Laws of Westchester County.

In light of the above, you are advised that the following actions must be undertaken:

Contaminated soil must be removed.

A follow-up inspection and resampling for compliance of the above request will be made on May 14, 2001.

If there are any questions, please contact the undersigned at (914) 813-5146.

Very truly yours,

John C. Ruggiero
Sanitarian
Bureau of Environmental Quality

JCR:ls

cc: Ralph Magliulo, Bldg. Insp., Pelham(V)
    File

145 Huguenot Street, 8th Floor
New Rochelle, N.Y. 10801          website: westchestergov.com/health

# Field Activity Report
## Bureau of Environmental Quality



Westchester gov.com

Andrew J. Spano, Westchester County Executive

DEPARTMENT OF HEALTH
Joshua Lipsman, M.D., M.D., M.P.H., Commissioner

SHEET _____ OF _____

NAME:

ADDRESS 939 Manor Lane

MAILING ADDRESS: Pelham, NY

| P.O. BOX | POST OFFICE | ZIP CODE |
|---|---|---|

TELEPHONE:

PERSON IN CHARGE OR INTERVIEWED:

*NAME AND TITLE*

DATE: 3/29/01     TYPE FACILITY: R.H.

TIME ARRIVED: 2:10 pm     TIME LEFT: 3:10 pm

## INSPECTION

☐ ORG. ROUTINE      ☑ ORIG. COMPLAINT      ☐ ORIG. REQUEST      ☐ COMPLIANCE

☐ COMPLAINT COMP.   ☐ FINAL                ☐ GROUP ILLNESS      ☐ CONSTRUCTION

☐ REINSPECTION      ☐ FIELD, SAMPLING ONLY ☐ FIELD CONFERENCE   ☐ OTHER (EXPLAIN BELOW)

FINDINGS: Complaint investigation conducted at above location.
At time of inspection no work was observed in
progress. Inspection of property showed evidence
of exterior paint removed with a power sander.
Paint was found removed from the West and
North walls of house.

INSPECTOR: John C. Ruggeri/Sanitarian     INSPECTOR TELE:

PERSON IN CHARGE OR INTERVIEWED: *I acknowledge receipt of a copy of this Field Activity Report.*

SIGNATURE:     TITLE:

H-7110

Site:    Ranges (NEG<INC<POS): Device PCS                                    Date: 3/30/2001    Paint Page 1



Paint Page 1

### Serial #XL309-U1242D4659 Site:   Date: 3/30/2001

| No | XLNo | Insp | Room | Note | Ssec | Date/Time | DI | Result | Pbc ± Prec | Res ± Prec |
|----|------|------|------|------|------|-----------|-----|--------|------------|------------|
| 1 | 255 | EB | | STD | 14.1 | 3/30/2001 09:11:46 | 1.1 | NEG | 1.59 ± 0.26 | NA |
| **2** | **256** | | | | **2.9** | **3/30/2001 09:12:46** | **1.7** | **POS** | **49.05 ± 20.84** | **NA** |
| 3 | 257 | EB | | STD | 20.8 | 3/30/2001 09:13:16 | 1.0 | NEG | 1.43 ± 0.19 | NA |
| **4** | **258** | | | | **2.9** | **3/30/2001 09:13:55** | **1.7** | **POS** | **50.92 ± 21.68** | **NA** |

**Sakala, Michael**

| | |
|---|---|
| **To:** | Bernard, Donna; Landrigan, Mary |
| **Cc:** | Hudson, Jean; Bruno, Denise |
| **Subject:** | RE: ▓▓▓▓▓▓▓▓▓ - Sandblasting |

I will send someone out to repond
mike

-----Original Message-----

| | |
|---|---|
| **From:** | Bernard, Donna |
| **Sent:** | Thursday, March 29, 2001 1:05 PM |
| **To:** | Landrigan, Mary |
| **Cc:** | Sakala, Michael; Hudson, Jean; Bruno, Denise |
| **Subject:** | Here we go again- Sandblasting |

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ more importantly I just got a call from the Pelham Schools to complain about abrasive blasting taking place on an old home across from the school at 525 Manor Lane in Pelham Manor. ▓▓▓▓▓▓ We have a clear protocol which places these calls potentially under a violation of the air quality code. Mike Sakala's staff responds and Lead is there to assist with testing if necessary. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

I apologized to the school official for being bounced around and told him I would personally speak to the director of the complaint bureau etc.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Thanks again.

1

[illegible]

NAME OF OWNER

[illegible]

NATURE OF COMPLAINT

[illegible]

# Field Activity Report
## Bureau of Environmental Quality



Andrew J. Spano, Westchester County Executive

DEPARTMENT OF HEALTH
Joshua Lipsman, M.D., M.D., M.P.H., Commissioner

SHEET _____ OF _____

NAME:

ADDRESS *A 39 Manor Lane*

MAILING ADDRESS: *Pelham NY*

| P.O. BOX | POST OFFICE | ZIP CODE |
| --- | --- | --- |

TELEPHONE:

PERSON IN CHARGE OR INTERVIEWED: *Rich - painter*

NAME AND TITLE

DATE: *4/11/01*                    TYPE FACILITY: *P. H.*

TIME ARRIVED: *10:50 Am*        TIME LEFT: *11:20 Am*

## INSPECTION

☐ ORG. ROUTINE           ☐ ORIG. COMPLAINT        ☐ ORIG. REQUEST          ☐ COMPLIANCE

☐ COMPLAINT COMP.      ☐ FINAL                          ☐ GROUP ILLNESS         ☐ CONSTRUCTION

☑ REINSPECTION           ☐ FIELD, SAMPLING ONLY   ☐ FIELD CONFERENCE      ☐ OTHER (EXPLAIN BELOW)

*Re-inspection conducted at above location*

FINDINGS:

*Inspection showed all visible dust from exterior paint removal found cleaned up from the surface of the ground.*

*Painter found on site using chemical removal material to strip paint from the walls. Ground found covered in work areas.*

INSPECTOR: *John C. Raspa Sanitarian*                    INSPECTOR TELE:

PERSON IN CHARGE OR INTERVIEWED: *I acknowledge receipt of a copy of this Field Activity Report.*

SIGNATURE:                                                                    TITLE:

H-7110

# *REPORT OF ANALYSIS*

**Westchester County Department of Labs and Research**  2 Dana Road  Valhalla, New York 10595

---

**Agency:** Westchester County Health Dept.
Bureau of Environmental Qualit
145 Huguenot Street
New Rochelle, NY 10801
Michael Sakala

**Received By:** LK
**Bottle No.:** BAG #2
**Collected By:** RUGGIERO
**Comment:**

**Report To:**

**Sample Location:** MICHAEL & MARLENE DURAND
938 MANOR LANE
PELHAM, N.Y.
**Sample Point:** 1IN FROM PATIO-WEST SID
**ID of Source:** SOIL
**Collection Date:** 4/2/01 AT 10:35:00 AM
**Submitted On:** 4/2/01 AT 12:33:00 PM
**Sample Type:** S_SOIL
**PWS No.:**
**Source Code:** 000
**Type Descriptor:**

---

## Sample No.    AD06567

| Method | Test Description | Results | Units | MDL | Analyzed on | Validator |
|--------|-----------------|---------|-------|-----|-------------|-----------|
| **Inorganics** | | | | | | |
| SW846/6010 | Lead | 280 | ug/g dry wgt | 5.0 | 4/9/01 | PAD |
| SW846 3050 | Soil Metals Digestion | Completed | | | 4/4/01 | PAD |
| EPA'79 160. | Percent solids | 68.8 | % | 0.1 | 4/3/01 | PAD |

---

| **Approved By:** Pam Dilsizian | QA Officer | **Date Approved:** | 4/9/01 |
|---|---|---|---|

**Environmental Laboratories**
**NYS ELAP # 10108**
**(914) 593-5575**

Original 4/9/01

Page 1 of 1



# ENVIRONMENTAL SERVICES SAMPLE SUBMISSION FORM
## WESTCHESTER COUNTY LABORATORIES AND RESEARCH
2 Dana Road, Valhalla, New York 10595
(914) 593-5575



NYS-ELAP No. 10108
Form A-70 (rev.1/96)

Time/Date Set:

---

**Sample Type** (circle one):

1. Potable    3. Non Potable *Treated*      Bottle #'s: _Bag #2_

2. Non Potable   (4) Other _Soil_      Chain of Custody? ___ yes ___ no

Time/Date Collected: _10:35 4/2/01_     Comments: _rear yard_

Collected By: _J. Riggren_   Agency Code: _BER_    PWS #: _____ Source ID: _____ Type Descriptor: _____

**Collected From:**           **Bill to:**

Location's/Individual's Name _Michael & Marlene Durand_   Name/Company _WCDOH_

Street _9358 Manor Lane_       Street _____

City/St/Zip _Pelham NY 10803_      City/St/Zip _____

Identification of Source _Soil_       Phone#: _____ Fax#: _____

Collection Point _1' from patio west side of house_   CA,CH, BI? _____ Check#: _____ Amount$ _____

---

### BACTERIOLOGICAL ANALYSIS
Lab#: _____
(circle tests)
1. Heterotrophic Plate
   Count (hemodialysis & all others)
2. Coliform P/A (public supplies)
3. Coliform MPN (priv well, raw, stp)
4. Fecal Coliform (all samples)
5. Microscopic
6. Macroscopic
7. API
8. Other: _____

Refrigerated? ___ yes ___ no

Chlorinated:? ___ yes ___ no

Free Chlorine Res: _____ mg/L

Total Chlorine Res: _____ mg/L

pH _____

### ORGANIC POTABLE ANALYSIS
Lab#: _____
(circle tests)
1. Trihalomethanes (524)
2. Volatile Halocarbons (524)
3. Volatile Aromatics (524)
4. Total Trihalomethane Potential (510)
5. Microextractables (504)
6. Pesticides (507)
7. Pesticides/PCB screen (508)
8. PCB as Decachlorobiphenyl (508A)
9. Herbicides (515)
10. Pesticides (525)
11. Carbamate Pesticides (531)
12. Glyphosate (547)
13. Diquat (549)
14. Chlorination Disinfection Byproducts (551)
15. Haloacetic Acids (552)
16. Pesticides (SM18/6630)
17. Petroleum/Hydrocarbon Scan (310-13)
18. Other: _____

### ORGANIC NONPOTABLE/SOLID ANALYSIS
1. Purgeable Halocarbons (624/8260)
2. Purgeable Aromatics (624/8260)
3. Acrolein & Acrylonitrile (624)
4. Phthalates (625/8270)
5. Organochlorine Pesticides (608/8081)
6. PCB's (Arochlors) (608/8081)
7. Methoprene (616)
8. Herbicides (EPA1978/8151)
9. Pesticides (SM18/6630)
10. Petroleum Hydrocarbon Scan (310-13)
11. Glycols
12. Acid Extractables (625/8270)
13. Base Neutral Extractables (625/8270)
14. GC/MS Semivolatile Unknown Scan
15. Purgeable Halocarbons (DEF)
16. Purgeable Aromatics (DEF)
17. Pesticides/PCB's (DEF)
18. Other: _____

2001 APR -2 PD 12: 32

CUSTODY BY

---

### INORGANIC ANALYSIS REQUESTED - Lab#: _____ _676_
(circle tests)
1. Color
2. Turbidity
3. pH
4. Conductivity
5. Corrosivity (temp:_____ºC)
6. BOD (5 day)
7. Soluble BOD (5 day)
8. Carbonaceous BOD (5 day)
9. Chemical Oxygen Demand
10. Dissolved Oxygen
11. Total Organic Carbon
12. Total Organic Halides
13. Solids, Percent (%)
14. Solids, Settleable
15. Solids, Suspended
16. Solids, Total
17. Solids, Total Dissolved
18. Solids, Total Volatile
19. Other: _____

20. Acidity
21. Alkalinity, as CaCO3
22. Bromide
23. Bromate/Chlorate/Chlorite
24. Chloride
25. Cyanide
26. Fluoride
27. Hardness, Total as CaCO3
28. Nitrogen, Ammonia as N
29. Nitrogen, Nitrate as N
30. Nitrogen, Nitrite as N
31. Nitrogen, Total Kjeldahl as N
32. Oil an Grease
33. Phenol
34. Phosphorus Total as P
35. Phosphorus, Ortho as P
36. Sulfates
37. Surfactants
38. UV254

39. Aluminum
40. Antimony
41. Arsenic
42. Barium
43. Beryllium
44. Boron
45. Cadmium
46. Calcium, as CaCO3
47. Calcium, Ca +2
48. Chromium, Total
49. Chromium, Hexavalent
50. Cobalt
51. Copper
52. Iron
53. Lead
54. Magnesium
55. Manganese
56. Mercury
57. Molybdenum
58. Nickel

59. Potassium
60. Selenium
61. Silver
62. Sodium
63. Thallium
64. Vanadium
65. Zinc

**CLP**
66. Metals/CN
67. Volatiles
68. Semi-violatiles
69. Pesticides/PCB's
70. Disk Deliverables

**TCLP**
71. TCLP-Metals
72. TCLP-Pesticides
73. TCLP-Herbicides
74. TCLP-Volatiles
75. TCLP-BNA's

# *REPORT  OF  ANALYSIS*

**Westchester County Department of Labs and Research**   2 Dana Road  Valhalla, New York  10595

**Agency:** Westchester County Health Dept.
Bureau of Environmental Qualit
145 Huguenot Street
New Rochelle, NY 10801
Michael Sakala

**Received By:** LK
**Bottle No.:** BAG #3
**Collected By:** RUGGIERO
**Comment:**

**Report To:**

**Sample Location:** MICHAEL & MARLENE DURAND
938 MANOR LANE
PELHAM, N.Y.
**Sample Point:** BACK YARD (REAR)
**ID of Source:** SOIL
**Collection Date:** 4/2/01  AT  10:38:00 AM
**Submitted On:** 4/2/01  AT  12:33:00 PM
**Sample Type:** S_SOIL
**PWS No.:**
**Source Code:** 000
**Type Descriptor:**

