UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JENIECE ILKOWITZ and ADAM ILKOWITZ,

                Plaintiffs,

    - against -

MICHAEL DURAND, MARLENE ZARFES a/k/a MARLENE DURAND, ALAN C. PILLA, HOULIHAN LAWRENCE, INC., JANE H. CARMODY, THE JUDICIAL TITLE INSURANCE AGENCY LLC, and ENCO HOME INSPECTIONS LLC.,

                Defendants.

**ORDER**

17 Civ. 773 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

        In a March 27, 2018 order, this Court granted Defendant The Judicial Title Insurance Agency LLC's motion for summary judgment, and its motion for sanctions against Plaintiffs' attorney Jean-Claude Mazzola pursuant to Rule 11 of the Federal Rules of Civil Procedure.[1] (See Order (Dkt. No. 113)) Judicial Title seeks $56,857.57 in attorneys' fees and costs resulting from Mazzola's Rule 11 violation.[2] (See Pashman Decl. (Dkt. No. 114) at ¶ 4) Plaintiffs argue that Judicial Title's attorneys' billing rates and time charges are excessive, and that this Court should approve only $14,182.50 in attorneys' fees and $154.11 in costs. (Pltf. Br. (Dkt. No. 119) at 23)[3]

---

[1] Familiarity with the Court's March 27, 2018 Order (Dkt. No. 113) is assumed.
[2] Judicial Title's costs total $439.54. (Pashman Decl. (Dkt. No. 114) ¶¶ 52, 61; Pashman Decl. (Dkt. No. 114-2) at 1)
[3] Citations to page numbers of docketed materials correspond to the pagination generated by this District's Electronic Case Filing ("ECF") system.

For the reasons stated below, this Court will award Judicial Title $28,428.79 in attorneys' fees and costs.

## BACKGROUND

In a February 1, 2017 complaint, Plaintiffs Jeniece Ilkowitz and Adam Ilkowitz asserted claims against Defendants Michael and Marlene Durand, Adam Pilla, Houlihan Lawrence, Inc., Jane Carmody, Judicial Title, and ENCO Home Inspections LLC arising out of the Durands' sale of a residence in Pelham, New York (the "Property") to Plaintiffs on March 9, 2015. (Cmplt. (Dkt. No. 1) ¶ 12) The Complaint alleges (1) violations of the Residential Lead-Based Hazard Reduction Act, 42 U.S.C. §§ 4851 et seq. (the "Lead Paint Act"); (2) negligent misrepresentation or concealment; (3) fraud; (4) breach of contract; and (5) negligence. (Cmplt. (Dkt. No. 1) ¶¶ 1, 22-67) As to Judicial Title, however, Plaintiff's only cause of action was negligence. (Id. ¶¶ 62-67)

Plaintiff' theory of liability as to Judicial Title was that it should have discovered the presence of lead-based paint hazards in the Property, and disclosed those hazards to Plaintiffs. (Id.; Pltf. Br. (Dkt. No. 90) at 13-15)

In response to the Complaint, the Durands, Houlihan Lawrence, and Carmody filed cross-claims against each other and against, Pilla, Judicial Title, and ENCO. (See Answer (Dkt. No. 29) at 6-8; Answer (Dkt. No. 59) ¶¶ 76-77) As of June 1, 2017, when Judicial Title moved for summary judgment, only two claims remained against Judicial Title: Plaintiff's negligence claim and the Durands' cross-claim for contribution. (See Judicial Title Mot. (Dkt. No. 75))

On October 30, 2017, Judicial Title moved for sanctions pursuant to Fed. R. Civ. P. 11 against Plaintiffs and/or their attorney Jean-Claude Mazzola. Judicial Title argued that

Plaintiffs' negligence claim against Judicial Title was frivolous. (Judicial Title Mot. (Dkt. No. 102))

On March 27, 2018, this Court granted Judicial Title summary judgment on Plaintiff's negligence claim and the Durands' cross-claim for contribution. (March 27, 2018 Order (Dkt. No. 113)) The Court also granted Judicial Title's motion for sanctions against Mazzola. (Id.)