## Sample No.    AD06568

| Method | Test Description | Results | Units | MDL | Analyzed on | Validator |
|--------|------------------|---------|-------|-----|-------------|-----------|
| **Inorganics** | | | | | | |
| SW846/6010 | Lead | 120 | ug/g dry wgt | 5.0 | 4/9/01 | PAD |
| SW846 3050 | Soil Metals Digestion | Completed | | | 4/4/01 | PAD |
| EPA'79 160. | Percent solids | 79.1 | % | 0.1 | 4/3/01 | PAD |

**Approved By:** Pam Dilsizian    QA Officer    **Date Approved:**    4/9/01

**Environmental Laboratories**
**NYS ELAP # 10108**
**(914) 593-5575**

Original 4/9/01

Page 1 of 1



# ENVIRONMENTAL SERVICES SAMPLE SUBMISSION FORM
## WESTCHESTER COUNTY LABORATORIES AND RESEARCH
2 Dana Road, Valhalla, New York 10595
(914) 593-5575



NYS-ELAP No. 10108
Form A-70 (rev.1/96)

Time/Date Set:

**Sample Type** (circle one):
1. Potable   3. Non Potable _Treated_
2. Non Potable  ④Other  _Soil_
Time/Date Collected: _10:38  4/2/01_
Collected By: _J. Ruggiero_  Agency Code: _BCq_

Bottle #'s: _Bag # 3_
Chain of Custody: ___ yes ___ no
Comments: _Back ground sample_
PWS #: _____ Source ID: _____ Type Descriptor: ____

**Collected From:**
Location's/Individual's Name _Michael, Marlene Dillon_
Street _938 Manor Lane_
City/St/Zip _Pelham, NY  10803_
Identification of Source _Soil_
Collection Point _Back Yard (rear)_

Bill to:
Name/Company _WCDOH_
Street _____
City/St/Zip _____
Phone#: _____ Fax#: _____

CA,CH, BI? _____  Check#: _____  Amount$ _____

---

## BACTERIOLOGICAL ANALYSIS
Lab#: _____
(circle tests)
1. Heterotrophic Plate
   Count (hemodialysis & all others)
2. Coliform P/A (public supplies)
3. Coliform MPN (priv well, raw, stp)
4. Fecal Coliform (all samples)
5. Microscopic
6. Macroscopic
7. API
8. Other: _____

Refrigerated? ___ yes ___ no

Chlorinated:? ___ yes ___ no

Free Chlorine Res: _____ mg/L

Total Chlorine Res: _____ mg/L

pH _____

## ORGANIC POTABLE ANALYSIS
Lab#: _____
(circle tests)
1. Trihalomethanes (524)
2. Volatile Halocarbons (524)
3. Volatile Aromatics (524)
4. Total Trihalomethane Potential (510)
5. Microextractables (504)
6. Pesticides (507)
7. Pesticides/PCB screen (508)
8. PCB as Decachlorobiphenyl (508A)
9. Herbicides (515)
10. Pesticides (525)
11. Carbamate Pesticides (531)
12. Glyphosate (547)
13. Diquat (549)
14. Chlorination Disinfection Byproducts (551)
15. Haloacetic Acids (552)
16. Pesticides (SM18/6630)
17. Petroleum/Hydrocarbon Scan (310-13)
18. Other: _____

## ORGANIC NONPOTABLE/SOLID ANALYSIS
1. Purgeable Halocarbons (624/8260)
2. Purgeable Aromatics (624/8260)
3. Acrolein & Acrylonitrile (624)
4. Phthalates (625/8270)
5. Organochlorine Pesticides (608/8081)
6. PCB's (Arochlors) (608/8081)
7. Methoprene (616)
8. Herbicides (EPA1978/8151)
9. Pesticides (SM18/6630)
10. Petroleum Hydrocarbon Scan (310-13)
11. Glycols
12. Acid Extractables (625/8270)
13. Base Neutral Extractables (625/8270)
14. GC/MS Semivolatile Unknown Scan
15. Purgeable Halocarbons (DEF)
16. Purgeable Aromatics (DEF)
17. Pesticides/PCB's (DEF)
18. Other: _____

2001 APR -2  P 2: 32

RECEIVED BY  03 3319  W

---

## INORGANIC ANALYSIS REQUESTED - Lab#: _6568_
(circle tests)
1. Color
2. Turbidity
3. pH
4. Conductivity
5. Corrosivity (temp:____ºC)
6. BOD (5 day)
7. Soluble BOD (5 day)
8. Carbonaceous BOD (5 day)
9. Chemical Oxygen Demand
10. Dissolved Oxygen
11. Total Organic Carbon
12. Total Organic Halides
13. Solids, Percent (%)
14. Solids, Settleable
15. Solids, Suspended
16. Solids, Total
17. Solids, Total Dissolved
18. Solids, Total Volatile
19. Other: _____

20. Acidity
21. Alkalinity, as CaCO₃
22. Bromide
23. Bromate/Chlorate/Chlorite
24. Chloride
25. Cyanide
26. Fluoride
27. Hardness, Total as CaCO₃
28. Nitrogen, Ammonia as N
29. Nitrogen, Nitrate as N
30. Nitrogen, Nitrite as N
31. Nitrogen, Total Kjeldahl as N
32. Oil an Grease
33. Phenol
34. Phosphorus Total as P
35. Phosphorus, Ortho as P
36. Sulfates
37. Surfactants
38. UV254

39. Aluminum
40. Antimony
41. Arsenic
42. Barium
43. Beryllium
44. Boron
45. Cadmium
46. Calcium, as CaCO₃
47. Calcium, Ca⁺²
48. Chromium, Total
49. Chromium, Hexavalent
50. Cobalt
51. Copper
52. Iron
53. Lead
54. Magnesium
55. Manganese
56. Mercury
57. Molybdenum
58. Nickel

59. Potassium
60. Selenium
61. Silver
62. Sodium
63. Thallium
64. Vanadium
65. Zinc

**CLP**
66. Metals/CN
67. Volatiles
68. Semi-violatiles
69. Pesticides/PCB's
70. Disk Deliverables

**TCLP**
71. TCLP-Metals
72. TCLP-Pesticides
73. TCLP-Herbicides
74. TCLP-Volatiles
75. TCLP-BNA's

# *REPORT   OF   ANALYSIS*

**Westchester County Department of Labs and Research**   2 Dana Road  Valhalla, New York  10595

**Agency:** Westchester County Health Dept.
Bureau of Environmental Qualit
145 Huguenot Street
New Rochelle, NY 10801
Michael Sakala

**Received By:** LK
**Bottle No.:** BAG #1
**Collected By:** RUGGIERO
**Comment:**

**Sample Location:** MICHAEL & MARLENE DURAND
938 MANOR LANE
PELHAM, N.Y.
**Sample Point:** 2 IN FROM FOUNDATION-W.
**ID of Source:** SOIL
**Collection Date:** 4/2/01  AT  10:30:00 AM
**Submitted On:** 4/2/01  AT  12:33:00 PM
**Sample Type:** S_SOIL
**PWS No.:**
**Source Code:** 000
**Type Descriptor:**

**Report To:**

## Sample No.    AD06566

| Method | Test Description | Results | Units | MDL | Analyzed on | Validator |
|--------|-----------------|---------|-------|-----|-------------|-----------|
| **Inorganics** | | | | | | |
| SW846/6010 | Lead | 960 | ug/g dry wgt | 5.0 | 4/9/01 | PAD |
| SW846 3050 | Soil Metals Digestion | Completed | | | 4/4/01 | PAD |
| EPA'79 160. | Percent solids | 73.1 | % | 0.1 | 4/3/01 | PAD |

**Approved By:** Pam Dilsizian          QA Officer          **Date Approved:**    4/10/01

**Environmental Laboratories**
**NYS ELAP # 10108**
**(914) 593-5575**

Original 4/10/01

Page 1 of 1



## ENVIRONMENTAL SERVICES SAMPLE SUBMISSION FORM
## WESTCHESTER COUNTY LABORATORIES AND RESEARCH
2 Dana Road, Valhalla, New York 10595
(914) 593-5575



NYS-ELAP No. 10108
Form A-70 (rev.1/96)

Time/Date Set: _____

---

**Sample Type** (circle one):

1. Potable
3. Non Potable *Treated*
2. Non Potable
(4.) Other ___Soil___

Time/Date Collected: _10:30_ _4/2/01_
Collected By: _J. Ruggiero_ Agency Code: _BEG_
**Collected From:**
Location's/Individual's Name _Michael & Marlene Durand_
Street _938 Manor Lone_
City/St/Zip _Pelham NY 10803_
Identification of Source _Soil_
Collection Point _2' from foundation - west side of house_

Bottle #'s: _Bag #1_
Chain of Custody? ___ yes ___ no
Comments: _Rear left side near fence_
PWS #: ___ Source ID: ___ Type Descriptor: ___
**Bill to:**
Name/Company _USCOOH_
Street _____
City/St/Zip _____
Phone#: ___ Fax#: ___
CA,CH, BI? ___ Check#: ___ Amount$ ___

---

### BACTERIOLOGICAL ANALYSIS
Lab#: _____
(circle tests)
1. Heterotrophic Plate
   Count (hemodialysis & all others)
2. Coliform P/A (public supplies)
3. Coliform MPN (priv well, raw, stp)
4. Fecal Coliform (all samples)
5. Microscopic
6. Macroscopic
7. API
8. Other: _____

Refrigerated? ___ yes ___ no

Chlorinated:? ___ yes ___ no

Free Chlorine Res: _____ mg/L

Total Chlorine Res: _____ mg/L

pH _____

### ORGANIC POTABLE ANALYSIS
Lab#: _____
(circle tests)
1. Trihalomethanes (524)
2. Volatile Halocarbons (524)
3. Volatile Aromatics (524)
4. Total Trihalomethane Potential (510)
5. Microextractables (504)
6. Pesticides (507)
7. Pesticides/PCB screen (508)
8. PCB as Decachlorobiphenyl (508A)
9. Herbicides (515)
10. Pesticides (525)
11. Carbamate Pesticides (531)
12. Glyphosate (547)
13. Diquat (549)
14. Chlorination Disinfection Byproducts (551)
15. Haloacetic Acids (552)
16. Pesticides (SM18/6630)
17. Petroleum/Hydrocarbon Scan (310-13)
18. Other: _____

### ORGANIC NONPOTABLE/SOLID ANALYSIS
1. Purgeable Halocarbons (624/8260)
2. Purgeable Aromatics (624/8260)
3. Acrolein & Acrylonitrile (624)
4. Phthalates (625/8270)
5. Organochlorine Pesticides (608/808)
6. PCB's (Arochlors) (608/8081)
7. Methoprene (616)
8. Herbicides (EPA1978/8151)
9. Pesticides (SM18/6630)
10. Petroleum Hydrocarbon Scan (310-13)
11. Glycols
12. Acid Extractables (625/8270)
13. Base Neutral Extractables (625/8270)
14. GC/MS Semivolatile Unknown Scan
15. Purgeable Halocarbons (DEF)
16. Purgeable Aromatics (DEF)
17. Pesticides/PCB's (DEF)
18. Other: _____

---

### INORGANIC ANALYSIS REQUESTED - Lab#: _6566_
(circle tests)
1. Color
2. Turbidity
3. pH
4. Conductivity
5. Corrosivity (temp: _____ °C)
6. BOD (5 day)
7. Soluble BOD (5 day)
8. Carbonaceous BOD (5 day)
9. Chemical Oxygen Demand
10. Dissolved Oxygen
11. Total Organic Carbon
12. Total Organic Halides
13. Solids, Percent (%)
14. Solids, Settleable
15. Solids, Suspended
16. Solids, Total
17. Solids, Total Dissolved
18. Solids, Total Volatile
19. Other: _____

20. Acidity
21. Alkalinity, as CaCO₃
22. Bromide
23. Bromate/Chlorate/Chlorite
24. Chloride
25. Cyanide
26. Fluoride
27. Hardness, Total as CaCO₃
28. Nitrogen, Ammonia as N
29. Nitrogen, Nitrate as N
30. Nitrogen, Nitrite as N
31. Nitrogen, Total Kjeldahl as N
32. Oil an Grease
33. Phenol
34. Phosphorus Total as P
35. Phosphorus, Ortho as P
36. Sulfates
37. Surfactants
38. UV254

39. Aluminum
40. Antimony
41. Arsenic
42. Barium
43. Beryllium
44. Boron
45. Cadmium
46. Calcium, as CaCO₃
47. Calcium, Ca⁺²
48. Chromium, Total
49. Chromium, Hexavalent
50. Cobalt
51. Copper
52. Iron
53. Lead
54. Magnesium
55. Manganese
56. Mercury
57. Molybdenum
58. Nickel

59. Potassium
60. Selenium
61. Silver
62. Sodium
63. Thallium
64. Vanadium
65. Zinc

**CLP**
66. Metals/CN
67. Volatiles
68. Semi-violatiles
69. Pesticides/PCB's
70. Disk Deliverables

**TCLP**
71. TCLP-Metals
72. TCLP-Pesticides
73. TCLP-Herbicides
74. TCLP-Volatiles
75. TCLP-BNA's

# Field Activity Report
## Bureau of Environmental Quality



Westchester gov.com

Andrew J. Spano, Westchester County Executive

DEPARTMENT OF HEALTH
Joshua Lipsman, M.D., M.D., M.P.H., Commissioner

SHEET _____ OF _____

NAME:

ADDRESS: 498 Manor Lane

MAILING ADDRESS: Pelham NY

P.O. BOX          POST OFFICE          ZIP CODE

TELEPHONE:

PERSON IN CHARGE OR INTERVIEWED: Rich - Painter

NAME AND TITLE

DATE: 5/8/01          TYPE FACILITY: P.H.

TIME ARRIVED: 10:30 Am          TIME LEFT: 10:35 Am

## INSPECTION

☐ ORG. ROUTINE      ☐ ORIG. COMPLAINT      ☐ ORIG. REQUEST      ☐ COMPLIANCE

☐ COMPLAINT COMP.   ☐ FINAL               ☐ GROUP ILLNESS      ☐ CONSTRUCTION

☐ REINSPECTION      ☐ FIELD, SAMPLING ONLY ☐ FIELD CONFERENCE   ☐ OTHER (EXPLAIN BELOW)

Re-inspection conducted at above address.