As discussed at length in the March 27, 2018 Order, Plaintiff's negligence claim against Judicial Title was baseless. Under well-settled New York law, Judicial Title's liability was limited to defects in title. But Plaintiffs had never alleged a defect in title; instead, they claimed that Judicial Title should have warned them that the house they were about to purchase contained lead paint. Judicial Title took on no such duty. Accordingly, Judicial Title was entitled to summary judgment on Plaintiff's negligence claim. (Id. at 30-36)

As to Judicial Title's sanctions motion, the Court first summarized the law governing Rule 11 sanctions (see id. at 37-39), and then made the following findings concerning Plaintiffs' and Mazzola's liability:

> [T]here is no dispute that Judicial Title has complied with Rule 11's safe harbor provision. In a March 13, 2017 letter, Judicial Title notified Plaintiffs that their negligence claim against Judicial Title was frivolous because (1) the certificate of title had merged in the subsequently issued title insurance policy, and accordingly Plaintiffs' negligence claim against Judicial Title was foreclosed; and (2) Judicial Title did not have a duty to search for or disclose lead-based paint hazards. (Pashman Decl., Ex. 2 (March 13, 2017 letter) (Dkt. No. 103-2) at 1-3) Judicial Title further notified Plaintiffs of its intent to file a motion for sanctions in the event that Plaintiffs did not withdraw their negligence claim against Judicial Title. (See id. at 1) Plaintiffs took no action, and six months later – on September 13, 2017 – Judicial Title served its motion for sanctions on Plaintiffs' counsel in accordance with Rule 11(c)(2). (See Jud. Title Mot. (Dkt. No. 102) at 2; Mazzola Decl. (Dkt. No. 106) ¶ 17)
>
> To the extent that Judicial Title seeks Rule 11 sanctions directly against Plaintiffs, Judicial Title has not demonstrated that they had "actual knowledge that the filing

3

constituted wrongful conduct." See Calloway, 854 F.2d at 1474-75.  Moreover, Plaintiffs' counsel represents that Plaintiffs relied on counsel for advice on the "validity of their claim against Judicial Title." (See Pltf. Br. (Dkt. No. 107) at 13) Accordingly, Judicial Title's motion for sanctions directly against Plaintiffs will be denied.

Judicial Title's motion for sanctions against Plaintiffs' attorney Jean-Claude Mazzola (see Jud. Title Mot. (Dkt. No. 102) at 5) will be granted, however. It should have been apparent from the outset of this litigation that Plaintiffs' negligence claim against Judicial Title was baseless. It is clear – under the Certificate of Title's express terms – that the Certificate of Title merged with the title insurance policy, and that a negligence claim arising out of Judicial Title's title search is thus "foreclosed."  See, e.g., Timac Realty, 2013 N.Y. Misc. LEXIS 2051, at *10 (quoting Citibank, 214 A.D.2d at 217 (quoting L. Smirlock Realty Corp., 70 A.D.2d at 465)); Chu, 89 A.D.2d at 574.   Moreover, even if there were any confusion as to the applicability of the merger doctrine to title agents under New York law – which there is not (see TIMAC Realty, 121 A.D.3d at 458 (1st Dept. 2014) (affirming dismissal of contract and negligence claims against the title agent because plaintiff's claims are "conclusively refuted by the [certificate of title], which states, '[t]his certificate shall be null and void . . . upon the delivery of the policy'" (citations omitted)); Cane, 2015 N.Y. Misc. LEXIS 1706, *5, 10 (holding that merger doctrine precluded a claim against the title agent and the title insurance company)) – it is clear that Judicial Title did not owe Plaintiffs a duty to search for lead-based paint in the Property, or to determine whether there were municipal records revealing such contamination.  See Cone, 44 A.D.3d at 1147; Voorheesville Rod & Gun Club, Inc., 82 N.Y. 2d at 571.  For these reasons, Plaintiffs' negligence claim against Judicial Title fails as a matter of law.

Plaintiffs' counsel "concede[s] that case law exists, as cited by Judicial Title, which challenges Plaintiff[s'] negligence claim against Judicial Title," but argues that "the case law is at best unsettled." (Pltf. Br. (Dkt. No. 107) at 10)  If this were so, Judicial Title's sanctions motion would be properly denied.  There is no evidence that the law concerning these matters is unsettled, however.  Indeed, Plaintiffs' counsel has not cited any case holding a title agent liable for a negligent title search where a merger provision was in place, let alone any case holding a title agent liable in negligence for failure to discover lead-based paint.  (See Pltf. Br. (Dkt. No. 107); Pltf. Br. (Dkt. No. 90))  Instead, as discussed above, all of the cases Plaintiffs' counsel cites merely stand for the proposition that – in the absence of a merger provision – a title agent may be liable to an insured where a negligent title search fails to disclose title defects.  See Stewart Title Ins. Co. v. Equitable Land Servs., Inc., 207 A.D.2d 880, 880 (2d Dept. 1994); Herbil Holding Co. v. Commonwealth Land Title Ins. Co., 183 A.D.2d 219, 221-23, 229 (2d Dept. 1992); Byrnes v. Palmer, 18 A.D. 1, 2, 4-5 (2d Dept. 1897).  Moreover, while Plaintiffs' counsel contends that there are "strong public policy considerations" supporting the negligence claim against Judicial Title, Plaintiffs' counsel does not articulate what those public policy considerations are, nor does