FINDINGS:

At time of inspection met with Painter at
pond. Painter was observed removing contaminated
soil in old area. New soil will be placed
over same area.

INSPECTOR: John C Lingua Sanitaria          INSPECTOR TELE:

PERSON IN CHARGE OR INTERVIEWED: I acknowledge receipt of a copy of this Field Activity Report.

SIGNATURE:          TITLE:

H-7110



**ENVIRONMENTAL SERVICES SAMPLE SUBMISSION FORM**
**WESTCHESTER COUNTY LABORATORIES AND RESEARCH**
2 Dana Road, Valhalla, New York 10595
(914) 593-5575



NYS-ELAP No. 10108
Form A-70 (rev.1/96)

Time/Date Set: _____

---

**Sample Type** (circle one):

1. Potable          3. Non Potable *Treated*
2. Non Potable    ④ Other ___Soil___

Time/Date Collected: ___10:00  5|0|01___

Collected By: _J. Ruggiero_   Agency Code: _BEG_

**Collected From:**

Location's/Individual's Name _Durand_

Street _498 Manor Lane_

City/St/Zip _Pelham N Y_

Identification of Source _Soil_

Collection Point _3' from Foundation /Eastern Corner_

Bottle #'s: ___Bag # 1___

Chain of Custody? ____ yes ____ no

Comments: _____

PWS # _____ Source ID: _____ Type Descriptor: ____

**Bill to:**

Name/Company _Wccort_

Street _____

City/St/Zip _____

Phone#: _____ Fax#: _____

CA,CH, BI? _____ Check#: _____ Amount$ _____

---

**BACTERIOLOGICAL ANALYSIS**
Lab#: _____
(circle tests)

1. Heterotrophic Plate
   Count (hemodialysis & all others)
2. Coliform P/A (public supplies)
3. Coliform MPN (priv well, raw, stp)
4. Fecal Coliform (all samples)
5. Microscopic
6. Macroscopic
7. API
8. Other: _____

Refrigerated? ____ yes ____ no

Chlorinated:? ____ yes ____ no

Free Chlorine Res: _____ mg/L

Total Chlorine Res: _____ mg/L

pH _____

**ORGANIC POTABLE ANALYSIS**
Lab#: _____
(circle tests)

1. Trihalomethanes (524)
2. Volatile Halocarbons (524)
3. Volatile Aromatics (524)
4. Total Trihalomethane Potential (510)
5. Microextractables (504)
6. Pesticides (507)
7. Pesticides/PCB screen (508)
8. PCB as Decachlorobiphenyl (508A)
9. Herbicides (515)
10. Pesticides (525)
11. Carbamate Pesticides (531)
12. Glyphosate (547)
13. Diquat (549)
14. Chlorination Disinfection Byproducts (551)
15. Haloacetic Acids (552)
16. Pesticides (SM18/6630)
17. Petroleum/Hydrocarbon Scan (310-13)
18. Other: _____

**ORGANIC NONPOTABLE/SOLID ANALYSIS**

1. Purgeable Halocarbons (624/8260)
2. Purgeable Aromatics (624/8260)
3. Acrolein & Acrylonitrile (624)
4. Phthalates (625/8270)
5. Organochlorine Pesticides (608/8081)
6. PCB's (Arochlors) (608/8081)
7. Methoprene (616)
8. Herbicides (EPA1978/8151)
9. Pesticides (SM18/6630)
10. Petroleum Hydrocarbon Scan (310-13)
11. Glycols
12. Acid Extractables (625/8270)
13. Base Neutral Extractables (625/8270)
14. GC/MS Semivolatile Unknown Scan
15. Purgeable Halocarbons (DEF)
16. Purgeable Aromatics (DEF)
17. Pesticides/PCB's (DEF)
18. Other: _____

---

**INORGANIC ANALYSIS REQUESTED - Lab#:** _10240_
(circle tests)

1. Color
2. Turbidity
3. pH
4. Conductivity
5. Corrosivity (temp: _____ºC)
6. BOD (5 day)
7. Soluble BOD (5 day)
8. Carbonaceous BOD (5 day)
9. Chemical Oxygen Demand
10. Dissolved Oxygen
11. Total Organic Carbon
12. Total Organic Halides
13. Solids, Percent (%)
14. Solids, Settleable
15. Solids, Suspended
16. Solids, Total
17. Solids, Total Dissolved
18. Solids, Total Volatile
19. Other: _____

20. Acidity
21. Alkalinity, as CaCO3
22. Bromide
23. Bromate/Chlorate/Chlorite
24. Chloride
25. Cyanide
26. Fluoride
27. Hardness, Total as CaCO3
28. Nitrogen, Ammonia as N
29. Nitrogen, Nitrate as N
30. Nitrogen, Nitrite as N
31. Nitrogen, Total Kjeldahl as N
32. Oil an Grease
33. Phenol
34. Phosphorus Total as P
35. Phosphorus, Ortho as P
36. Sulfates
37. Surfactants
38. UV254

39. Aluminum
40. Antimony
41. Arsenic
42. Barium
43. Beryllium
44. Boron
45. Cadmium
46. Calcium, as CaCO3
47. Calcium, Ca +2
48. Chromium, Total
49. Chromium, Hexavalent
50. Cobalt
51. Copper
52. Iron
53. Lead
54. Magnesium
55. Manganese
56. Mercury
57. Molybdenum
58. Nickel

59. Potassium
60. Selenium
61. Silver
62. Sodium
63. Thallium
64. Vanadium
65. Zinc

**CLP**
66. Metals/CN
67. Volatiles
68. Semi-violatiles
69. Pesticides/PCB's
70. Disk Deliverables

**TCLP**
71. TCLP-Metals
72. TCLP-Pesticides
73. TCLP-Herbicides
74. TCLP-Volatiles
75. TCLP-BNA's

# REPORT   OF   ANALYSIS

**Westchester County Department of Labs and Research**   2 Dana Road  Valhalla, New York 10595

**Agency:** Westchester County Health Dept.
Bureau of Environmental Qualit
145 Huguenot Street
New Rochelle, NY 10801
Michael Sakala

**Received By:** LK
**Bottle No.:** BAG 1
**Collected By:** RUGGIERO
**Comment:**

**Report To:**

**Sample Location:** DURAND
498 MANOR LANE
PELHAM, N.Y.
**Sample Point:** 2 IN FROM FOUNDATION LE
**ID of Source:** SOIL
**Collection Date:** 5/10/01  AT  10:00:00 AM
**Submitted On:** 5/10/01  AT  10:32:00 AM
**Sample Type:** S_SOIL
**PWS No.:**
**Source Code:** 000
**Type Descriptor:**

---

## Sample No.    AD10240

| Method | Test Description | Results | Units | MDL | Analyzed on | Validator |
|--------|-----------------|---------|-------|-----|-------------|-----------|
| **Inorganics** | | | | | | |
| SW846/6010 | Lead | 54 | ug/g dry wgt | 5.0 | 5/22/01 | ADB |
| SW846 3050 | Soil Metals Digestion | Completed | | | 5/15/01 | ADB |
| EPA'79 160. | Percent solids | 88.9 | % | 0.1 | 5/15/01 | ADB |

---

**Approved By:** Alan Baisley          Inorganic Supervisor                    **Date Approved:**    5/22/01

**Environmental Laboratories**
**NYS ELAP # 10108**
**(914) 593-5575**

Original 5/22/01

EXHIBIT B

DocuSign Envelope ID: CBC47920-E543-4695-8F6C-04A1D89FA852

## Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

**Lead Warning Statement**

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

**Seller's Disclosure**

(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

    (i) _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

    _____

    (ii) __✓__ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the seller (check (i) or (ii) below):

    (i) _____ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

    (ii) __✓__ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment (initial)**

(c) _____ Purchaser has received copies of all information listed above.

(d) _____ Purchaser has received the pamphlet Protect Your Family from Lead in Your Home.

(e) Purchaser has (check (i) or (ii) below):

    (i) _____ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

    (ii) _____ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment (initial)**

(f) _____ Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| Seller | 3/6/15 | Seller | 3/6/2015 |
| Adam Ilkowitz | Date | Jenica Ilkowitz | Date |
| Purchaser | Date | Purchaser | Date |
| Agent | Date | Agent | Date |


Exhibit 2

# THE JUDICIAL TITLE INSURANCE AGENCY LLC

### Title Number: 119778FA-W

### SCHEDULE B  (continued)

**DISPOSITION**

9. If a power of attorney is to be utilized under the proposed transaction, company will require the following:

1) A copy of the executed power of attorney and a copy of the donor's proof of identity to the satisfaction of this company must be submitted prior to closing for review and approval.
2) Only the September 1, 2010 statutory form of power attorney for individuals will be accepted.
3) Affidavit that the power of attorney is in full force and effect and that the donor is alive and competent must be provided at closing.
4) Telephonic verification with the donor is required at closing. In the event telephonic verification is not possible, company will require an affidavit from the attorney for the seller, or in the case of a power of attorney utilized for mortgage execution, from the attorney for the mortgagor, stating that the attorney personally has spoken to the donor that the donor is alive and consents to the contemplated transaction.

10. **FOR INFORMATION ONLY:** On all **one** to **four family** dwellings used as a residence (not including vacant land), title companies must offer a future market value rider endorsement, which provides coverage insuring the title for an amount equal to the market value of the premises at the time of loss.

11. **FOR INFORMATION ONLY:** All municipal departmental searches are not insurable items and this company assumes no liability for the accuracy.

Municipal Departmental searches **are not** continued to date of closing.

12. **NOTE:** Effective September 1, 2003, New York State Tax Law Article 22 Section 663 imposes filing and pre-payment requirements on non-resident individuals, estates or trusts selling or transferring a fee simple interest in real property located in New York (other than the sale of a principal residence as that term is defined in Section 121 of the Internal Revenue Code). Section 663 requires those sellers to file a return and pay estimated personal income tax liability on the gain, if any, from such sale or transfer. Proof of such payment (or exemption from same) will be required before any deed will be accepted for recording.

13. This policy **does not** insure against charges or fees levied by the local governing municipality for work, maintenance or other repairs conducted by the local governing municipality, its various departments and/or agencies, for work, maintenance or repairs performed on the improvements, fixtures, attachments and landscaping situated on the premises described in Schedule "A" herein.

**FOR ANY QUESTIONS ON THIS REPORT, PLEASE CONTACT OUR LEGAL DEPARTMENT
PHONE: (914) 899-3838          EMAIL: INFO@JUDICIALTITLE.COM**

Exhibit 3



**MUNICIPAL DATA**
SERVICES

25 Hyatt Street – Suite 301
Staten Island, NY 10301
Phone – (718) 815-0707
Fax – (718) 815-9101
www.munidata.com

Set forth below are the unpaid taxes, water rates, assessments which are properly filed and indexed liens
as of the date of this search.

**County:** Westchester        **Title Number:** JUDL 119778
**Swis Code:** 554405
**Town/City:** Town of Pelham        **Village:** Village of Pelham Manor
**Address:** 498 MANOR LANE        **Owner:** DURAND, MICHAEL & MARLENE

**School Dist:** PELHAM
**District:**                    **Acreage:** 102 X 106        **Tax Class:** 210 One Family Dwelling
**Section:** 163.76        **Account#:**
**Block:** 1                    **Land AV:** $246,000
**Lot:** 70                    **Total AV:** $800,000
**Exemptions:** $94,890 BASIC STAR

FKA: 3-312-5

| 2014/2015 | **SCHOOL TAX** | $14,533.50 | | |
|---|---|---|---|---|
| | 1st Payment | $7,266.75 | PAID | YEAR: 7/1-6/30 |
| | 2nd Payment | $7,266.75 | PAID | DUE.: 9/1 |
| | | | | DUE.: 1/1 |

*om.t*

ESTIMATED TAX WITHOUT EXEMPTION $    16172.50

**2014  TOWN TAX**        $4,334.59    PAID    *om.t*    YEAR: 1/1-12/31
DUE.: 4/1

*2015 town tax $ 4,372.23 pd- omit*

2014/2015   VILLAGE TAX        $5,805.52    PAID *om.t*    YEAR: 6/1-5/31
DUE.: 6/1

*2015 / 2016 village tax $ 6048.86 — Omit pd on 6-12-15
by payoff bank citimortgage
Not yet posted by
Town of Pelham*

WATER ACCOUNT # PRIVATE

SEARCH DATE:    3/13/2015

SUBJECT TO CONTINUATION

Our policy does not insure against such items which have not become a lien up to the date of the policy or installments due after the date of the policy. Neither our tax search nor our policy covers any part of streets on which the premises to be insured abut. Recent payments of any open items returned on this tax search may not be reflected on the public records. Therefore, please request the seller or borrower to have receipts for bills available at the closing.
MUNICIPAL DATA SERVICES, INC.

Continued on next page..
Page: 1    of  2                                    2990131        1700480


Exhibit 4

# THE JUDICIAL TITLE INSURANCE AGENCY LLC

Title Number: 119778FA-W

## D E P A R T M E N T A L   S E A R C H E S

Any searches or returns reported herein are furnished FOR INFORMATION ONLY. They will not be insured and the Company assumes no liability for the accuracy thereof. They will not be continued to the date of closing.

| | |
|---|---|
| **Housing & Building** | REPORT ATTACHED |
| **Fire Dept. Search** | REPORT ATTACHED |
| **Cert. of Occupancy** | REPORT ATTACHED |
| **Emergency Repairs** | N/A |
| **Street Report** | REPORT ATTACHED |
| **Air Resources** | N/A |
| **Health Dept.** | N/A |
| **Fuel Search** | N/A |
| **Highway Search** | N/A |
| **Flood Hazard Search** | N/A |
| **Cert. of Good Standing** | N/A |
| **Building Dept. Inspection** | N/A |
| **Landmark Search** | N/A |
| **Franchise Tax Search** | N/A |
| **UCC Search (State)** | N/A |
| **Sewer Search** | N/A |



**MUNICIPAL DATA**
— SERVICES —

25 Hyatt Street – Suite 301
Staten Island, NY 10301
Phone – (718) 815-0707
Fax – (718) 815-9101
www.munidata.com

| | | |
|---|---|---|
| **County:** | WESTCHESTER | **Search Date:** 03/11/2015 |
| **City/Town:** | Town of Pelham | |
| **Village:** | Village of Pelham Manor | |

**Title/CoNo.:**   JUDL 119778

**Address:**   498 MANOR LANE

**Section:**   163.76
**Block:**   1
**Lot:**   70

## BUILDING DEPARTMENT VIOLATION SEARCH

In reply to your request for a violation search concerning the above mentioned premises,
we have been advised by the BUILDING DEPARTMENT that a search of their records shows:

## NO VIOLATIONS.

Municipal Data Services Inc. certifies that the records of the above municipal agency were examined on behalf of THE JUDICIAL
TITLE INSURANCE AGENCY LLC. The information reported above is a true and accurate abstract of the information on file therein.
This report is submitted for information purposes only. There are no intended third party beneficiaries. No liability is assumed.