4

> Plaintiffs' counsel make a good faith argument for the reversal or modification of existing law.  (See Pltf. Br. (Dkt. No. 107) at 7; Mazzola Decl. (Dkt. No. 106) ¶ 24; Pltf. Br. (Dkt. No. 90))
>
> Accordingly, this Court concludes that Plaintiffs' negligence claim against Judicial Title violates Federal Rule of Civil Procedure 11(b)(2), because the claim is not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]"  Judicial Title's motion for sanctions against Plaintiffs' counsel will be granted.

(Id. 39-41)

Judicial Title submitted its fee application and supporting affidavit on April 5, 2018.  (Pashman Decl. (Dkt. No. 114); Jud. Title Br. (Dkt. No. 115)).  In Plaintiffs' response, they contend that Judicial Title's lawyer, Adam L. Bailey, billed excessive rates and hours, and that Judicial Title's fee request should be substantially reduced.  (Pltf. Br. (Dkt. No. 119) at 7)  In a March 16, 2020 letter, Plaintiffs' counsel submits an April 2, 2019 First Department, Appellate Division decision suspending Judicial Title's counsel, Adam Bailey, from the practice of law for four months, finding that he had engaged in overly aggressive litigation tactics and violated a host of rules of professional conduct.  (Dkt No. 175-1; see also In the Matter of Adam L. Bailey, 171 A.D.3d 184 (1st Dep't 2019)

## DISCUSSION

### I.  LEGAL STANDARDS

"If . . . the court determines that Rule 11(b) [of the Federal Rules of Civil Procedure] has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed. R. Civ. P. 11(c)(l).  "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(4).  "The purpose of the imposition of sanctions, therefore, is deterrence, not compensation."  Prim v.

Peatco Ltd., L.P., No. 90 Civ. 7272 (LAP), 1995 WL 447648, at *3 (S.D.N.Y. July 27, 1995); see also Kirschner v. Zoning Bd. of Appeals of lnc. Vill. of Valley Stream, 159 F.R.D. 391, 395 (E.D.N.Y. 1995) ("The central goal of Rule 11 sanctions is the deterrence of baseless filings and the curbing of abuses.").

Under Rule 11(c), "[t]he sanction may include[,] . . . if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). "District courts have broad discretion to determine a fee award based on the circumstances of a case." Underdog Trucking, L.L.C. v. Verizon Servs. Corp., 276 F.R.D. 105, 108 (S.D.N.Y. 2011) (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); E*Trade Fin. Corp. v. Deutsche Bank AG, 374 F. App'x 119, 124 (2d Cir. 2010)).

The 1993 Advisory Committee Note to Fed. R. Civ. P. 11 "sets forth certain factors that may be considered by the court when deciding . . . what sanctions are appropriate in the given circumstances." Colliton v. Cravath, Swaine & Moore LLP, No. 08 CIV 0400(NRB), 2008 WL 4386764, at *12 (S.D.N.Y. Sept. 24, 2008), aff'd, 356 F. App'x 535 (2d Cir. 2009). These factors include:

> [1] [w]hether the improper conduct was willful, or negligent; [2] whether it was part of a pattern of activity, or an isolated event; [3] whether it infected the entire pleading, or only one particular count or defense; [4] whether the person has engaged in similar conduct in other litigation; [5] whether it was intended to injure; [6] what effect it had on the litigation process in time or expense; [7] whether the responsible person is trained in the law; [8] what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [9] what amount is needed to deter similar activity by other litigants.

Fed. R. Civ. P. 11, Advisory Comm. Note to 1993 Amendments.