2990131          1700478



**MUNICIPAL DATA**
— SERVICES —

25 Hyatt Street – Suite 301
Staten Island, NY 10301
Phone – (718) 815-0707
Fax – (718) 815-9101
www.munidata.com

| | |
|---|---|
| **County:** | WESTCHESTER |
| **City/Town:** | Town of Pelham |
| **Village:** | Village of Pelham Manor |

**Search Date:**   03/11/2015

**Title/CoNo.:**   JUDL 119778

**Address:**   498 MANOR LANE

**Section:**   163.76
**Block:**   1
**Lot:**   70

## FIRE DEPARTMENT VIOLATION SEARCH

In reply to your request for a violation search concerning the above mentioned premises, we have been advised by the FIRE DEPARTMENT that a search of their records shows:

**NO VIOLATIONS.**

Municipal Data Services Inc. certifies that the records of the above municipal agency were examined on behalf of THE JUDICIAL TITLE INSURANCE AGENCY LLC. The information reported above is a true and accurate abstract of the information on file therein. This report is submitted for information purposes only. There are no intended third party beneficiaries. No liability is assumed.

2990131          1700477

Exhibit 5

# THE JUDICIAL TITLE INSURANCE AGENCY LLC
## Title Number: 119778FA-W

| | | | |
|---|---|---|---|
| Purchaser: | Adam Ilkowitz and Jeniece Ilkowitz | Effective Date: | 01/01/2015 |
| Lender: | JPMorgan Chase Bank, N.A.<br>its successors and/or assigns | Mortgage Insurance: | $553,500.00 |
| Premises: | 498 Manor Lane<br>Pelham, New York | Fee Insurance: | $922,500.00 |

County:     Westchester

Underwriter:   First American Title Insurance Company

The estate or interest in the land described or referred to in this Certificate and covered herein is: **Fee Simple**

**THIS COMPANY CERTIFIES** that a good and marketable title to premises described in Schedule A, subject to the liens, encumbrances and other matters, if any, set forth in this certificate may be conveyed and/or mortgaged by:

## MICHAEL DURAND AND MARLENE ZARFES, HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY

Source of title: Deed from Lorenzo Carcaterra and Susan Toepfer, dated 6/28/96, recorded 7/31/96, in Liber 11488 cp. 293.

*Adam T. Ilkowitz and Jeniece R. Ilkowitz by deed dated 6-19-15*

*Insure JP morgan chase Bank, N.A. in the amount of*

*# 246,000*

**IN WITNESS WHEREOF,** The Judicial Title Insurance Agency LLC has caused this Certificate to be signed and dated:

_____
AUTHORIZED SIGNATURE

Redated and Recertified:   6-19-15

By: _____
CLOSERS NAME

This certificate shall be null and void if the fees due are not paid or if the prospective insured, his attorney or agent makes any untrue statement with respect to any material fact or suppresses or fails to disclose any material fact or if any untrue answers are given to material inquiries by or on behalf of the Company upon delivery of the policy. Any claim arising by reason of the issuance hereof shall be restricted to the terms and conditions of the standard for of title insurance policy. If title, interest or lien to be insured was acquired by the prospective insured prior to delivery hereof, the Company assumes no liability except under its policy when issued.



## The Judicial Title Insurance Agency LLC

## CLOSING REQUIREMENTS

1. Closings should be scheduled at least twenty-four hours prior to the anticipated date of closing so company can continue the title search.

2. The identity of all persons executing closing documents must be established to the satisfaction of this company. (i.e., driver's license, photo ID)

3. The company closer may not act as legal advisor for any of the parties or draw legal instruments for any of the parties. The company closer is permitted to be of assistance to the attorneys involved with the closing.

4. Deeds and mortgages must contain the covenant required by Section 13 of the Lien Law and such covenant must be absolute and not conditional. The covenant is not required in deeds from referees or other duly appointed officials of the court for the sole purpose of selling the real property.

5. If any of the closing instruments to be used at closing will be other than the commonly used forms or will contain unusual provisions, a copy of such instrument should be furnished to this company's Legal Department prior to closing.

6. If the present transaction consists in whole or in part of a conveyance or lease by a corporate grantor or lessor, compliance with Section 909 of the Business Corporation Law must be established. The written consent of the outstanding shareholders of said corporation will be required and the closing instrument must recite the same. In lieu thereof, the consent of the holders of two thirds of the outstanding shares entitled to vote thereon must be obtained at a meeting duly noticed and called for in the manner provided for in Section 605 of the Business Corporation Law and the closing instrument must recite same.

7. If the present transaction consists in whole or in part of the executing of a new mortgage by a corporate mortgagor, compliance with Section 911 of the Business Corporation Law must be established. A certified copy of the resolution of the Board of Directors of any corporate mortgagor authorized to execute such mortgage will be required.

8. This company does not accept personal checks for the payment of its fees. Only certified or bank checks or attorney checks will be accepted at closing. This company does accept certain major credit cards for the payment of its fees. Kindly consult this office or the closer.

9. A mortgagee's policy of title insurance does not provide title insurance coverage to the fee owner. If you wish to obtain owner's title insurance, you must request it at/or before closing and pay the applicable premium.

## CONDITIONS AND STIPULATIONS

1. This certificate is intended for lawyers. Your lawyer should be consulted before taking any action based upon the contents herein.

2. This certificate is preliminary to the issuance of such policy or policies of title insurance and all liability and obligations hereunder shall cease and terminate six months after the effective date hereof or when the policy or policies committed for shall be issued by this company.

3. This company must be notified immediately of the recording or filing after the date of this certificate of any instrument, of the discharge or other disposition of any mortgage, judgment, lien or other matter as set forth in this certificate, or any change in the transaction to be insured or the parties thereto.

4. In the event an intermediary will come into title at closing other than the ultimate insured, the name of such party or parties must be furnished to this company prior to closing so that the appropriate searches can be made and the relevant exceptions considered.

5. All amendments made by this company to this certificate of title, and all correspondence which concern amendments made to this certificate of title by this company, which said amendments and correspondence occur subsequent to the date of this certificate, shall supersede the relative certifications, exceptions and other provisions as set forth in this certificate.

6. The certificate shall be null and void if (A) the fees therefore are not paid, (B) the prospective insured, his attorney or agent makes any untrue statement with respect to any material fact, or if any untrue answers are given to material inquiries by or on behalf of the company.

7. The liability of this company under this certificate shall not exceed the amount of insurance taken, and such liability is subject to the insuring provisions, the exclusions from coverage and the conditions and stipulations of the form of policy or policies in favor of the proposed insured.

8. Judgments, mortgages, liens or other adverse matters as set forth in this certificate and which concern predecessors in title must be disposed of to the satisfaction of this company. If this company is provided with a copy of the current owner's policy of title insurance or a copy of the "marked-up" report, said judgments, liens or other adverse matters will be omitted from this certificate pending receipt by this company of the necessary proofs or proper letters of indemnity from the previous insurer.

9. This certificate will except from coverage any state of facts which an accurate survey would show, unless survey coverage is requested. Although this company attempts to locate surveys on behalf of the proposed insured, it cannot guarantee the existence of a survey for a specific property, or that such survey will meet current title underwriting standards or the requirements of the individual lending institutions. Ultimately it is incumbent upon the proposed insured to provide this company with an acceptable survey if survey coverage is required.

10. When municipal department searches are requested or required, the accuracy of the returns therein are not guaranteed nor are such searches continued beyond the date of the original search. Any Certificate of Occupancy, Certificates of Completion or Building Permits issued subsequent to the date of this certificate, or any dismissals or notices of removal of any building or housing violations set forth herein, must be submitted to this company prior to closing if an amendment to any of the municipal department searches is requested or required as this company does not independently conduct such searches.

11. This certificate includes a search for any unexpired financing statements which affect fixtures and which have been properly filed and indexed pursuant to the Uniform Commercial Code in the Office of the Recording Officer in the county where the property is situated. No search has been made for other financing statements as this company does not insure personal property. Upon request this company will conduct such additional searches at an additional charge, but the liability of this company in connection with such additional searches shall be limited to one thousand dollars.

12. If this certificate is being issued in connection with a transaction involving an assignment of mortgage or other lien, an estoppel certificate executed by the owner of the fee estate and by the holders of all subsequent encumbrances must be obtained. Said assignment must contain full covenants.

Exhibit 6

# First American Title Insurance Company

## TIRSA Owner's Extended Protection Policy
## For A One-To-Four Family Residence

## TABLE OF CONTENTS

| | Page |
|---|---|
| OWNER'S COVERAGE STATEMENT | 1 |
| COVERED RISKS | 1 |
| SCHEDULE A | |
| Policy Number, Premium, Date and Time and Amount | |
| Deductible Amounts and Maximum Dollar Limits of Liability | |
| Street Address of the Land | |
| 1.  Name of Insured | |
| 2.  Interest in Land Covered | |
| 3.  Description of the Land | |
| SCHEDULE B – EXCEPTIONS | |
| EXCLUSIONS | 2 |
| CONDITIONS | |
| 1.  Definitions | 2 |
| 2.  Continuation of Coverage | 2 |
| 3.  How to Make a Claim | 2 |
| 4.  Our Choices When We Learn of a Claim | 2 |
| 5.  Handling a Claim or Legal Action | 3 |
| 6.  Limitation of Our Liability | 3 |
| 7.  Our Duty to Defend Against Legal Actions | 3 |
| 8.  Transfer of Your Rights to Us | 3 |
| 9.  Entire Contract | 3 |
| 10.  Increased Policy Amount | 3 |
| 11.  Severability | 3 |
| 12.  Arbitration | 3 |

# First American Title Insurance Company

## TIRSA Owner's Extended Protection Policy
## For A One-To-Four Family Residence

### OWNER'S INFORMATION SHEET

It applies only to a one-to-four family residence and only if each insured name in Schedule A is a Natural Person. If the Land described in Schedule A of the Policy is not an improved residential lot on which there is located a one-to-four family residence, or if each insured named in the Schedule A is not a Natural Person, contact Us immediately.

The Policy insures You against actual loss resulting from certain Covered Risks. These Covered Risks are listed on page 1 of the Policy. The Policy is limited by:

> Provisions of Schedule A

> Exceptions in Schedule B

> Our Duty to Defend Against Legal Actions on page 1

> Exclusions on page 2

> Conditions on pages 2 and 3

You should keep the Policy even if You transfer Your Title to the Land.

If you want to make a claim, see paragraph 3 under Conditions on page 2.

You do not owe any more premiums for the Policy.
This sheet is not Your Insurance Policy. It is only a brief outline of some of the important Policy features. The Policy explains in detail Your rights and obligations and Our rights and obligations. Since the Policy -- and not this sheet -- is the legal document.

### YOU SHOULD READ THE POLICY VERY CAREFULLY

If You have any question about Your Policy, contact:

The Judicial Title Insurance Agency LLC
(914) 381-6700

## First American Title Insurance Company

## Schedule A – Owner's Extended Protection Policy

**Policy Number:** 50068360005402 **Title Number:** 119778FA-W

**Policy Amount:** $922,500.00    **Policy Date:** June 19, 2015

Deductible Amounts and Maximum Dollar Limits of Liability
For Covered Risk 14, 15, 16, and 18

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 14 (Subdivision Law Violation): | $2,000.00 | $10,000.00 |
| Covered Risk 15 (Building Permit): | $4,000.00 | $25,000.00 |
| Covered Risk 16 (Zoning): | $4,000.00 | $25,000.00 |
| Covered Risk 18 (Encroachment of Boundary Walls or Fences): | $1,500.00 | $5,000.00 |

**Street Address of the Land:**

498 Manor Lane
Pelham, New York

1.   **Name of Insured:** ADAM T. ILKOWITZ AND JENIECE R. ILKOWITZ

2.   **Your interest in the Land covered by this Policy is:** Fee Simple

3.   **The Land referred to in this Policy is described as follows:**

See Schedule A attached hereto

**Countersigned:**    _____
Authorized Officer or Agent

**914-381-6700**
**THE JUDICIAL TITLE INSURANCE AGENCY LLC**

# THE JUDICIAL TITLE INSURANCE AGENCY LLC

### Title Number: 119778FA-W

### S C H E D U L E  A

ALL that certain plot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being in the Village of Pelham Manor, Town of Pelham, County of Westchester and State of New York, known as Lots Nos. 22, 23 and 24, Block B, on a certain map entitled, "Map of Property in the Town of Pelham, Westchester County, New York, belonging to the Pelhamdale Land Co.", made by Maclay and Davies, C.E. & C.S., dated December 10, 1890, and filed in the County Clerk's Office, Division of Land Records, formerly Register's Office of Westchester County, New York, January 9, 1891 in Volume 8 of Maps at page 117, said lots when taken together as one parcel are more particularly bounded and described as follows:

BEGINNING at a point on the easterly side of Willard Avenue (formerly Manor Lane) where the same is intersected by the division line between Lots Nos. 24 and 25 in Block B in Volume 8 of Maps at Page 117, said point also being distant 292.09 feet (292.11 feet as per map) southerly as measured along the easterly side of Willard Avenue (formerly Manor Lane) from the corner formed by the intersection of the easterly side of Willard Avenue (formerly Manor Lane) with the southeasterly side of Willard Avenue (formerly Manor Lane);

RUNNING THENCE from said point of beginning as so defined in an easterly direction along the division line between Lot Nos. 24 and 25 on a course forming a right angle with the easterly side of Willard Avenue (formerly Manor Lane) for a distance of 166.77 feet to the northwesterly corner of Lot No. 50;

RUNNING THENCE in a southeasterly direction along the division line between Lot Nos. 24 and 23 with Lot Nos. 50 and 51 on a course forming an interior angle of 97 degrees 23 minutes 57 seconds with the last described course for a distance of 25.88 feet (26.05 feet as per map) to the northeasterly corner of Lot No. 20;

RUNNING THENCE in a southwesterly direction along the division line between Lots Nos. 23 and 22 with Lots Nos. 20 and 21 on a course forming an interior angle of 106 degrees 40 minutes 18 seconds west with the last described course for a distance of 186.31 feet (186.25 feet as per map) to the corner formed by the intersection of the easterly side of Willard Avenue (formerly Manor Lane) with the northeasterly side of Willard Avenue (formerly Manor Lane);

RUNNING THENCE northerly along the same on a course forming an interior angle of 65 degrees 55 minutes 45 seconds with the last described course for a distance of 101.67

# THE JUDICIAL TITLE INSURANCE AGENCY LLC

### Title Number: 119778FA-W

### S C H E D U L E  A  (continued)

feet (101.64 feet as per map) to the point and place of BEGINNING.