When the court determines that the appropriate sanctions involve the granting of legal fees to the moving party, the "the Second Circuit [provides that such] fee awards are

determined by the 'presumptively reasonable fee' [or lodestar] method." Supreme Oil Co. v. Abondolo, 568 F. Supp. 2d 401, 409 (S.D.N.Y. 2008) (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 183-184 (2d Cir. 2007)  "Under this method, 'fees are calculated by multiplying a reasonable hourly rate by a reasonable number of expended hours.'"  Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. Gregory, No. 14 Civ. 2900 (ADS)(SIL), 2015 WL 1611307, at *6 (E.D.N.Y. Apr. 10, 2015) (citations omitted).

    The "reasonable hourly rate" is "the rate a paying client would be willing to pay," as determined based on a number of "case-specific variables." Arbor Hill, 522 F.3d at 190. Additionally, "[u]nder the so-called 'forum rule,' a court reviewing the reasonableness of attorney's fees should generally consider the hourly rates charged in the district in which the court sits." Gesauldi v. Dan Yant Inc., 6 F. Supp. 3d 264, 273 (E.D.N.Y. 2014) (citing Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 174-76 (2d Cir. 2009)); see also McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund, 450 F.3d 91, 96 (2d Cir. 2006) ("A reasonable hourly rate is a rate 'in line with . . . prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'" (citations omitted)).

    "If a court finds that claimed hours are 'excessive, redundant, or otherwise unnecessary,' it should exclude those hours in calculating a fee award." Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Local 15, 15A, 15C & 15D, AFL-CIO v. Eastport Excavation & Utilities Inc., 3 F. Supp. 3d 204, 219 (S.D.N.Y. 2014) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).

When a court grants an award of attorneys' fees, "due process requires, at a minimum, that: (1) the party seeking to be compensated provide competent evidence, such as a sworn affidavit, of its claimed attorney's fees and expenses; and (2) the party facing sanctions have an opportunity to challenge the accuracy of such submissions and the reasonableness of the requested fees and expenses." Mackler Prods., Inc. v. Cohen, 225 F.3d 136, 146 (2d Cir. 2000).

## II.   ANALYSIS

Judicial Title seeks an attorneys' fee award that reflects all fees and expenses it "incurred directly resulting resulting from the filing of Plaintiffs' frivolous negligence claim against Judicial Title." (Jud. Title Br. (Dkt. No. 115) at 3)  Using the "lodestar method," Judicial Title claims that it is entitled to an award of $56,857.57. (Id. at 5; see also Pashman Decl. (Dkt. No. 114) ¶ 4)  This amount reflects approximately $56,368 in attorneys' fees and approximately $490 in expenses.[4]  (Pashman Decl. (Dkt. No. 114) ¶¶ 52, 61; Pashman Decl. (Dkt. No. 114-2) at 1)

Plaintiff's counsel, Jean-Claude Mazzola, argues that both the hourly rates and the amount of time billed by Judicial Title's counsel, Adam L. Bailey, are excessive.  (Messner Reeves Br. (Dkt. No. 119) at 7)  Mazzola further contends that Judicial Title's attorneys' fee award "should be significantly discounted" because of "pervasive block-billing," time billed by attorneys on administrative and clerical tasks, and time spent on claims unrelated to Plaintiffs' negligence claim against Judicial Title.  (Id. at 16, 19, 21)  Mazzola also contends that Judicial Title's Westlaw research costs are "infected with the same irreconcilable ambiguity as [] the time spent on research," and that $285.43 in expenses attributed to Westlaw research should be

---

[4] Judicial Title's costs include postage, United Parcel Services charges, PACER access, and Westlaw research. (See generally Pashman Decl. (Dkt. No. 114-3))

disallowed.  (Id. at 19)  Mazzola contends that the appropriate sanctions amount, pursuant to the "lodestar method," is $14,182.50 in attorneys' fees and $154.11 in costs.  (Id. at 23-25)

### A.       **Billing Rates**

In determining the "reasonable hourly rate" that a "paying client would be willing to pay," the Second Circuit has instructed district courts to consider, inter alia, the following:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Arbor Hill, 522 F.3d at 187 n. 3, 189-90 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 717-19 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 92-93, 96 (1989)).  The district court should also consider the ability and incentive of an individual to negotiate the relevant rate with his or her attorneys, "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.  Moreover, although the "actual billing arrangement does not necessarily establish a ceiling[,]" it "certainly provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded." Crescent Publ'g Grp., Inc. v. Playboy Enter., Inc., 246 F.3d 142, 149, 151 (2d Cir. 2001).