SAID PREMISES being known as 498 Manor Lane, Pelham, N.Y.

**FOR CONVEYANCING ONLY**

[347793/1]**The policy to be issued under this report will insure the title to such buildings and improvements erected on the premises which by law constitute real property.**

**TOGETHER with all the right, title and interest of the party in the first part, or, in and to the land lying in the street in front of and adjoining said premises.**

**First American Title Insurance Company**

**Schedule B – Owner's Policy**

**Exceptions from Coverage**

**Policy Number:** 50068360005402
**File Number:** 119778FA-W

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.    Rights of tenants or persons in possession, if any.

2.    Survey exceptions set forth herein.

3.    Policy excepts covenants, conditions, easements, leases, agreements of record, etc., set forth in schedule herein.

4.    Mortgage made by ADAM T. ILKOWITZ AND JENIECE R. ILKOWITZ to JPMORGAN CHASE BANK, N.A. its successors and/or assigns in the amount of $246,000.00 dated June 19, 2015 and to be recorded

5.    This policy **does not** insure against charges or fees levied by the local governing municipality for work, maintenance or other repairs conducted by the local governing municipality, its various departments and/or agencies, for work, maintenance or repairs performed on the improvements, fixtures, attachments and landscaping situated on the premises described in Schedule "A" herein.

6.    If the premises is serviced by a **water meter**, a final meter reading must be obtained and a bill for meter charges submitted at the time of closing.  If a bill is not submitted at closing, policy excepts all meter charges from the last date of reading.

7.    Source of water must be disclosed or tax bill produced for same.

8.    Variations between tax map and record description  along the northerly record line in that the description reads a distance of 166.77 feet whereas the tax map measures a distance of 165.15 feet, along the southerly record line in that the description reads a distance of 186.31 feet (186.25 feet as per map) whereas the tax map measures a distance of 183.80 feet and along the easterly side of Manor Lane in that the description reads a distance of 101.67 feet (101.64 feet as per map) whereas the tax map measures a distance of 100.38 feet.

# THE JUDICIAL TITLE INSURANCE AGENCY LLC

### Title Number: 119778FA-W

### <u>SURVEY READING</u>

Amended 04/14/2015

Survey made by Aristotle Bournazos dated March 1, 1991 shows a two and one-half story frame structure with entrance and platform in front, enclosed porch on southerly and northerly sides, concrete platform and detached frame garage in rear.

Macadam driveway, concrete walk, stone curbs and stone wall extend onto Manor Lane.

Stone wall is situated 1.9 feet more or less south of the northerly property line.

Stockade fence from subject premises encroaches 1.3 feet more or less onto adjoining property to the north.

Overhead service wires traverse northerly and westerly property lines.

Variations between fences, walls, steps, walks, curbs, hedges, cedars and record lines of title.

Physical inspection made April 13, 2015 shows brick patio in rear.

**<u>FOR MORTGAGE PURPOSES ONLY:   ENCROACHMENTS & VARIATIONS</u>**
Policy will insure against any monetary loss or damage resulting from same.

**FOR INFORMATION ONLY:** Laws and ordinances relating to zoning , occupancy or changes in the character, dimensions and location of any improvement erected on the premises are specifically excluded from coverage pursuant to paragraph 1(A) of the policy exclusions. The survey reading and/or physical inspection herein is solely for the purpose of discovering issues which may affect title to or possession of the land to be insured. Engineer's reports should be consulted where alterations are suspected.

# THE JUDICIAL TITLE INSURANCE AGENCY LLC

### Title Number: 119778FA-W

### SCHEDULE OF COVENANTS, CONDITIONS, EASEMENTS, LEASES, AGREEMENTS OF RECORD, ETC.

Covenants, Restrictions and Setbacks in Liber 2098 cp. 13.

See copy attached.

## ATTACHED ARE THE BEST COPIES AVAILABLE

Except, but policy will insure that said covenants and restrictions are not violated by the present structure, and that any future violation will not result in a forfeiture or reversion of title; company affirmatively insures that the exercise of said easements, if any, will not interfere with the use and enjoyment of the premises.

# *First American Title Insurance Company*

## *STANDARD NEW YORK ENDORSEMENT*
## *(OWNER'S POLICY)*

**Title No.**  119778

Attached to and made a part of Policy No. 50068360005402

1.  The following is added as a Covered Risk:

    11.  Any statutory lien arising under Article 2 of the New York Lien Law for services, labor or materials furnished prior to the date hereof, and which has now gained or which may hereafter gain priority over the estate or interest of the insured as shown in Schedule A of this policy.

2.  Exclusion Number 5 is deleted, and the following is substituted:

    5.  Any lien on the Title for real estate taxes, assessments, water charges or sewer rents imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as Shown in Schedule A.

The endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

**Dated:  06/19/2015**

**Countersigned**

**BY:**_____
                          Authorized Signatory

*Standard New York Endorsement (7/1/12) for use with ALTA Owner's Policy (6/17/06)*

# *First American Title Insurance Company*

## *POLICY AUTHENTICATION ENDORSEMENT*

**Title No.** 119778

Attached to and made part of Policy Number: 50068360005402

When the policy is issued by the Company with a policy number and Date of Policy, the Company will not deny liability under the policy or any endorsements issued with the policy solely on the grounds that the policy or endorsements were issued electronically or lack signatures in accordance with the Conditions.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

**Date:  06/19/2015**

*Policy Authentication Endorsement (6/24/2016)*

# *First American Title Insurance Company*

## WAIVER OF ARBITRATION ENDORSEMENT
## (OWNER'S OR LOAN POLICY)

*Title No. 119778*

*Attached to and made a part of Policy No. 50068360005402*

*The policy is amended by deleting therefrom:*

> *(A) If this endorsement is attached to an ALTA Loan Policy: Condition 13.*

> *(B) If this endorsement is attached to an ALTA Owner's Policy: Condition 14.*

> *(C) If this endorsement is attached to a TIRSA Owner's Extended Policy: Condition 12.*

*This endorsement is made a part of Policy and is subject to all of the terms and provisions thereof and of any other endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the Policy and any other endorsements, nor does it extend the effective date of the Policy and any other endorsements, nor does it increase the face amount thereof.*

**IN WITNESS WHEREOF,** *the company has caused this Endorsement to be signed on its date of issue set forth herein.*

*Dated: 06/19/2015*

*Countersigned*

*BY:*_____

Authorized Signatory

*TIRSA WAIVER OF ARBITRATION ENDORSEMENT [OWNER'S OR LOAN POLICY] (11/01/08)*



| | | **TIRSA Owner's Extended Protection Policy**<br>**FOR A ONE-TO-FOUR FAMILY RESIDENCE** |
|---|---|---|
| | *First American Title*™ | ISSUED BY<br>**First American Title Insurance Company** |
| **Owner's Policy** | | POLICY NUMBER |

### OWNER'S COVERAGE STATEMENT

This Policy insures You against actual loss, including any costs, attorney's fees and expenses provided under this Policy, resulting from the Covered Risks set forth below, if the Land is an improved residential lot on which there is located a one-to-four family residence and each insured named in Schedule A is a Natural Person.

### This Policy is not complete without Schedules A and B.

Your insurance is effective on the Policy Date. This Policy covers Your actual loss from any risk described under Covered Risks if the event creating the risk exists on the Policy Date or, to the extent expressly stated, after the Policy Date. Your insurance is limited by all of the following:

- The Policy Amount shown in Schedule A
- For Covered Risk 14, 15, 16 and 18, Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A
- Exceptions in Schedule B
- Exclusions on page 3
- Conditions on page 3, 4 and 5

In Witness Whereof, First American Title Insurance Company has caused its corporate name to be hereunto affixed by its authorized officers as of Date of Policy shown in Schedule A.

**First American Title Insurance Company**

*[signature]*

Dennis J. Gilmore
President

*[signature]*

Jeffrey S. Robinson
Secretary

(This Policy is valid only when Schedules A and B are attached)

For Reference:

File #:

Issued By:

**The Judicial Title Insurance Agency, LLC**
800 Westchester Avenue
Rye Brook, NY 10573

This jacket was created electronically and constitutes an original document

**Policy #:**

## COVERED RISKS

The Covered Risks are:

1. Someone else owns an interest in Your Title.
2. Someone else has rights affecting Your Title arising out of leases, contracts, or options.
3. Someone else claims to have rights affecting Your Title arising out of forgery or impersonation.
4. Someone else has an easement on the Land.
5. Someone else has a right to limit Your use of the Land.
6. Your Title is defective.
7. Any of Covered Risks 1 through 6 occurring after the Policy Date.
8. Someone else has a lien on Your Title, including a:
   a: Mortgage;
   b: judgment, state or federal tax lien, or special assessment;
   c: charge by a homeowner's or condominium association; or
   d: lien, occurring before or after the Policy Date, for labor and material furnished before the Policy Date.
9. Someone else has an encumbrance on Your Title.
10. Someone else claims to have rights affecting Your Title arising out of fraud, duress, incompetency or incapacity.
11. You do not have both actual vehicular and pedestrian access to and from the Land, other than vehicular access to a condominium unit, based upon a legal right.
12. You are forced to correct or remove a violation existing at Policy Date of any covenant, condition or restriction affecting the Land, even if the covenant, condition or restriction is excepted in Schedule B, provided that such violation of the covenant, condition or restriction is not excepted in Schedule B.
13. Your Title is lost or taken because of a violation of any covenant, condition or restriction, which occurred before You acquired Your Title, even if the covenant, condition or restriction is excepted in Schedule B, provided that such violation of the covenant, condition or restriction is not excepted in Schedule B.
14. Because of a violation of a subdivision law or regulation existing at Policy Date affecting the Land:
   a. You are unable to obtain a building permit;
   b. You are forced to correct or remove the violation; or
   c. Someone else has a legal right to, and does, refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it.
   The amount of Your Insurance for this Covered Risk is subject to Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
15. The cost of the forced removal of Your structures, or any part of them, other than boundary walls or fences, as existing at Policy Date, because any portion was built without obtaining a building permit from the proper government office. The amount of Your Insurance for this Covered Risk is subject to Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
16. The cost of the forced removal of Your structures, or any part of them, other than boundary walls or fences, as existing at Policy

Date, because they violate an existing zoning law or zoning regulation. The amount of Your insurance for this Covered Risk is subject to Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

17. You cannot use the Land because use as a single-family residence violates a zoning law or zoning regulation existing at Policy Date.
18. You are forced to remove Your structures, or any part of them, as existing at Policy Date, because they encroach onto Your neighbor's land. If the encroaching structures are boundary walls or fences, the amount of Your insurance for this Covered Risk is subject to Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
19. Someone else has a legal right to, and does, refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it because Your neighbor's structures, or any part of them, as existing at Policy Date, encroach onto the Land.
20. You are forced to remove Your existing structures because they encroach onto an easement or over a building set-back line, even if the easement or building set-back line is excepted in Schedule B, provided that such encroachment is not excepted in Schedule B.
21. Your existing structures (or a replacement or modification made to them after the Policy Date), or any part of them, other than boundary walls or fences, are damaged because of the future exercise of a right to use the surface of the Land for the extraction or development of minerals, water or any other substance, even if those rights are excepted or reserved from the description of the Land or excepted in Schedule B.
22. Someone else tries to enforce a discriminatory covenant, condition or restriction that they claim affects Your Title which is based upon race, color, religion, sex, handicap, familial status, or national origin.
23. A taxing authority assesses supplemental real estate taxes not previously assessed against the Land for any period before the Policy Date because of construction or a change of ownership or use that occurred before the Policy Date.
24. Your neighbor builds any structures after the Policy Date, other than boundary walls or fences, which encroach onto the Land.
25. Your Title is unmarketable, which allows someone else to refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it.
26. A document upon which Your Title is based is invalid because it was not properly signed, sealed, acknowledged, delivered or recorded.
27. The residence with the address shown in Schedule A is not located on the Land at the Policy Date.
28. The survey map, if any, referred to in Schedule B of this Policy does not show the correct location of the Land according to the Public Records.

Policy #:

## EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorney's fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of any law or government regulation. This includes ordinances, laws and regulations concerning:
   a. building
   b. zoning
   c. land use
   d. improvements on the Land
   e. land subdivision
   f. environmental protection

   This Exclusion does not apply to violations or the enforcement of these matters if notice of the violation or enforcement appears in the Public Records at the Policy Date.

   This Exclusion does not limit the coverage described in Covered Risk 14, 15, 16, 17 or 23.

2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not apply to violations of building codes if notice of the violation appears in the Public Records at the Policy Date.

3. The right to take the Land by condemning it, unless:
   a. a notice of exercising the right appears in the Public Records at the Policy Date
   b. the taking happened before the Policy Date and is binding on You if You bought the Land without Knowing of the taking.