In this case, the paying client is Judicial Title, which agreed to pay the following rates:  $525 for senior partners Adam L. Bailey and Colin E. Kaufman; $450 for associate attorney Scott J. Pashman; $350 for associate attorney Danny Ramrattan; and $100 to $125 for paralegal or administrative tasks.  (See generally Pashman Decl., Ex. 3 (monthly invoices to Judicial Title) (Dkt. No. 114))

Plaintiffs contend that these rates are excessive and should be reduced to $425 for senior partners Bailey and Kaufman, $350 for associate Scott J. Pashman, and $250 for associate Danny Ramrattan.  (Pltf. Br. (Dkt. No. 119) at 12)  In support of this argument, Plaintiffs cite four cases in which courts applied rates lower than what Judicial Title seeks.  (Id.)  The first case cited by Plaintiffs – Watkins v. Smith, No. 12cv4635 (DLC), 2015 WL 476867, at *3 (S.D.N.Y. Feb. 5, 2015)) – states that "rates for experienced attorneys in small firms generally range from $250 to $450 in civil cases."  All but 4.4 hours of the 157.4 hours billed here either fall within or below this range.  (See Pashman Decl., Ex. 3 (monthly invoices to Judicial Title) (Dkt. No. 114); Pashman Decl. (Dkt. No. 123) ¶ 42)  The remaining cases cited by Plaintiffs are ten to fifteen years old and are thus not persuasive as to current market rates.

To the extent that any of the rates charged by Judicial Title's lawyers could be viewed as excessive, that issue is adequately addressed by the across-the-board reduction discussed below.

### B. Hours Billed

Judicial Title's attorneys' fee request is premised on a total of 157.4 billed hours expended on its summary judgment motion and sanctions motion.

In determining the reasonableness of billed time, a court must consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)  Courts also consider "the significance of the overall relief obtained by the [client] in relation to the hours reasonably expended on the litigation.  Where a [party] has obtained excellent results, his attorney should recover a fully compensatory fee. . . . The most critical factor is the degree of success obtained."  Hensley v. Eckerhart, 461 U.S. 424, 435-36 (1983).  Here, Judicial Title's counsel obtained an excellent result:  the Court granted Judicial Title summary judgment on Plaintiffs' claim.

10

Plaintiffs argue, however, that Judicial Title is entitled to no fee award as to its sanctions motion, and that, in any event, the number of hours Judicial Title's counsel billed is excessive. (Pltf. Br. (Dkt. No. 119) at 7)

As to fee awards for sanctions motions, Fed. R. Civ. P. 11(c)(2) authorizes courts to "award to the prevailing party the reasonable expenses, including attorney's fees, incurred for [a Rule 11] motion." Fed. R. Civ. P. 11(c)(2). Disallowing attorney's fees for the preparation of sanctions motions would deter the filing of Rule 11 motions, which would run counter to the purpose of Rule 11, which is "to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

Plaintiffs were on notice that Judicial Title was planning on filing a Rule 11 sanctions motion and did not withdraw their plainly frivolous claim during the Rule 11 safe harbor period. (March 27, 2018 Order (Dkt. No. 113) at 39) The Court concludes that the costs associated with the filing of the Rule 11 sanctions motion and the subsequent fee application are properly included in the calculation of an appropriate attorneys' fee award.

In arguing that the number of hours billed is excessive, Plaintiffs complain that Judicial Title's counsel billed far more hours on its sanctions motion than on its summary judgment motion; has engaged in "block-billing" and provided vague time entries; billed ten hours of associate Pashman's time to administrative and clerical tasks; and seeks recovery for hours expended addressing other parties' claims against Judicial Title. (Pltf. Br. (Dkt. No. 119) at 14-16, 21-23) There is merit to Plaintiffs' objections.

For example, Plaintiffs' counsel asserts (Pltf. Br. (Dkt. No. 119) at 14) – and Judicial Title does not deny – that Judicial Title's counsel's billing records (see Pashman Decl., Ex. 3 (monthly invoices to Judicial Title) indicate that about 74 hours were expended in

11

preparing the company's 34-page sanctions motion, while only about 15 hours were expended preparing Judicial Title's 45-page summary judgment motion.  These time totals are incongruous on their face.  While Judicial Title is entitled to recover for work performed on both its summary judgment motion and its sanctions motion, the disparity between the hours billed on the two motions suggests that the number of hours billed on the sanctions motion may be inflated.