4. Risks:
   a. that are created, allowed, or agreed to by You, whether or not they appear in the Public Records;
   b. that are Known to You at the Policy Date, but not to Us, unless they appear in the Public Records at the Policy Date;
   c. that result in no loss to You; or
   d. that first occur after the Policy Date – this does not limit the coverage described in Covered Risk 7, 8.d, 21, 22, 23, or 24.

5. Failure to pay value for Your Title.

6. Lack of a right:
   a. to any Land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b. in streets, alleys, or waterways that touch the Land.

   This Exclusion does not limit the coverage described in Covered Risk 11 or 18.

7. Any claim which arises out of the transaction vesting in Your Title by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that is based upon:
   a. the transaction creating Your Title being deemed a fraudulent conveyance or a fraudulent transfer; or
   b. the transaction creating Your Title being deemed a preferential transfer except where the preferential transfer results from the failure:
      i. to timely record the deed to You; or
      ii. of the recording of the deed to You to be notice to a purchaser for value or a judgment or lien creditor.

## CONDITIONS

1. **DEFINITIONS:**
   **Easement** – the right of someone else to use the Land for a special purpose.
   **Known** – things about which You have actual knowledge. The words "Know" and "Knowing" have the same meaning as Known.
   **Land** – the land or condominium unit, and its interest in the common elements, described in paragraph 3 of Schedule A and any improvements on the land which are real property.
   **Mortgage** – a mortgage, deed of trust, trust deed or other security instrument.
   **Natural Person** – a human being, not a commercial or legal organization or entity. Natural Person includes a trustee of a Trust even if the trustee is not a human being.
   **Policy Date** – the date shown in Schedule A. If the recording date of the instruments creating the insured interest is later than the Policy Date, this policy shall also cover intervening liens or encumbrances, except real estate taxes, assessments, water charges and sewer rents.
   **Public Records** – records that give constructive notice of matters affecting Your Title, according to New York State law. With respect to Section 1.f. of the Exclusions, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the Land is located.
   **Title** – the ownership of the interest in the Land, as shown in Schedule A.

   **Trust** – a living trust established by a human being for estate planning.
   **We/Our/Us** – First American Title Insurance Company.
   **You/Your** – the insured named in Schedule A and also those identified in paragraph 2.b. of these Conditions.

2. **CONTINUATION OF COVERAGE:**
   a. This Policy protects You as long as You own Your Title or own a mortgage from anyone who buys Your Land or are liable for any title warranties You make. You cannot assign this Policy to anyone else.
   b. This Policy also insures:
      i. anyone who inherits Your Title because of Your death;
      ii. Your spouse who receives Your Title because of dissolution of Your marriage;
      iii. the trustee or successor trustee of a Trust to whom You transfer Your Title after the Policy Date; or
      iv. the beneficiaries of Your Trust upon Your death.
   c. We may assert against the insureds identified in paragraph 2.b. any rights and defenses that We have against any previous insured under this Policy.

3. **HOW TO MAKE A CLAIM**
   a. Prompt Notice Of Your Claim
      i. As soon as You Know, or could have known, of anything that might be covered by this Policy, You must notify Us promptly in writing.
      ii. Send Your notice to **First American Title Insurance Company, Attention: Claims National Intake Center, 1 First American Way, Santa Ana, California 92707.**

**Policy #:**

Please include the Title number and the Policy number shown in Schedule A and the county where the Land is located. Please enclose a copy of Your Policy, if available.

iii. If You do not give Us prompt notice, Your coverage will be reduced or ended, but only to the extent Your failure affects Our ability to resolve the claim or defend You.

b. Proof Of Your Loss

i. We may require You to give Us a written statement signed by You describing Your loss which includes:
   (a) the basis of Your claim;
   (b) the Covered Risks which resulted in Your loss;
   (c) the dollar amount of Your loss; and
   (d) the method You used to compute the amount of Your loss.

ii. We may require You to make available to Us records, checks, letters, contracts, insurance policies and other papers which relate to Your claim. We may make copies of these papers.

iii. We may require You to answer questions about Your claim under oath.

iv. If You fail or refuse to give Us a statement of loss, answer Our questions under oath, or make available to Us the papers We request, Your coverage will be reduced or ended, but only to the extent Your failure or refusal affects Our ability to resolve the claim or defend You.

4. **OUR CHOICES WHEN WE LEARN OF A CLAIM**

a. After We receive Your notice, or otherwise learn, of a claim that is covered by this Policy, Our choices include one or more the following:
   i. Pay the claim.
   ii. Negotiate a settlement.
   iii. Bring or defend a legal action related to the claim.
   iv. Pay You the amount required by this Policy.
   v. End the coverage of this Policy for the claim by paying You Your actual loss resulting from the Covered Risk, and those costs, attorney's fees and expenses incurred up to that time which We are obligated to pay.
   vi. End the coverage described in Covered Risk 14, 15, 16 or 18 by paying You the amount of Your insurance then in force for the particular Covered Risk, and those costs, attorney's fees and expenses incurred up to that time which We are obligated to pay.
   vii. End all coverage of this Policy by paying You the Policy Amount then in force and all those costs, attorney's fees and expenses incurred up to that time which We are obligated to pay.
   viii. Take other appropriate action.

b. When We choose the options in paragraphs 4.a. (v), (vi) or (vii), all Our obligations for the claim end, including Our obligation to defend, or continue to defend, any legal action.

c. Even if We do not think that the Policy covers the claim, We may choose one or more of the options above. By doing so, We do not give up any rights.

5. **HANDLING A CLAIM OR LEGAL ACTION**

a. You must cooperate with Us in handling any claim or legal action and give Us all relevant information.

**CONDITIONS (Continued)**

b. If You fail or refuse to cooperate with Us, Your coverage will be reduced or ended, but only to the extent Your failure or refusal affects Our ability to resolve the claim or defend You.

c. We are required to repay You only for those settlement costs, attorneys' fees and expenses that We approve in advance.

d. We have the right to choose the attorney when We bring or defend a legal action on Your behalf. We can appeal any decision to the highest level. We do not have to pay Your claim until the legal action is finally decided.

e. Whether or not We agree there is coverage, We can bring or defend a legal action, or take other appropriate action under this Policy. By doing so, We do not give up any rights.

6. **LIMITATION OF OUR LIABILITY**

a. After subtracting Your Deductible Amount if it applies, We will pay no more than the least of:
   i. Your actual loss;
   ii. Our Maximum Dollar Limit of Liability then in force for the particular Covered Risk, for claims covered only under Covered Risk 14, 15, 16 or 18; or
   iii. the Policy Amount then in force.

b. i. If We remove the cause of the claim with reasonable diligence after receiving notice of it, all Our obligations for the claim end, including any obligation for loss You had while We were removing the cause of the claim.
   ii. Regardless of 6.b. (i) above, if You cannot use the Land because of a claim covered by this Policy:
      (a) You may rent a reasonably equivalent substitute residence and We will repay You for the actual rent You pay, until the earlier of:
         (i) the cause of the claim is removed; or
         (ii) We pay You the amount required by this Policy. If Your claim is covered only under Covered Risk 14, 15, 16 or 18, that payment is the amount of Your insurance then in force for the particular Covered Risk.
      (b) We will pay reasonable costs You pay to relocate any personal property You have the right to remove from the Land, including transportation of that personal property for up to twenty-five (25) miles from the Land, and repair of any damage to that personal property because of the relocation. The amount We will pay You under this paragraph is limited to the value of the personal property before You relocate it.

c. All payments We make under this Policy reduce the Policy Amount, except for costs, attorney's fees and expenses. All payments we make for claims which are covered only under Covered Risk 14, 15, 16 or 18 also reduce Our Maximum Dollar Limit of Liability for the particular Covered Risk, except for costs, attorney's fees and expenses.

d. If We issue, or have issued, a Policy to the owner of a Mortgage on Your Title and We have not given You any coverage against the Mortgage, then:
   i. We have the right to pay any amount due You under this Policy to the owner of the Mortgage to reduce the amount of the Mortgage, and any amount paid shall be treated as a payment to You under this Policy, including under paragraph 4.a. of these Conditions;

Policy #:

ii.   Any amount paid to the owner of the Mortgage shall be subtracted from the Policy Amount of this Policy; and

iii.  If Your claim is covered only under Covered Risk 14, 15, 16 or 18, any amount paid to the owner of the Mortgage shall also be subtracted from Our Maximum Dollar Limit of Liability for the particular Covered Risk.

e.   We will pay any costs, attorney's fees and expenses which We are obligated to pay under this Policy.

f.   If You do anything to affect any right of recovery You may have against someone else, We can subtract from Our liability the amount by which You reduced the value of that right.

7.   **OUR DUTY TO DEFEND AGAINST LEGAL ACTIONS**

We will defend Your Title in any legal action only as to that part of the action which is based on a Covered Risk and which is not excepted or excluded from coverage in this Policy. We will pay the costs, attorney's fees, and expenses We incur in that defense. We will not pay for any part of the legal action which is not based on a Covered Risk or which is excepted or excluded from coverage in this Policy. We can end Our duty to defend Your Title under paragraph 4 of the Conditions.

8.   **TRANSFER OF YOUR RIGHTS TO US**

a.   When We settle Your claim, We have all the rights You have against any person or property related to the claim. You must transfer these rights to Us when We ask, and You must not do anything to affect these rights. You must let Us use Your name in enforcing these rights.

b.   We will not be liable to You if We do not pursue these rights or if We do not recover any amount that might be recoverable.

c.   We will pay any money We collect from enforcing these rights in the following order:

i.    to Us for the costs, attorney's fees and expenses We paid to enforce these rights;

ii.   to You for Your loss that You have not already collected;

iii.  to Us for any money We paid out under this Policy on account of Your claim; and

iv.   to You whatever is left.

d.   If You have rights under contracts (such as indemnities, guaranties, bonds or other policies of insurance) to recover all or part of Your loss, then We have all of those rights, even if those contracts provide that those obligated have all of Your rights under this Policy.

9.   **ENTIRE CONTRACT**

This Policy, with any endorsements, is the entire contract between You and Us. To determine the meaning of any part of this Policy, You must read the entire Policy. Any changes to this Policy must be agreed to in writing by Us. Any claim You make against Us must be made under this Policy and is subject to its terms.

10.  **INCREASED POLICY AMOUNT**

The Policy Amount will increase by ten percent (10%) of the Policy Amount shown in Schedule A each year for the first five years following the Policy Date shown in Schedule A, up to one hundred fifty percent (150%) of the Policy Amount shown in Schedule A. The increase each year will happen on the anniversary of the Policy Date shown in Schedule A.

11.  **SEVERABILITY**

If any part of this Policy is held to be legally unenforceable, both You and We can still enforce the rest of this Policy.

12.  **ARBITRATION**

a.   If permitted in the State of New York, You or We may demand arbitration.

b.   The arbitration shall be binding on both You and Us. The arbitration shall decide any matter in dispute between You and Us.

c.   The arbitration award may be entered as a judgment in the proper court.

d.   The arbitration shall be under the Title Insurance Arbitration Rules of the American Arbitration Association. You may choose current Rules or Rules in existence on the Policy Date.

e.   The law used in the arbitration is the law of the State of New York.

f.   You can get a copy of the Rules from Us.



Exhibit 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JENIECE ILKOWITZ and ADAM ILKOWITZ,

                         Plaintiffs.

-against-

MICHAEL DURAND, MARLENE ZARFES a/k/a
MARLENE DURAND, ALAN C. PILLA, HOULIHAN
LAWRENCE, INC., JANE H. CARMODY, THE
JUDICIAL TITLE INSURANCE AGENCY LLC and
ECONO HOME INSPECTIONS LLC,

                         Defendants.
------------------------------------------------------------------X

Civil Action No.: 1:17-CV-773

**AMENDED ANSWER TO
PLAINTIFFS' COMPLAINT**

The defendants, **MICHAEL DURAND and MARLENE ZARFES a/k/a MARLENE DURAND**, by their attorneys, **McGIVNEY & KLUGER, P.C.**, answering the plaintiffs' Complaint, upon information and belief, allege as follows:

## NATURE OF ACTION

      FIRST:   Deny each and every allegation contained in paragraph numbered "1" of plaintiffs' Complaint.

## JURISDICTION AND VENUE

      SECOND: Deny each and every allegation contained in paragraphs numbered "2" through "4" of plaintiffs' Complaint.

## PARTIES

      THIRD:   Deny each and every allegation contained in paragraph numbered "5" of plaintiffs' Complaint.

      FOURTH:  Admit the allegations contained in paragraph numbered "6" of plaintiffs' Complaint.

FIFTH:     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs numbered "7" through "11" of plaintiffs' Complaint.

## FACTS

SIXTH:     Deny each and every allegation contained in paragraphs "12," "13," "15," "17" and "20" of plaintiff's Complaint, and refer all questions of law to this Honorable Court at the time of trial.

SEVENTH:     Deny the allegations contained in paragraphs numbered "14," "18," "19" and "21" of plaintiffs' Complaint.

EIGHTH:     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "16" of plaintiffs' Complaint.

### AS AND FOR A RESPONSE TO THE FIRST CAUSE
### OF ACTION (Violation of 42 U.S.C. § 4852(d))
### (Durand Defendants, Alan C. Pilla, Houlihan Lawrence, Inc. and Jane H. Carmody)

NINTH:     The answering defendants repeat, reiterate and re-allege each and every prior response to paragraphs numbered "1" through "21" of the Complaint by way of their response to paragraph numbered "22" with the same force and effect as if set forth more fully herein.

TENTH:     Deny the allegations contained in paragraphs numbered "23," "26," "27" and "28" of plaintiffs' Complaint, and refer all questions of law to this Honorable Court at the time of trial.

ELEVENTH:     Deny the allegations contained in paragraphs numbered "24," "25," "29," "30," "31," "32," "33," "34" and "35" of plaintiffs' Complaint.

### AS AND FOR A RESPONSE TO THE SECOND CAUSE
### OF ACTION (Negligent Misrepresentation or Concealment)
### (Durand Defendants, Alan C. Pilla, Houlihan Lawrence, Inc. and Jane H. Carmody)

TWELFTH:     The answering defendants repeat, reiterate and re-allege each and every prior response to paragraphs numbered "1" through "35" of plaintiffs' Complaint by way of their

-2-

response to paragraph numbered "36" with the same force and effect as if set forth more fully herein.

THIRTEENTH:   Deny the allegations contained in paragraphs numbered "37," "38," "39," "40," "41," "42," "43," "44," "45" and "46" of plaintiffs' Complaint.

### AS AND FOR A RESPONSE TO THE THIRD CAUSE
### OF ACTION (Fraudulent Misrepresentation, Concealment and Inducement)
### (Durand Defendants, Alan C. Pilla, Houlihan Lawrence, Inc. and Jane H. Carmody)

FOURTEENTH:   The answering defendants repeat, reiterate and re-allege each and every prior response to paragraphs numbered "1" through "46" of the plaintiffs' Complaint by way of their response to paragraph numbered "47" with the same force and effect as if set forth more fully herein.

FIFTEENTH:   Deny the allegations contained in paragraphs numbered "48," "49," "50," "51," "52," "53" and "54" of plaintiffs' Complaint.

### AS AND FOR A RESPONSE TO THE FOURTH
### CAUSE OF ACTION (Breach of Contract) (Durand Defendants)

SIXTEENTH:   The answering defendants repeat, reiterate and re-allege each and every prior response to paragraphs numbered "1" through "54" of the plaintiffs' Complaint by way of their response to paragraph numbered "55" with the same force and effect as if set forth more fully herein.

SEVENTEENTH: Deny the allegations contained in paragraphs numbered "56" and "57" of plaintiffs' Complaint, and refer all questions of law to this Honorable Court at the time of trial.

EIGHTEENTH:   Deny the allegations contained in paragraphs numbered "58," "59," "60" and "61" of plaintiffs' Complaint.

{N0586919-1}

## AS AND FOR A RESPONSE TO THE
## FIFTH CAUSE OF ACTION (Negligence) (All Defendants)

NINETEENTH: The answering defendants repeat, reiterate and re-allege each and every prior response to paragraphs numbered "1" through "61" of the plaintiffs' Complaint by way of their response to paragraph numbered "62" with the same force and effect as if set forth more fully herein.

TWENTIETH: Deny the allegations contained in paragraphs numbered "63," "64," "65," "66" and "67" of plaintiffs' Complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

TWENTY-FIRST: If the plaintiffs sustained or suffered damages as alleged in the Verified Complaint, which these answering defendants expressly deny, such damages were caused in whole or in part by the plaintiffs' negligence or other culpable conduct, or the plaintiffs' assumption of risk, and, to the extent of their culpability, the plaintiffs are barred from recovery or, alternatively, shall have the damages reduced in the proportion that the plaintiffs' culpable conduct bears to all conduct causing or contributing to said damages.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

TWENTY-SECOND: If the plaintiffs sustained or suffered damages as alleged in the Complaint, which these answering defendants expressly deny, such damages were suffered and sustained by reason of the negligence or other culpable conduct of persons or entities over whom these answering defendants exercised no control or supervision, and not by reason of any negligent or culpable conduct of these answering defendants.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

TWENTY-THIRD: Since these answering defendants had no notice of the alleged defective or dangerous condition, they are not liable to the plaintiffs.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

TWENTY-FOURTH:  The plaintiffs' recovery, if any, shall be reduced by the amount of any collateral payments received in accordance with CPLR 4545.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

TWENTY-FIFTH:  The plaintiffs' recovery, if any, shall be reduced and/or subject to equitable apportionment under CPLR Article 16.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

TWENTY-SIXTH:  Any risks, dangers or hazards in existence at the time and place mentioned in the Complaint were open, obvious, and apparent and were known to and assumed by the plaintiffs.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

TWENTY-SEVENTH:  Upon information and belief, these answering defendants complied with the terms and conditions of all contracts and agreements.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

TWENTY-EIGHTH:  The plaintiffs failed to comply with the terms and conditions of all contracts and agreements.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

TWENTY-NINTH:  Upon information and belief, the plaintiffs are barred from recovery in this action by doctrine of laches.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

THIRTIETH:  Upon information and belief, the plaintiffs are barred from recovery in this action by doctrine of waiver.

{N0586919-1}

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

THIRTY-FIRST:    Upon information and belief, the plaintiffs failed to mitigate their damages.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

THIRTY-SECOND:  Upon information and belief, there is no cognizable causation between the damages claimed by the plaintiffs, and any act or omission by the answering defendants.

## AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

THIRTY-THIRD:   The claim for common law or implied indemnification of the plaintiffs is barred due to the lack of privity, or duty owed, between these answering defendants and such unidentified person who commenced lawsuits against the plaintiffs.

## LIABILITY

### AS AND FOR A CROSS-CLAIM AGAINST CO-DEFENDANTS ALAN C. PILLA, HOULIHAN LAWRENCE, INC., JANE H. CARMODY, THE JUDICIAL TITLE INSURANCE AGENCY LLC and ECONO HOME INSPECTIONS LLC

Although the defendants, **MICHAEL DURAND and MARLENE ZARFES a/k/a MARLENE DURAND,** have denied the allegations of the plaintiffs with respect to any alleged wrongdoing on the part of the defendants, **MICHAEL DURAND and MARLENE ZARFES a/k/a MARLENE DURAND,** nevertheless, if it is found that the defendants, **MICHAEL DURAND and MARLENE ZARFES a/k/a MARLENE DURAND.** are liable to the plaintiffs herein, all of which is denied, said defendants, on the basis of apportionment of responsibility for the alleged occurrence, are entitled to contribution from any judgment over and against co-defendants, **ALAN C. PILLA, HOULIHAN LAWRENCE, INC., JANE H. CARMODY, THE JUDICIAL TITLE INSURANCE AGENCY LLC and ECONO HOME**

-6-

**INSPECTIONS LLC**, for all or part of any verdict or judgment the plaintiffs may recover against these defendants.

<u>**CONTRACTUAL**</u>

**AS AND FOR A CROSS-CLAIM FOR CONTRACTUAL
INDEMNITY AGAINST CO-DEFENDANTS, ALAN C. PILLA,
HOULIHAN LAWRENCE, INC., JANE H. CARMODY, THE JUDICIAL
<u>TITLE INSURANCE AGENCY LLC and ECONO HOME INSPECTIONS LLC</u>**

At the time of the accident alleged in the Verified Complaint, a contract was in effect between these answering defendants, **MICHAEL DURAND and MARLENE ZARFES a/k/a MARLENE DURAN** and co-defendants, **ALAN C. PILLA, HOULIHAN LAWRENCE, INC., JANE H. CARMODY, THE JUDICIAL TITLE INSURANCE AGENCY LLC and ECONO HOME INSPECTIONS LLC.**

The contract required that co-defendants, **ALAN C. PILLA, HOULIHAN LAWRENCE, INC., JANE H. CARMODY, THE JUDICIAL TITLE INSURANCE AGENCY LLC and ECONO HOME INSPECTIONS LLC,** indemnify and/or hold harmless these answering defendants for all claims, losses, liability and damages for any injury to any person.

FIRST:    Co-defendants, **ALAN C. PILLA, HOULIHAN LAWRENCE, INC., JANE H. CARMODY, THE JUDICIAL TITLE INSURANCE AGENCY LLC and ECONO HOME INSPECTIONS LLC,** breached the contract and are obligated to indemnify these answering defendants for any judgment or settlement obtained by any plaintiff in this action, including defense costs and attorneys' fees.

WHEREFORE, the defendants, **MICHAEL DURAND and MARLENE ZARFES a/k/a MARLENE DURAN**, respectfully request judgment dismissing the Verified Complaint and granting the cross-claims for liability and contractual indemnity, together with the costs and

-7-

disbursements of this action, and for such other and further relief as this Court may deem just and proper.

Dated: New York, New York
February _____, 2017

Yours etc.,
**McGIVNEY & KLUGER, P.C.**

By: _____
Richard Leff, Esq.
Attorneys for Defendants
**MICHAEL DURAND and MARLENE
ZARFES a/k/a MARLENE DURAN**
80 Broad Street, 23rd Floor
New York, New York 10004
(212) 509-3456
File No.: 4146G-0001

TO:   **MESSNER REEVES LLP**
Benjamin S. Lowenthal, Esq.
Attorneys for Plaintiffs
**JENIECE ILKOWITZ and ADAM ILKOWITZ**
805 Third Avenue - 18th Floor
New York, New York 10022
(646) 663-1860

**ALAN C. PILLA, ESQ.**
Defendant
107 Lake Avenue
Tuckahoe, New York 10707

**HOULIHAN LAWRENCE REAL ESTATE**
Defendant
c/o CT Corporation System
111 Eighth Avenue
New York, New York 10011

**THE JUDICIAL TITLE
INSURANCE AGENCY, LLC**
Defendant
800 Westchester Avenue - Suite 340
Rye Brook, New York 10573

{N0586919-1}



Exhibit 8

Gardephe, P

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/25/17

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JENIECE ILKOWITZ and ADAM ILKOWITZ,

Plaintiffs,

-against-

MICHAEL DURAND, MARLENE ZARFES a/k/a MARLENE
DURAND, ALAN C. PILLA, HOULIHAN LAWRENCE, INC.,
JANE H. CARMODY, THE JUDICIAL TITLE INSURANCE
AGENCY LLC, and ENCO HOME INSPECTIONS LLC,

Defendants.

Civil Action No.
~~3:17-cv-00056-VAB~~

1: 17- cv- 00773- PGG

**STIPULATION**
**DISCONTINUING**
**CROSS-CLAIM**
**WITH PREJUDICE**

**IT IS HEREBY STIPULATED AND AGREED**, by and between Defendants Michael

Durand and Marlene Zarfes a/k/a Marlene Durand (the "Durand Defendants"), and Defendant

The Judicial Title Insurance Agency LLC ("Judicial Title"), by their undersigned counsel, that

the Durand Defendants' contractual cross-claim against Judicial Title is hereby discontinued,

with prejudice and without costs to any party, and this stipulation may be filed with the Clerk of

the Court without further notice.

Dated: New York, New York
April 11, 2017

ADAM LEITMAN BAILEY, P.C.
*Counsel for Defendant Judicial Title*

By: Adam Leitman Bailey, Esq.
Scott J. Pashman, Esq.
120 Broadway, 17th Floor
New York, NY 10271
(212) 825-0365

MCGIVNEY & KLUGER, P.C.
*Counsel for the Durand Defendants*

By: Richard Leff
80 Broad Street, 23rd Floor
New York, New Yok 10004
(212) 509-3456

The Clerk of Court is directed not to close this case.

SO ORDERED:

Paul G. Gardephe, U.S.D.J.
Dated: April 25, 2017 nyc

Exhibit 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JENIECE ILKOWITZ and ADAM ILKOWITZ

                Plaintiffs,

       -against-

MICHAEL DURAND, MARLENE ZARFES a/k/a
MARLENE DURAND, ALAN C. PILLA, HOULIHAN
LAWRENCE, INC., JANE H. CARMODY, THE
JUDICIAL TITLE INSURANCE AGENCY LLC, and
ENCO HOME INSPECTIONS, LLC.

                Defendants.
-----------------------------------------------------------------------X

**ECF CASE**

Civ. No.: 1:17-cv-773 (PGG)

**ANSWER**

      Defendant, HOULIHAN/LAWRENCE INC. ("Houlihan") and JANE CARMODY

("Carmody") (collectively, the "Answering Defendants"), as and for its Answer to the complaint

of the Plaintiffs, alleges as follows, upon information and belief:

<div align="center">AS TO NATURE OF THE ACTION</div>

      1.    The allegations in Paragraph "1" of the Complaint do not state any factual

contentions and, as such, require neither an admission nor a denial. To the extent that Paragraph

1 implies any factual allegations regarding the conduct of Houlihan or Carmody, the Answering

Defendants deny such factual allegations as to Houlihan and Carmody, deny information and

knowledge sufficient to form a belief regarding the conduct of the other defendants, and

otherwise respectfully refers all questions of law to this Honorable Court.

<div align="center">AS TO JURISDICTION AND VENUE</div>

      2.    The Answering Defendants denys the allegations in Paragraph "2" of the

Complaint, in the form alleged, insofar as the Answering Defendants deny violating the statute

identified, but the Answering Defendants admit that this Court has jurisdiction over the

allegations in Plaintiffs' Complaint.

3.     The Answering Defendants admit the allegations contained in Paragraph 3 of the Complaint.

4.     The Answering Defendants admit the allegations contained in Paragraph 4 of the Complaint.

<u>AS TO THE PARTIES</u>

5.     The Answering Defendants deny knowledge and information sufficient to form a belief as to the allegations contained in Paragraph "5" of the Complaint.

6.     The Answering Defendant deny knowledge and information sufficient to form a belief as to the allegations contained in Paragraph "6" of the Complaint.

7.     The Answering Defendant deny the allegations in Paragraph "7" of the Complaint, in the form alleged, except Houlihan admits that it is a New York corporation that maintains its principal place of business in the State of New York, and respectfully refers all questions of law to this Honorable Court.

8.     The Answering Defendant denies the allegations in Paragraph "8" of the Complaint, in the form alleged, except the Answering Defendants admit that Carmody was a licensed real estate agent, and respectfully refers all questions of law to this Honorable Court.

9.     The Answering Defendants deny knowledge and information sufficient to form a belief as to the allegations contained in Paragraph "9" of the Complaint.

10.     The Answering Defendants deny knowledge and information sufficient to form a belief as to the allegations contained in Paragraph "10" of the Complaint.

11.     The Answering Defendants deny knowledge and information sufficient to form a belief as to the allegations contained in Paragraph "11" of the Complaint.

<u>AS TO THE ALLEGED "FACTS"</u>

12.     The Answering Defendants deny knowledge and information sufficient to form a belief as to the allegations contained in Paragraph "12" of the Complaint, begs leave to refer to the documents referred to within Paragraph 12 for their contents, terms and conditions and otherwise refers all questions of law to this Honorable Court.

13.     The Answering Defendants deny knowledge and information sufficient to form a belief as to the allegations contained in Paragraph "13" of the Complaint, begs leave to refer to the documents referred to within Paragraph 13 for their actual contents, terms and conditions and otherwise refers all questions of law to this Honorable Court.

14.     The Answering Defendants deny the allegations contained in Paragraph "14" of the Complaint.

15.     The Answering Defendants deny knowledge and information sufficient to form a belief regarding the allegations contained in Paragraph "15" of the Complaint.

16.     The Answering Defendants deny the allegations contained in Paragraph "16" of the Complaint.

17.     The Answering Defendants deny knowledge and information to form a belief as to the allegations contained in Paragraph "17" of the Complaint.

18.     The Answering Defendants deny the allegations contained in Paragraph "18" of the Complaint insofar as they purport to relate to the conduct of the Answering Defendants, and deny sufficient knowledge and information to form a belief as to the remainder of the allegations.

19.     The Answering Defendants deny the allegations contained in Paragraph "19" of the Complaint.

20.     The Answering Defendants deny knowledge and information sufficient to form a belief as to the allegations contained in Paragraph "20" of the Complaint.

21.     The Answering Defendants deny knowledge and information sufficient to form a belief as to the allegations contained in Paragraph "21" of the Complaint.

### AS TO THE FIRST CAUSE OF ACTION

22.     As to the allegations contained in Paragraph "22" of the Complaint, the Answering Defendants repeat and reallege the responses made in the foregoing paragraphs "1" through "21" as though set forth in their entirety herein.

23.     The Answering Defendants deny knowledge and information sufficient to form a belief as to the allegations contained in Paragraph "23" of the Complaint and refers all questions of law to this Honorable Court.

24.     The Answering Defendants deny knowledge and information sufficient to form a belief as to the allegations contained in Paragraph "24" of the Complaint and refers all questions of law to this Honorable Court.

25.     The Answering Defendants deny the allegations contained in Paragraph "25" of the Complaint, in the form alleged, except the Answering Defendants admit Houlihan was the listing broker for the premises and that Carmody acted as an associate real estate agent in connection with the sale transaction; the Answering Defendants deny the remainder of the allegations and respectfully refer all questions of law to this Honorable Court.

26.     The Answering Defendants deny the allegations contained in Paragraph "26" of the Complaint, in the form alleged, except the Answering Defendants admit Houlihan was the listing broker for the premises and that Carmody acted as an associate real estate agent in connection with the sale transaction and that the Answering Defendants satisfied all obligations

in connection therewith; the Answering Defendants deny the remainder of the allegations and respectfully refer all questions of law to this Honorable Court.

27. The Answering Defendants deny the allegations contained in Paragraph "27" of the Complaint, in the form alleged, except the Answering Defendants admit Houlihan was the listing broker for the premises and that Carmody acted as an associate real estate agent in connection with the transaction, that they satisfied all obligations in connection therewith; the Answering Defendants deny the remainder of the allegations and respectfully refer all questions of law to this Honorable Court.

28. The allegations in contained in Paragraph "28" of the Complaint are conclusions of law and require neither an admission or a denial; to the extent that any factual allegation exists by implication, the Answering Defendants deny the allegations as to the Answering Defendants, deny knowledge or information so as to form a belief as to the allegations against the other defendants in the action and respectfully refers all questions of law to the Honorable Court.

29. The Answering Defendants deny the allegations contained in Paragraph "29" of the Complaint.

30. The Answering Defendants deny the allegations contained in Paragraph "30" of the Complaint, and respectfully refer all questions of law to this Honorable Court.

31. The Answering Defendants deny the allegations contained in Paragraph "31" of the Complaint, an respectfully refer all questions of law to this Honorable Court.

32. The Answering Defendants deny the allegations contained in Paragraph "32" of the Complaint, an respectfully refer all questions of law to this Honorable Court.

33. The Answering Defendants deny the allegations contained in Paragraph "33" of the Complaint, an respectfully refer all questions of law to this Honorable Court.

34.     The Answering Defendants deny the allegations contained in Paragraph "34" of the Complaint, an respectfully refer all questions of law to this Honorable Court.

35.     The Answering Defendants deny the allegations contained in Paragraph "35" of the Complaint, an respectfully refer all questions of law to this Honorable Court.

<div align="center">AS TO THE SECOND CAUSE OF ACTION</div>

36.     As to the allegations contained in Paragraph "36" of the Complaint, the Answering Defendants repeat and reallege the responses made in foregoing paragraphs "1" through "35" as though set forth herein in their entirety.

37.     The Answering Defendants deny the allegations alleged in Paragraph "37" of the Complaint as against the Answering Defendants, deny information and knowledge to form a belief as against the remaining defendants, and respectfully refers all questions of law to this Honorable Court.

38.     The Answering Defendants deny the allegations alleged in Paragraph "38" of the Complaint insofar as they are asserted against the Answering Defendants, deny information and knowledge sufficient to form a belief as against the remaining defendants, and respectfully refers all questions of law to this Honorable Court.

39.     The Answering Defendants deny the allegations alleged in Paragraph "39" of the Complaint insofar as they are asserted against the Answering Defendants, deny information and knowledge sufficient to form a belief as against the remaining defendants, and respectfully refers all questions of law to this Honorable Court.

40.     The Answering Defendants deny the allegations alleged in Paragraph "40" of the Complaint as against the Answering Defendants, deny information and knowledge to form a belief as against the remaining defendants, and respectfully refers all questions of law to this

Honorable Court.

41.     The Answering Defendants deny the allegations alleged in Paragraph "41" of the Complaint as against the Answering Defendants, deny information and knowledge to form a belief as against the remaining defendants, and respectfully refers all questions of law to this Honorable Court.

42.     The Answering Defendants deny the allegations alleged in Paragraph "42" of the Complaint as against the Answering Defendants, deny information and knowledge to form a belief as against the remaining defendants, and respectfully refers all questions of law to this Honorable Court.

43.     The Answering Defendants deny the allegations alleged in Paragraph "43" of the Complaint as against the Answering Defendants, deny information and knowledge to form a belief as against the remaining defendants, and respectfully refers all questions of law to this Honorable Court.

44.     The Answering Defendants deny the allegations alleged in Paragraph "44" of the Complaint as against the Answering Defendants, deny information and knowledge to form a belief as against the remaining defendants, and respectfully refers all questions of law to this Honorable Court.

45.     The Answering Defendants deny the allegations alleged in Paragraph "45" of the Complaint as against the Answering Defendants, deny information and knowledge to form a belief as against the remaining defendants, and respectfully refers all questions of law to this Honorable Court.

46.     The Answering Defendants deny the allegations contained in Paragraph "46" of the Complaint.

7

<u>AS TO THE THIRD CAUSE OF ACTION</u>

47.     As to the allegations contained in Paragraph "47" of the Complaint, the Answering Defendants repeat and reallege the responses made in foregoing paragraphs "1" through "46" as though set forth herein in their entirety.

48.     The Answering Defendants deny the allegations contained in Paragraph "48" of the Complaint.

49.     The Answering Defendants deny the allegations alleged in Paragraph "49" of the Complaint as against the Answering Defendants, deny information and knowledge to form a belief as against the remaining defendants, and respectfully refers all questions of law to this Honorable Court.

50.     The Answering Defendants deny the allegations alleged in Paragraph "50" of the Complaint as against the Answering Defendants, deny information and knowledge to form a belief as against the remaining defendants, and respectfully refers all questions of law to this Honorable Court.

51.     The Answering Defendants deny the allegations alleged in Paragraph "51" of the Complaint as against the Answering Defendants, deny information and knowledge to form a belief as against the remaining defendants, and respectfully refers all questions of law to this Honorable Court.

52.     The Answering Defendants deny the allegations alleged in Paragraph "52" of the Complaint as against the Answering Defendants, deny information and knowledge to form a belief as against the remaining defendants, and respectfully refers all questions of law to this Honorable Court.

53.     The Answering Defendants deny the allegations alleged in Paragraph "53" of the Complaint as against the Answering Defendants, deny information and knowledge to form a belief as against the remaining defendants, and respectfully refers all questions of law to this Honorable Court.

54.     The Answering Defendants deny the allegations contained in Paragraph "54" of the Complaint.

<u>AS TO THE FOURTH CAUSE OF ACTION</u>

55.     As to the allegations contained in Paragraph "55" of the Complaint, the Answering Defendants repeat and reallege the responses made in foregoing paragraphs "1" through "54" as though set forth herein in their entirety.

56.     The Answering Defendants deny knowledge and information sufficient to form a belief as to the allegations contained in Paragraph "56" of the Complaint.

57.     Answering Defendants deny knowledge and information sufficient to form a belief as to the allegations contained in Paragraph "57" of the Complaint.

58.     Answering Defendants deny knowledge and information sufficient to form a belief as to the allegations contained in Paragraph "58" of the Complaint.

59.     Answering Defendants deny knowledge and information sufficient to form a belief as to the allegations contained in Paragraph "59" of the Complaint.

60.     Answering Defendants deny knowledge and information sufficient to form a belief as to the allegations contained in Paragraph "60" of the Complaint.

61.     Answering Defendants deny the allegations contained in Paragraph "61" of the Complaint.

## AS TO THE FIFTH CAUSE OF ACTION

62.     As to the allegations contained in Paragraph "62" of the Complaint, the Answering Defendants repeat and reallege the responses made in foregoing paragraphs "1" through "61" as though set forth herein in their entirety.

63.     The Answering Defendants deny the allegations alleged in Paragraph "63" of the Complaint as against the Answering Defendants, deny information and knowledge to form a belief as against the remaining defendants, and respectfully refers all questions of law to this Honorable Court.

64.     The Answering Defendants deny the allegations alleged in Paragraph "64" of the Complaint as against the Answering Defendants, deny information and knowledge to form a belief as against the remaining defendants, and respectfully refers all questions of law to this Honorable Court.

65.     The Answering Defendants deny the allegations alleged in Paragraph "65" of the Complaint as against the Answering Defendants, deny information and knowledge to form a belief as against the remaining defendants, and respectfully refers all questions of law to this Honorable Court.

66.     The Answering Defendants deny the allegations alleged in Paragraph "66" of the Complaint as against the Answering Defendants, deny information and knowledge to form a belief as against the remaining defendants, and respectfully refers all questions of law to this Honorable Court.

67.     The Answering Defendants deny the allegations alleged in Paragraph "67" of the Complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

68.     The Complaint fails to state a claim upon which relief can be granted against the Answering Defendants.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

69.     That the damages alleged to have been sustained by Plaintiff, if any, were caused wholly or in part by their own culpable conduct, and said damages should be diminished in the proportion which the culpable conduct attributable to Plaintiffs bears to the total culpable conduct causing or contributing to said damages.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

70.     That if Plaintiffs sustained any damages as alleged, said damages were caused by the culpable conduct of parties over whom these Answering Defendants had no control.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

71.     To the extent that the Plaintiffs sustained damages, which the Answering Defendants do not admit and specifically deny, the Plaintiffs have failed to mitigate their damages, if any.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

72.     That Plaintiffs' claims are barred, in whole or in part, by virtue of unclean hands.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

73.     That Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver and/or estoppel.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

74.     In the event there is or has been a release, covenant not to sue, or settlement with any party or non-party, then, in such event, the Answering Defendants are entitled to an offset

thereon and remedies in connection therewith pursuant to N.Y. G.O.L. Sec. 15-108.

<div align="center">AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE</div>

75.     At all times relevant herein, the Answering Defendants acted lawfully and satisfied all obligations required under both common law and statute.

<div align="center">AS AND FOR A CROSS CLAIM AGAINST<br>MICHEL DRUAND, MARLENE ZARFES, ALAN C. PILLA, THE JUDICIAL TITLE<br>INSURANCE AGENCY LLC and ENCO HOME INSPECTIONS</div>

76.     If the Plaintiffs are determined to have sustained damages as alleged in the Complaint, such damages were sustained through the negligence of the defendants or through the negligence of Plaintiffs themselves, without any negligence on the part of the Answering Defendants.

77.     If the Answering Defendants are found liable to the Plaintiff for all or any portion of the damages allegedly sustained, the portion of any such damages for which the Answering Defendants may be found liable will have been caused or contributed by reason of the negligence and/or culpable conduct of the co-defendants, and the Answering Defendants will be entitled to common law contribution and/or indemnification from the co-defendants for the Plaintiff's damages.

**WHEREFORE**, the Answering Defendants demand judgment dismissing the Plaintiffs' complaint in its entirety as to Houlihan and Carmody, or in the event that the Plaintiffs recover any sum of money against Houlihan or Carmody, then Houlihan and Carmody demand judgment over and against the co-defendants as to any such amount; together with such other and further relief as this Court may deem just and proper.

Dated: Scarsdale, New York
       April 17, 2017

                                                    Yours, etc.,


                                                    _____/s/ Jeffrey Briem_____
                                                    Jeffrey Briem, Esq. (JB-0113)
                                                    Jones Morrison, LLP.
                                                    670 White Plains Road
                                                    Scarsdale, New York 10583
                                                    (914) 472-2300
                                                    Attorneys for Defendants
                                                    *Houlihan/Lawrence, Inc. and Jane Carmody*

TO:

MESSNER REEVES LLP
805 Third Ave., 18th Fl.
New York, New York 10022
Attn: Jean Claude Mazzola
*Attorneys for Plaintiffs*

McGIVNEY & KLUGER
80 Broad Street
New York, NY 10004
Attn: Richard Leff
*Attorneys for Durand Defendants*

ADAM LEITMAN BAILEY, P.C.
120 Broadway
New York, New York 10271
Attn: Scott Pashman
*Attorneys for Defendant Pilla*

ABRAMS GARFINKEL MARGOLIS
BERGSON, LLP
1430 Broadway, 17th Floor
New York, New York 10018
Attn: Robert Bergson
*Attorneys for Judicial Title*

SIVE, PAGEY & RIESEL, P.C.
560 Lexington Ave., 15th Floor
New York, New York 10022
Attn: Katherine Ghilain
*Attorneys for Defendant ENCO*