The billing records also contain instances of block billing and vague time entries. (See Pashman Decl. (Dkt. No. 114-3) at 4-14)  Where, as here, time entries do not break the time expended into constituent tasks, and do not adequately explain the task performed, it is impossible to determine whether the time expended was appropriate.  Courts may reduce the lodestar amount to account for vague and block-billed entries.  Charles v. City of New York, No. 13 Civ. 3547 (PAE), 2014 WL 4384155, at *5-6 (S.D.N.Y. Sept. 4, 2014) (decreasing hours for vague and block-billed entries by 30%); Mugavero v. Arms Acres, Inc., No. 03 Civ. 05724(PGG), 2010 WL 451045, at *7 (S.D.N.Y. Feb. 9, 2010) ("Courts may reduce the number of hours in a fee application where the billing information submitted by the claimants is 'too vague to sufficiently document the hours claimed.'" (quoting Kirsch v. Fleet St., Ltd., 148 F.3d 149, 172 (2d Cir. 1998))).

The billing records also indicate that attorney time was billed for the completion of clerical and administrative tasks.  (See, e.g., Pashman Decl. (Dkt. No. 114-3) at 1-14) (time entries for February 24, 2017; March 30, 2017; September 13, 2017; October 31, 2017, and November 1, 2017)  Parties "cannot recover for time spent by attorneys completing administrative tasks."  Ryan v. Allied Interstate, Inc., 882 F. Supp. 2d 628, 636 (S.D.N.Y. 2012) "A court has discretion to make across-the-board percentage reductions to exclude unreasonable hours. A court may make such reductions when attorneys engage in less skilled work, like filing

and other administrative tasks." E.S. v. Katonah-Lewisboro School Dist., 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011).

Plaintiffs contend that Judicial Title has included in its fee application "considerable time on claims unrelated to Plaintiffs' single negligence claim." (Pltf. Br. (Dkt. No. 119) at 21) Judicial Title argues, however, that co-defendants' cross-claims would not have been brought against Judicial Title absent Plaintiffs' negligence claim. (Pashman Decl. (Dkt. No. 123) ¶ 62) Whether or not – absent Plaintiffs' negligence claim – Judicial Title's co-defendants would have sought to implead Judicial Title is unknown. But Judicial Title has not cited case law demonstrating that it can recover attorneys' fees from Plaintiffs for amounts it expended defending against the claims of others. Accordingly, Judicial Title's fee request is inflated to the extent it is premised on fees expended defending against the cross-claims of its co-defendants.

Having concluded that Judicial Title's fee request is premised on an excessive amount of billed hours, the court is not required to report "item-by-item findings concerning what may be countless objection[able billing entries.]" Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994) The Court "should reduce the lodestar amount by any amount of time deemed unreasonable, unnecessary or unrecoverable," and may exclude "excessive and unreasonable hours from its fee computation by making an across-the-board reduction in the amount of hours." Saunders v. Salvation Army, No. 06 Civ. 2980 (SAS), 2007 WL 927529, at *3 (S.D.N.Y. Mar. 27, 2007) (internal quotations and citations omitted) (citing Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997)); Guo v. Tommy's Sushi, Inc., 14 Civ. 3964 (PAE), 2016 WL 452319, at *7 (S.D.N.Y. Feb. 5, 2016) ("To account for these inefficiencies, and having considered the reductions applied in similar cases, the Court reduces the hours billed . . .

by 40%."); Yea Kim v. 167 Nail Plaza, Inc., No. 05 Civ. 8560(GBD)(GWG), 2009 WL 77876, at *1-2, *5 (S.D.N.Y. Jan. 12, 2009), adopting report and recommendation ("the Report recommends that the hours underlying plaintiff's attorneys' fees be reduced by 40%"); United States ex. rel ATC Distrib. Grp., Inc. v. Ready-Built Transmissions, Inc., No. 03 Civ. 2150(GWG), 2007 WL 2522638, at *7 (S.D.N.Y. Sept. 7, 2007) ("In light of all the factors discussed above, the Court will trim the request for fees during the period the fee application was prepared . . . by 33% . . . .").

Because Judicial Title's fee and costs request suffers from multiple and substantial billing-related issues, the Court concludes that a 50% across-the-board reduction in the request is appropriate.

## CONCLUSION

For the reasons stated above, Judicial Title is awarded $28,428.79 in attorneys' fees and costs against Jean-Claude Mazzola and his law firm Messner Reeves LLP. Mazzola and Messner Reeves LLP are jointly and severally liable for this sanction, and are ordered to pay the sum of $28,428.79 to Judicial Title by June 30, 2020.

The Clerk of Court is directed to close this case.

Dated: New York, New York
       May 31, 2020

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge